IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOMAIN PROTECTION, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-01578-K |
| | § | |
| SEA WASP, LLC, and DOE 1 – DOE 5 | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are three motions: (1) Domain Protection, LLC's Motion for Issuance of Temporary Restraining Order and Preliminary Injunction (Doc. No. 8); (2) Quantec, LLC, RPV, Limited, and Jeffrey Baron's Motion for Reconsideration, and/or to Alter or Amend Order and Final Judgment, or in the Alternative, to Clarify the Court's Order (Doc. No. 44); and (3) Defendant Sea Wasp's Motion to Stay and Memorandum of Support (Doc. No. 45). The Court has considered these motions, the responses and replies thereof, the record, and the applicable law. Because the Court finds that the relevant factors weigh in favor of transfer, the Court *sua sponte* **TRANSFERS** the case to the United States District Court for the Eastern District of Texas, Sherman Division.

I. **Factual and Procedural Background**

Although the parties dispute the majority of relevant facts in this case, the primary dispute concerns Internet domain names. Plaintiff Domain Protection, LLC

1

("Domain Protection") alleges to be the owner and "registrant" of the disputed domain names at issue in this case (the "Domain Names"). Defendant Sea Wasp, LLC ("Sea Wasp") purports to be the "registrar" of the Domain Names. The terms "registrant" and "registrar" are terms of art used by the Internet Corporation for Assigned Names and Numbers ("ICANN") in its various policies that govern the Internet's Domain Name System ("DNS"). Both parties agree that ICANN's rules, at least to some extent, apply to the parties' conduct concerning the Domain Names.

The Domains Names have allegedly been the subject of various proceedings over the past decade, including, but not limited to, cases in this District, the United States Bankruptcy Court for the Eastern District of Texas, Collin County District Court, and Australia. The Court does not detail the nature of these cases except when necessary for this Order, as both parties are familiar with the prior proceedings.

The parties originally allege that the instant case in front of this Court does not concern a dispute as to ownership. Domain Protection instead alleges that this case concerns the respective power that Domain Protection (as the alleged registrant) and Sea Wasp (as the alleged registrar) have with regard to the Domain Names. In various filings with the Court, Sea Wasp originally asserted that it "takes no position as to the ownership of the [Domain Names]." *E.g.*, Defendant Sea Wasp, LLC's Response in Opposition to Motion for Preliminary Injunction (Doc. No. 41).

Sea Wasp has recently clarified its position. Although Sea Wasp takes no position concerning ownership of the Domain Names, Sea Wasp argues that "[t]he

2

current action is and has always been about ownership of the [Domain Names]." Defendant Sea Wasp's Motion to Stay and Memorandum of Support (Doc. No. 45). Sea Wasp now emphasizes that one proceeding is specifically relevant to the case before this Court: *Novo Point LLC, et al. v. Christopher A. Payne, et al.*, Case No. 16-41533, Adversary No. 16-04110 (the "Adversary Proceeding"). The Adversary Proceeding is in the United States Bankruptcy Court for the Eastern District of Texas and stems from the Chapter 11 bankruptcy for Christopher A. Payne ("Payne"). The Adversary Proceeding, in its simplest terms, is an ownership dispute as to the Domain Names.

## II.     Applicable Legal Standards

The first question the Court must address is what statute applies when a district court seeks to transfer a case related to a bankruptcy proceeding. Two statutes are relevant to this inquiry.

The general transfer-of-venue statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2012). The decision to transfer under § 1404(a) is "committed to the sound discretion of the transferring judge." *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). In the context of cases related to bankruptcy proceedings, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (2012). A district court may transfer *sua sponte* under both statutes.

*LSREF2 Baron, LLC v. Aguilar*, Civ. Action No. 3:12–cv–1242–M, 2013 WL 230381, at *3 (N.D. Tex. Jan. 18, 2013) (Lynn, J.).

These two statutes illustrate three important differences solely from their text. First, under § 1404(a), a district court may transfer "any civil action." Under § 1412, a district court can only transfer "a case or proceeding under title 11." Second, under § 1404(a), a district court can only transfer a case to another "district or division where it might have been brought." Section 1412 has no analogous restriction. Third, under § 1404(a), a district court can only transfer a case "[f]or the convenience of the parties and witnesses, in the interest of justice." Section 1412 is disjunctive, allowing transfer for convenience of the parties *or* in the interest of justice. The text of each statute consequently has an effect on the district court's transfer analysis.

Whether a case is a "case . . . under title 11" for purposes of § 1412 also raises a related issue—the jurisdiction of bankruptcy courts. A bankruptcy court has exclusive jurisdiction as to "cases under title 11," and non-exclusive jurisdiction as to "civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334(a)–(b) (emphasis added); *see also* 28 U.S.C. § 157(a); *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). The Fifth Circuit has interpreted the concept of "related to" broadly, holding that jurisdiction exists when "the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy." *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007) (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001)). A proceeding conceivably affects an estate when

4

the proceeding's "outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *Id.* (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995)).

Section 1412 applies to "core" proceedings in the bankruptcy context, but the Fifth Circuit has not yet determined whether § 1412 also applies to "non-core" proceedings. *Leal v. Bednar*, Civ. Action No. 3:16-CV-3424-G, 2017 WL 565176, at *1–*2 (N.D. Tex. Feb. 13, 2017) (Fish, J.). "Core proceedings . . . are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. Non-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be *related to* a bankruptcy." *LSREF2 Baron, LLC*, 2013 WL 230381, at *1 n.3 (emphasis added) (quoting *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773–74 (8th Cir. 1995)). The Fifth Circuit has defined core proceedings and non-core proceedings by reference to the jurisdictional language of § 1334(b). *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987). Core proceedings are those proceedings that (1) arise under title 11 or (2) arise in cases under title 11. *Id.*; *see* § 1334(b); § 157(b). By implication, when a bankruptcy court has jurisdiction on the basis of the "related to" provision of § 1334(b), the bankruptcy court is handling a non-core proceeding. *See Wood*, 825 F.2d at 96 (recognizing three categories of jurisdiction under § 1334(b) and interpreting core proceedings under § 157(b) as including the "arising under" and

"arising in" jurisdiction). Therefore, when a district court is seeking to transfer a proceeding on the basis that it is "related to" a bankruptcy case, it is unclear whether § 1412 or § 1404(a) applies.

Courts in the Northern District of Texas that have addressed this issue have held that § 1412 applies to non-core proceedings. *E.g., Leal*, 2017 WL 565176, at *2–*3; *LSREF2 Baron, LLC*, 2013 WL 230381, at *3–*4; *see also Marquette Transp. Co. v. Trinity Marine Prods., Inc.*, Civ. Action Nos. 06–0826, 06–827, 06–1281, 06–1282, 2006 WL 2349461, at *4 (E.D. La. Aug. 11, 2016). The Court finds the reasoning of these courts persuasive, but, as discussed below, finds transfer appropriate under § 1404(a) as well.

III. Analysis

Because Domain Protection has referenced jurisdiction throughout its filings, and because the issue of bankruptcy court jurisdiction is intertwined with § 1412 transfer analysis, the Court first addresses the relevant jurisdictional issues. *See Leal*, 2017 WL 565176, at *2–*3 (finding that the case in front of it was "related to" a bankruptcy case after holding that § 1412 applied to claims "related to" bankruptcy cases).

A. Subject-Matter Jurisdiction

i. **The Northern District Does Not Have Exclusive Jurisdiction over this Case.**

The Court first addresses Domain Protection's assertion that the Northern District has exclusive jurisdiction over this case. In its complaint, Domain Protection

6

asserts that "the United States District Court for the Northern District of Texas ordered that the Court shall retain <u>exclusive jurisdiction</u> over any disputes that may arise concerning any earlier order in that case." Domain Protection is referring to an order in *Netsphere, Inc. v. Jeffrey Baron*, No. 1447 Civ. Action. No. 3-09-CV-00988-L (N.D. Tex. March 27, 2015), in which the Honorable Sam A. Lindsay presided. The relevant language provides:

> The court shall **retain** exclusive jurisdiction of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estates, and the relief provided under this order, or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.

*Id.* at 21. Domain Protection asserts that the Domain Names fall within the scope of an earlier order in the case. Upon this Court's review of *Netsphere, Inc.*, the Domain Names are not within the Northern District's retained exclusive jurisdiction. In an order prior to the order cited by Domain Protection, Judge Lindsay specifically addresses the "Baron or Novo Point/Quantec assets," stating that "the court does not and will not have jurisdiction in this case over any claims and disputes regarding the ownership of the [Domain Names]." *Netsphere, Inc.*, No. 1368, slip op. at 9. It would contravene Judge Lindsay's prior, explicit refusal to exercise jurisdiction over the Domain Names to now hold that the Northern District retained exclusive jurisdiction over the instant dispute through the language cited by Domain Protection. Because the "exclusive jurisdiction" retained by the Northern District does not encompass the Domain Names, the Court can properly consider transfer of this case.

### ii. The Jurisdiction of the Bankruptcy Court Is Irrelevant to the Issue of Transfer.

Domain Protection suggests in its Reply Brief in Support of Preliminary Injunction that a bankruptcy court would not have jurisdiction over the current action before the Court. Although the Court will briefly address this concern below, the Court first explains why Domain Protection's concern is irrelevant at least when it comes to the transfer analysis under § 1412.

Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a *district court* for another district." § 1412 (emphasis added). The text of the statute does not allow for a district court to transfer a case directly to a bankruptcy court in another district. The statute instead allows for transfer to a district court, and the transferee court then may refer a case to a bankruptcy court. *See* § 157(a). The United States District Court for the Eastern District of Texas has a standing order referring such cases to its bankruptcy courts. Order of Reference of Bankruptcy Cases and Proceedings Nun Pro Tunc (E.D. Tex. 1984).

The Court's transfer of this case to the Eastern District of Texas does not, by itself, affect the subject-matter jurisdiction of this case. The district court of the Eastern District of Texas would have jurisdiction over the case in the same manner as this Court. Because the Court only transfers the case to the Eastern District, and does not refer the case to the Bankruptcy Court for the Eastern District, subject-matter jurisdiction is not a concern at this stage.

### iii. The Bankruptcy Court Should Determine Whether It Ultimately Has Jurisdiction over the Case.

As discussed above, Domain Protection's concern regarding a bankruptcy court's potential jurisdiction over this case is misplaced for two reasons. First, the Northern District of Texas does not have exclusive jurisdiction over this case. Second, a transfer of the case would not immediately affect the transferee court's jurisdiction. Despite these two points, the Court briefly addresses whether the Bankruptcy Court for the Eastern District of Texas would have jurisdiction over this case, as the issue of subject-matter jurisdiction relates to whether § 1412 applies. *See LSREF2 Baron, LLC*, 2013 WL 230381, at *1–*4 (finding that the case fell within the scope of "related to" jurisdiction before holding that § 1412 was the appropriate statute for transfer analysis).

Jurisdiction under the "related to" provision of § 1334(b) exists when "the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy." *In re TXNB Internal Case*, 483 F.3d at 298. "Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or *could influence the administration of the bankrupt estate*." *Id.* (emphasis added). As alleged by the plaintiffs of the Adversary Proceeding, Payne has attempted to exercise control over the Domain Names. Third Amended Complaint at 14–17, *Novo Point LLC v. Payne* (*In re Payne*), Ch. 11 Case No. 16-41533, Adv. No. 16-04110 (E.D. Tex. Feb. 5, 2018). A decision

by this Court regarding the authority of Domain Protection and Sea Wasp over the Domain Names may or may not directly affect Payne's bankruptcy estate; however, a determination about a party's authority over the Domain Names almost certainly could, at the very least, influence the administration of Payne's estate. This case falls within the "broad 'conceivable effect' test." *In re KSRP, Ltd.*, 809 F.3d 263, 266 (5th Cir. 2015); *see also In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 304–05 (5th Cir. 2013) ("We have previously held that similar attenuated, hypothetical effects of third-party litigation can give rise to related-to bankruptcy jurisdiction.").

Examining the scope of bankruptcy court jurisdiction leads to a related question: Which court should ultimately determine whether a case falls within the scope of the bankruptcy court's jurisdiction? Section 157(b)(3) provides that "[t]he bankruptcy judge *shall* determine . . . whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." § 157(b)(3) (emphasis added). By distinguishing core proceedings from non-core proceedings, the bankruptcy judge inherently determines into which "category" of jurisdiction under § 1334(b) a case falls. *See Wood*, 825 F.2d at 96. This statutory mandate that bankruptcy judges should determine whether a proceeding is core or non-core suggests that bankruptcy judges are better suited to determine the related issue of the scope of their own jurisdiction. Courts in the Fifth Circuit have also held that bankruptcy courts are better suited to determine the scope of their jurisdiction. *Marquette Transp. Co.*, 2006 WL 2349461, at *2 ("[T]he bankruptcy court is best suited

to resolve the issue of section 1334 jurisdiction."); *see Orix Fin. Corp. v. Nexbank, SSB*, Civ. Action No. 3:08–CV–0550–B, 2008 WL 2796069, at *3–*4 (N.D. Tex. July 15, 2008) (Boyle, J.) (holding that a bankruptcy judge could better determine whether the case should be remanded for lack of jurisdiction). Therefore, while the Court analyzes whether the case would fall within the "related to" jurisdiction of the Bankruptcy Court for the Eastern District of Texas solely for purposes of determining whether § 1412 applies, the Court recognizes that the Bankruptcy Court is better suited for the ultimate determination of whether it has subject-matter jurisdiction. *See Marquette Transp. Co.*, 2006 WL 2349461, at *2–*4 (holding that the bankruptcy court should rule on the jurisdictional issue after transfer despite finding that § 1412 applied to the case on "related to" grounds).

The Court's analysis on the issue of subject-matter jurisdiction establishes three important points. First, the Northern District of Texas does not have exclusive jurisdiction and thus creates no jurisdictional issue by transferring the case. Second, a transfer of this case to the Eastern District of Texas does not immediately pose a jurisdictional issue because the transfer is only to the Eastern District of Texas and not directly to a bankruptcy court. Third, while the Court finds that this case is "related to" the Payne bankruptcy in the Eastern District of Texas for purposes of determining whether § 1412 applies, the Bankruptcy Court for the Eastern District of Texas may still make the ultimate decision regarding whether it has jurisdiction over this dispute. Having analyzed the preliminary issues concerning jurisdiction, the Court now turns

11

to whether transfer of the case to the Eastern District of Texas is appropriate under § 1412.

### B. Transfer Is Appropriate Under § 1412.

Under § 1412, "[a] district court may transfer a case or proceeding . . . in the interest of justice *or* for the convenience of the parties." § 1412 (emphasis added). "As to the interest of justice prong, there is a 'strong presumption that proceedings related to a bankruptcy case should be transferred to the district where the bankruptcy proceedings are pending.'" *Leal*, 2017 WL 565176, at *4 (quoting *LSREF2 Baron, LLC*, 2013 WL 230381, at *5)). The factors the Court considers when determining whether transfer is appropriate are: "(1) the location of the bankruptcy estate; (2) whether the interests of judicial economy would be served by the transfer; (3) the possibility of a fair trial; (4) either forum's interest in the controversy; (5) the enforceability of any judgment obtained; and (6) the plaintiff's original choice of forum." *Id.*; *see also LSREF2 Baron, LLC*, 2013 WL 230381, at *4 (enumerating seven similar factors). A seventh factor—considered to be the most important—"is whether transfer would promote the economic and efficient administration of the bankruptcy estate." *LSREF2 Baron, LLC*, 2013 WL 230381, at *4. Efficiency often involves whether transfer could "eliminat[e] the risk of conflicting rulings" between the case before the district court and the bankruptcy proceeding. *Id.* at *5.

Having determined that § 1412 applies to this case, the transfer analysis is straightforward: Transfer to the Eastern District of Texas is appropriate because it is in

the interest of justice. The Court first finds that, on the record currently before the Court, the third and fifth factors listed above are neutral. While Domain Protection chose the Northern District as its original forum (the sixth factor), the first, second, fourth, and, most importantly, seventh factor weigh in favor of transfer. The Payne bankruptcy has been pending in the Eastern District since August 30, 2016, and the Adversary Proceeding concerning the ownership of the Domain Names was first filed on November 21, 2016. The Court acknowledges Domain Protection's repeated contention that ownership of the Domain Names is not synonymous with the authority issue under the ICANN rules; however, the case still presents a concern of "conflicting" rulings. If the Court determines that Sea Wasp has no authority to lock the Domain Names, the Court risks undermining the ownership dispute in the Adversary Proceeding. On the other hand, if the Court determines that Sea Wasp does have authority to lock the Domain Names, a decision in the Adversary Proceeding that Domain Protection is not the rightful owner of the Domain Names would negate the need for resolving the registrant–registrar control dispute. Any injunctive relief granted by this Court on the highly technical matter of ownership and control of Domain Names runs the inherent risk of affecting the Payne bankruptcy and the Adversary Proceeding. The Adversary Proceeding and the instant case present two factually complicated disputes that are inherently intertwined. The economic and efficient resolution of the Payne bankruptcy, as well as the Adversary Proceeding and this case,

13

depends upon having a case that affects the Domain Names centralized in the most appropriate forum. That forum is the Eastern District of Texas.

### C. Transfer Is Also Appropriate Under § 1404(a).

Although the Court has discussed why § 1412 is the controlling transfer statute, the Court also considers the alternative outcome of the analysis under § 1404(a). For the reasons stated below, the Court finds that transfer is also appropriate under § 1404(a).

Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." § 1404(a). A court may *sua sponte* transfer a case when the transferee venue is clearly more convenient than the venue chosen by the plaintiff. *Kirkpatrick v. ARM WNY LLC*, Civ. Action No. 3:15–CV–1818–L, 2015 WL 3539604, at *1–*2 (N.D. Tex. June 5, 2015) (Lindsay, J.); s*ee also In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc), cert. denied, 555 U.S. 1172 (2009). The plaintiff's choice of venue is not a factor in this analysis, but it does contribute to the showing that the transferee venue is clearly more convenient than the transferor venue. *Volkswagen II*, 545 F.3d at 314–15.

The initial question in applying the provisions of § 1404(a) is whether the suit could have been brought in the transferee district. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004). If the potential transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the court considers several private- and public-interest factors, none of which are given dispositive weight. *Id.* The private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *see Genetech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of the foreign law." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). Although the letter of § 1404(a) might suggest otherwise, it is well established that "the interest of justice" is an important factor in the transfer analysis. *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593–94 (N.D. Tex. 2003) (Kaplan, M.J.) (citing *In re Medrad, Inc.*, No. 586, 1999 WL 507359, *2 (Fed Cir. 1999)).

As noted in the Court's previous discussion, the primary difference between § 1404(a) and § 1412 is that § 1404(a) mandates that the transferee venue be a "district or division where [the case] might have been brought." § 1404(a). Because the Northern District of Texas does not have exclusive jurisdiction over this case, Domain Protection could maintain this suit in another district. "[A] proceeding . . . related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a) (2012). Because the Court finds, for the purposes of transfer analysis, that the instant case is "related to" the Payne bankruptcy and the Adversary Proceeding, this case could have originally been brought in the Eastern District of Texas. *See LSREF2 Baron, LLC*, 2013 WL 230381, at *6–*7 (finding § 1409(a) as the basis for venue in the first step of its § 1404(a) analysis after analyzing transfer under § 1412). Sea Wasp is also a resident of the Eastern District of Texas under 18 U.S.C. § 1391(b)(1) (2012) because it is subject to the personal jurisdiction of the Eastern District of Texas in the same fashion that it is subject to the personal jurisdiction of the Northern District of Texas.

### i. Private-Interest Factors

The Court finds the first private-interest factor to be neutral. The parties could access any sources of proof for a dispute concerning Domain Names as easily in the Eastern District of Texas as in the Northern District of Texas.

The Court finds the second private-interest factor to be neutral as well. Neither party has specifically identified any crucial witnesses through their filings thus far, but

the Eastern District of Texas would likely have a similar compulsory power as the Northern District of Texas over potential witnesses. *See* FED. R. CIV. P. 45(c)(1)(A)–(B).

The third private-interest factor the Court must consider is the cost of attendance for willing witnesses, which "is probably the single most important factor in the transfer analysis." *Genetech*, 566 F.3d at 1343 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). The Court finds that this factor weighs slightly in favor of transfer because there is likely substantial overlap between the potential witnesses in this case and the witnesses who will already be necessary for the Adversary Proceeding. The cost of attendance for any willing witness in either this case or the Adversary Proceeding will be less if both actions are in the same forum.

The fourth private-interest factor is "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315. This factor weighs strongly in favor of transfer. As the Court explained in its § 1412 analysis, rulings from this Court run the inherent risk of affecting the Payne bankruptcy and the Adversary Proceeding. The practical problems that would arise in maintaining this case in this Court because of this risk weighs in favor of transfer.

### ii. Public-Interest Factors

The first public-interest factor is the administrative difficulties flowing from court congestion. Although recent statistics show that the Northern District of Texas

has significantly more pending cases per judgeship than the Eastern District, the "weighted filings" between the two districts are relatively similar. *U.S. District Courts— Federal Court Management Statistics—Comparison Within Circuit—During the 12-Month Period Ending June 30, 2018*, U.S. COURTS, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2018/06/30-3 (last visited October 25, 2018). The Court thus finds that this factor is neutral.

The second public-interest factor is whether there is a local interest in deciding local issues at home. The Court finds this factor to be neutral. There is no relevant factual connection between an authority dispute over the Domain Names and either the Northern or Eastern Districts of Texas. *See Leblanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 832 (N.D. Tex. 2013) (Boyle, J.).

The third public-interest factor is the familiarity of the forum with the law that will govern the case. Although neither the Northern nor the Eastern Districts of Texas would be more familiar than the other with the applicable law in this case, the Bankruptcy Court for the Eastern District of Texas would be more familiar with the underlying facts between the larger Domain Names dispute, as well as the relevant persons involved in the dispute. *See LSREF2 Baron, LLC*, 2013 WL 230381, at *8. This factor therefore weighs in favor of transfer.

The fourth public-interest factor involves conflict-of-law issues. Transfer would not implicate any issue regarding the applicable law; therefore, this factor is neutral.

For many of the same reasons explained in the prior § 1412 analysis, transfer under § 1404(a) is appropriate. The third and fourth private-interest factors weigh in favor of transfer. The third public-interest factor also weighs in favor of transfer. The other factors are neutral. Having considered all of the private- and public-interest factors and the relative convenience of the parties and witnesses, the Court has determined that, viewed in their totality, these factors favor transfer and further, that such a transfer would be in the overall interest of justice.

IV. Conclusion

Because the Court finds that transfer is appropriate under both § 1412 and § 1404(a), the Court **TRANSFERS** this case to the United States District Court for the Eastern District of Texas, Sherman Division. 28 U.S.C. § 124(c)(3).

**SO ORDERED.**

Signed November 6th, 2018.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE