# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DOMAIN PROTECTION, LLC, § | |
| *Plaintiff,* § | |
| v. § | Civil Action No. 4:18-cv-792 |
| § | Judge Mazzant |
| SEA WASP, LLC, § | |
| VERNON DECOSSAS, and § | |
| GREGORY FAIA, § | |
| *Defendants.* § | |

## FIRST AMENDED COMPLAINT

### 1. PARTIES

**1.1. Plaintiff** Domain Protection, LLC, ("**Domain Protection**"), a Virginia limited liability company, is a citizen of Texas whose member resides in Dallas, Texas.

**1.2. Defendant** Sea Wasp, LLC., ("**Sea Wasp**"), a shell entity, created in 2017 as a Nevada limited liability company, is a citizen of Louisiana whose members reside in Louisiana.  (Sea Wasp's registered agent in Louisiana, is Gregory Faia).

**1.3. Defendants** Gregory Faia, ("**Faia**"), and Vernon Decossas, ("**Decossas**"), are individuals who directly own and control and use Sea Wasp as a front to accomplish the actions complained of below, and are believed to reside in Louisiana (or Florida), and are citizens of Louisiana (and/or Florida).  Except with respect to Count I and any claims asserting a conspiracy between the defendants, all actions of Sea Wasp described below are pleaded jointly and in the alternative as the actions of Faia and Decossas, individually and in conspiracy with each defendant.  Further, liability is asserted against defendants Faia and Decossas for the actions complained of by Sea Wasp; and the corporate fiction of

Sea Wasp's technical structure as a limited liability company should be disregarded and the above delineated claims are asserted against defendants Faia and Decossas in their personal capacities because the corporate fiction of Sea Wasp was resorted to as a means of evading an existing legal obligation, was relied upon as a protection of crime, and was relied upon by the defendants to justify the wrongs alleged against Sea Wasp in this complaint.  As detailed below, the defendants Faia and Decossas used Sea Wasp as a means of evading the legal obligations of the registrar Fabulous.com, Australia, which obligations were due Domain Protection as the registrant of Domain Protection's domain names, by imposing Sea Wasp, a shell entity, as a successor registrar without the knowledge or consent of Domain Protection, and then using Sea Wasp to evade the legal obligations, then existing, which were owed to the domain name registrant, Domain Protection.  Further, defendants Faia and Decossas relied upon the corporate fiction of Sea Wasp as protection of the crime of Theft, detailed below in Court I, and to justify the torts asserted in Counts II-V.

## 2. JURISDICTION & VENUE

2.1. The U.S. District Court has Federal Question jurisdiction over this case pursuant to 28 U.S.C. §1331, Supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), and Diversity jurisdiction pursuant to 28 U.S.C. §1332.

2.2. The defendants, acting through Sea Wasp, submitted to the venue of the Eastern District of Texas, after the case was transferred to the Eastern District, on Sea Wasp's motion. As discussed below, prior to the transfer to the Eastern District, venue was also proper in the Northern District of Texas.

2.3. Pursuant to 28 U.S.C. § 1391(b)(2) venue is proper in a judicial district in which a substantial part of the events giving rise to the claim occurred. A substantial part of the events giving rise to the claims asserted below occurred in the Northern District of Texas, including the court ordered return of assets to Lisa Katz, Katz' and Domain Protection's management of the assets and loss of control due to the defendant's actions, Domain Protection's entering into the contracts which were interfered with by the defendants, Sea Wasp's fraudulent communications to Domain Protection, the generation of advertising revenue which was appropriated by the defendants, and Domain Protection's sustaining of damages.

2.4. Further, the defendants' actions were _directed_ at the Northern District and directly impacted the Northern District including through the defendants' hijacking of control over domain names that were managed from Dallas and which provided local Dallas content, including, to wit: afterdarkdallas.com, backpagedallas.com, dallasanimalcontrol.com, dallasaqurium.com, dallasauctionsite.com, dallasbackpages.com, dallascountycourtrecords.com, dallascountyvoting.com, dallascows.com, dallaslifefoundation.com, dallaslovefieldairport.com, dallaspublicsafety.com, dallasrailway.com, fieldworkdallas.com, headstartdallas.com, junkyarddallas.com and

---

metropolitandallas.com, among others. The defendants' unauthorized and unlawful seizing of control of local Dallas, Texas websites and domain names owned by Domain Protection was directed at impacting and did impact thousands of users in Dallas, Texas and commercial activities in Dallas.

2.5. The domain names registered to Domain Protection have been managed in the Northern District of Texas, though a website and/or computers physically accessed in the Northern District of Texas, which controlled the domain names, including their 'DNS' records, from Dallas, Texas. A substantial part of the events giving rise to the claims set forth below is the defendants' interference with that control, exercised in the Northern District of Texas. Domain Protection's loss of control over its assets occurred in Dallas, Texas.

2.6. Also, a substantial part of the events giving rise to the claim is the court ruling authorizing possession of the domain name assets which was ordered in the Northern District of Texas by the U.S. District Court for the Northern District of Texas. Further, a court order cautioning all parties to refrain from acting to interfere with control over the assets was issued by the United States District Court for the Northern District of Texas and the United States District Court for the Northern District of Texas ordered that the Court shall retain jurisdiction over any disputes that may arise concerning any earlier order in that case.[1]

2.7. Courts in other districts have found venue proper in Texas for issues involving or arising out of the orders of the Northern District of Texas in that case and have transferred cases to Texas because the cases, like this one, ultimately arose out of the orders issued in the Northern District relating to the *Netsphere* receivership proceedings.[2]

---

[1] Doc. 1447, p. 21, in Case 3:09-cv-00988-L (N.D. Tex.).
[2] E.g., Doc. 130, in Case 2:16-cv-00126-JRG-RSP (E.D. Tex.).

2.8. The Registrant's address and location for the tens of thousands of domain names subject of this lawsuit is Dallas, Texas, and when the domain names were registered, it was agreed that venue for legal proceedings as to disputes over the domain names would include Dallas, Texas, the location listed as the registrant's address.

2.9. The defendants also have substantial contacts with the Northern District of Texas. Sea Wasp's registration services are marketed and sold in the Northern District of Texas and Sea Wasp does business in and generates substantial revenue in the Northern District of Texas. Sea Wasp sends solicitation and other mail and/or email to the Northern District of Texas on a daily basis. Further, Sea Wasp solicits business in the Northern District of Texas and contracts with and uses agents and resellers located in the district to sell Sea Wasp's services. Sea Wasp also provides advertising for customers, products and services, located in the Northern District of Texas, for thousands of domain names, and generates hundreds of thousands of dollars of revenue from the Northern District of Texas.

2.10. Sea Wasp also conducts and solicits business in the Northern District of Texas through its website and solicitations. Further, Sea Wasp advertises its website for the purpose of being found by searches made in the Northern District of Texas.

2.11. Further, Sea Wasp's internet operations include transmission through computers located in the Northern District of Texas and Sea Wasp routes business communications through the Northern District of Texas on a daily basis. Sea Wasp also purchases products from vendors in the Northern District of Texas and banks at which Sea Wasp has accounts are in located in the Northern District.

2.12. As discussed above, the defendants are publishing the content of tens of thousands of websites in the Northern District of Texas, and have appropriated

income derived from the Northern District of Texas from advertising specifically directed to the Northern District of Texas. Sea Wasp also advertises for and actively solicits customers in the Northern District of Texas, and provides a web portal which can be, and is regularly accessed in the Northern District of Texas.

2.13. Further, tens of thousands of domain names and up to 30% or more of Sea Wasp's business involves domain names owned by entities located in the Northern District of Texas, and managed in the Northern District of Texas.

2.14. A significant part of Sea Wasp's daily operations involve the Northern District of Texas and in the daily course of its business operations, Sea Wasp uses servers located in the Northern District of Texas to route query responses provided by Sea Wasp.

2.15. Finally, the defendants' actions were also directed at the Eastern District of Texas and directly impacted the Eastern District, including false representations made to Domain Vault and others in the Eastern District, in furtherance of the conspiracy detailed below.[3]

---

[3] The false representations include a false affidavit the defendants directed their employee, David Vinterella, to file in the Eastern District of Texas on December 11, 2018, falsely stating that the defendants' employee had personal knowledge of the status of Domain Protection's domain names in October 2017, and that the domain names were then subject to a 'lock'; that 'unknown' changes were made to the nameserver records of Domain Protection's domain names; that the records of ENOM were searched and did not show how the changes were made; and that 'Plaintiff has not requested traffic data from Sea Wasp'.

## 3. FACTUAL SUMMARY

3.1.   When the U.S. District Court for the Northern District of Texas wound down the '*Netsphere* receivership', the Court ordered domain name assets returned to the possession and control of Lisa Katz, the operations manager of Quantec, LLC and Novo Point LLC.  In the course of management of the entities, Katz reached a settlement agreement with creditors and in 2014 pursuant to that agreement transferred a portfolio of domain names registered through "Fabulous.com", to Domain Protection, LLC, for the management and liquidation of the domain names in order to provide for the orderly payment of the millions in dollars in debts owed to the creditors.  Jeff Baron and his 'counsel' Paul Keating, and other Baron confederates immediately sought to interfere with and thwart the Court's receivership wind-down orders and prevent the payment of past-due debts to the creditors.

3.2.   Baron has a history of using dozens of attorneys, and then refusing to pay their bills.  In a settlement agreed to by multiple parties, including Baron, and approved by the United States Bankruptcy Court, hundreds of thousands of Dollars in fees were to be paid to attorneys who had worked on behalf of Quantec LLC, and additionally, hundreds of thousands of dollars in additional fees were incurred by Quantec LLC in Baron related litigation.   Baron and his confederates have conspired to prevent the implementation of the Court's orders and payment to the creditors of Quantec, LLC—including for fees that the Bankruptcy Court ordered paid, and fees found due and owing by the United States District Court.

3.3.   By agreement between creditors and Quantec, LLC, Domain Protection was charged with liquidating domain name assets to pay off the past due debt to a dozen creditors, primarily law firms that had provided legal services for the benefit of Quantec, LLC but whose bills remained unpaid.   Baron and his confederates

engaged in a long series of litigation designed to prevent Domain Protection from liquidating the domain names and paying the creditors. These efforts included lawsuits filed in Collin County, Texas, Florida, and Australia. Eventually, the Collin County District Court ruled against Baron and his confederates, dismissed all of his claims with prejudice, and ruled that his confederates, Paul Keating and David McNair were not authorized to act on behalf of Quantec, LLC. Similarly, the Florida and Australia actions were also eventually dismissed.

 **3.4.** When the Collin County District Court ruled against Baron, McNair, and Keating, and the Australia suit was dismissed, Fabulous.com released its 'lock' that had prevented Domain Protection from managing its domain names. Recently, the defendants in concert with themselves and/or an associate of Paul Keating, in conjunction with the purported purchase of the 'Fabulous.com' business name, unlawfully took control over Domain Protection's domain names and, without authority or authorization from Domain Protection, listed "Sea Wasp, LLC" as the authorized and exclusive 'Registrar' of the domain name assets for Domain Protection.

 **3.5.** Initially, Sea Wasp represented that it had simply purchased the "Fabulous.com" name and recognized Domain Protection was the owner of the domain name assets—registered in the name of Domain Protection, LLC. Sea Wasp began negotiations with Domain Protection, seeking Domain Protection's authorization for Sea Wasp to act as the domain registrar of Domain Protection's domain names. No agreement was reached or entered. Instead, Sea Wasp unlawfully appropriated control over the domain names to prevent transfer of the names to a registrar authorized by Domain Protection, and on or about June 15, 2018, in conspiracy with and at the direction and control of the defendants, Sea

Wasp acted to unlawfully seize control of the domain names, and changed the 'DNS" server information to point to Baron confederates' "Domainpower.com". By doing so, the defendants appropriated both control over the domain names and Domain Protection's revenue from the domain names. The defendants appropriated full control over the domain names and began on or about June 15, 2018 to direct all advertising income to the defendants, with a share paid to "Domainpower.com".

### 4. ICANN RULES

4.1. Sea Wasp advertises itself as an ICANN accredited registrar complying with the ICANN rules and procedure. Under the 'ICANN' rules, (the Internet Corporation for Assigned Names and Numbers), and registrar agreements, each registrar must allow transfer of administration of any domain name to another registrar even during a pending court action as to the domain name, so long as the domain name will continue to be subject to such proceedings. Likewise the ICANN 'Uniform Domain Name Dispute Resolution Policy' requires that even when domain names are 'locked', the registrar must allow transfer to new registrants if the party to whom the domain name registration is being transferred agrees to be bound by the decision of the court where a dispute as to a domain name is pending. In other words, even when an entity is authorized to act as a registrar for a domain name, it still may not prevent the transfer of the domain name to a new owner or registrar—even if the domain name is subject to pending litigation.

4.2. Sea Wasp, has not even been authorized to act as the registrar for the domain names subject of this lawsuit. Still, Sea Wasp has unlawfully taken control of the domain names, is preventing their transfer to an authorized registrar, and has taken control of the websites linked to the domain names, thereby hijacking the domain names.

WHEREFORE, Domain Protection pleads the following actions:

Texas Theft Liability ..........................................................................10

Interference with Contract ................................................................11

Civil conspiracy ...................................................................................12

Conversion ...........................................................................................14

Stored Communications Act Civil Damages ....................................16

## COUNT I
## TEXAS THEFT LIABILITY

5.1. In violation of Texas Penal Code Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13, and/or 31.14, in 2018, the defendants unlawfully appropriated property, to wit: tens of thousands of domain names owned by Domain Protection, LLC, which are registered to Domain Protection, LLC in Dallas, Texas and were managed electronically from Dallas, Texas.

5.2. For the purposes of this Count, Domain Protection owns the domain names because it has a greater right to control or management of the domain names than the defendants. Notwithstanding Domain Protection's greater right to control or management of the domain names, the defendants exercised control over the property without the effective consent of Domain Protection and with the intent to deprive Domain Protection of control over the domain names. The defendants intended that a major portion of the value or enjoyment of the domain names, including the ability to sell and transfer the domain names, and to receive and control advertising revenue from the domain names, and to operate the domain names as active website, be lost to Domain Protection. The defendants intended that income from the assets would be diverted from Domain Protection and taken by the defendants, never to be returned. The defendants

also demanded compensation for return of Domain Protection's assets and threatened to release Domain Protection's registration of its domain names, unless Domain Protection paid to Sea Wasp, a 'registration fee' for each domain name.

5.3. As a result of the defendants' actions complained of in this Count, Domain Protection suffered actual damages including lost profit from the sale of domain names, lost income from advertising revenue, and lost income from operating active websites.

## COUNT II
## INTERFERENCE WITH CONTRACT

6.1. Domain Protection had contracts and prospective contracts to sell domain names subject of this action. Domain Protection also had contracts with advertising services to receive advertising revenue from domain names subject of this suit.  The defendants intentionally and maliciously interfered with those contracts, to prevent the sale and to steal the advertising revenue.  The defendants interfered with the sale of domain names by locking the domain name registrant information and preventing transfer of the domain names to an authorized registrar.   The defendants interfered with the contracts for advertising revenue by hijacking the 'DNS' records for the domain names and redirecting the domain names to the location chosen by the defendants,  which then shared revenue from the domain names with the defendants.

6.2.  The defendants' interference described above was the proximate cause of actual damages and loss to Domain Protection LLC, in losing the income from domain sales and advertising revenue.  The loss of income from sales and revenue is ongoing and exceeds $100,000.00.  The defendants' actions were willful and knowing, taken after discussions between the defendants, co-conspirators, and

Baron or confederates thereof. The action was taken by the defendants with the specific intent to cause substantial harm to Domain Protection by keeping the 'DNS' records of Domain Protection's domain names locked and pointed to the websites chosen by the defendants.

## COUNT III
## CIVIL CONSPIRACY

7.1. Domain Protection LLC pleads jointly a claim for state law civil conspiracy. The defendants, being two or more persons; and Baron or a confederate thereof, had the object to prevent Domain Protection's control over the domain names subject of this suit and had a meeting of minds on the object or on a course of action and in furtherance thereof engaged in the unlawful, overt acts complained of in this complaint with the damages detailed in this complaint being the proximate result. The defendants conspired to interfere with, and did, interfere with the business operations and contracts of Domain Protection, both of which actions are unlawful objectives pursuant to Texas law.

7.2. The conspiracy and actions taken in furtherance thereof, were engaged in with actual malice with the intention of appropriating control of the domain names from Domain Protection and interfering with and preventing Domain Protection's contracts to sell domain names and contracts for advertising revenue from domain names. Domain Protection suffered actual damages from the conspiracy from the loss revenue of domain sales and the loss of advertising income as detailed in this Complaint.

7.3. Texas law may recognize claims for Acting in Concert as delineated by the Restatement, 2nd, of Torts §876(a) and (b), and for which claims Domain Protection LLC also jointly pleads. The defendants engaged in one or more

tortious acts in concert with themselves and/or Baron or a confederate thereof, pursuant to a common design or, the defendants knew that the other's conduct constituted a violation of the other's duty and gave substantial assistance to the other to commit the tort.

7.4. The defendants changed the DNS records for the domain names and locked the domain names of Domain Protection and/or instructed conspirators to take such actions, to give substantial assistance and to facilitate the theft of control of the domain names, theft of revenue from the domain names, and interference with Domain Protection's contracts to sell domain names and to receive advertising revenue from domain names.

7.5. The defendants also engaged in wire fraud in furtherance of their activities and in or about June 2018, Sea Wasp and counsel for Sea Wasp wrote by email directed to Lisa Katz and/or counsel for Domain Protection in Dallas, Texas stating that counsel for Sea Wasp directed Sea Wasp to restore DNS settings as directed by Lisa Katz.

7.6. The defendants actions were willful and the defendants had actual knowledge that Lisa Katz was authorized pursuant to U.S. District Court's order and the defendants acted intentionally and maliciously at the request of and in concert with Baron or his confederates, to seek to thwart the Court's orders and to interfere with Katz' control over the domain names and transfer of the domain names to Domain Protection. The defendants had actual knowledge of the orders and rulings of the U.S. District Court for the Northern District of Texas and the adjudication of Baron's claims in the Collin County District Court.

# COUNT IV
# CONVERSION

8.1. Domain Protection pleads jointly and in the alternative a claim for conversion. Domain Protection is the registrant of the domain names subject of this suit and is entitled to control over the assets. The defendants exercised control over the property inconsistent with the plaintiff's rights as an owner and prevented Domain Protection from registering the domain names with a registrar authorized by it, from controlling the domain names, from selling the domain names, and from receiving advertising revenue from the domain names. The defendants' imposing Sea Wasp as the registrar of the domain names, locking the names from transfer to another registrar, and finally, in seizing control of the domain names, was an exercise of control in violation of and inconsistent with Domain Protection's rights. Domain Protection demanded return of the assets from the defendants, which demands were refused.

8.2. The underlying right to own and control the domain names is merged into documents known as the 'WHOIS' and "DNS" records of the domains. The domain names are distinct from the websites that the domain names point to. The WHOIS and DNS documents are maintained in electronic form by a domain registrar. In this case, the defendants imposed Sea Wasp as the domain registrar and took physical control over the WHOIS records and DNS records which are kept in electronic form pursuant to the rules of The Internet Corporation for Assigned Names and Numbers, the organization that is responsible for the coordinating of the internet. The defendants' control of the underlying WHOIS and DNS records thereby provided the defendants control over the domain names. The defendants' exercise of control over the domain names is expressly for the purpose of excluding Domain Protection from control. Domain Protection

demanded return of control over the domain names but Sea Wasp refused to relinquish its control over the electronic WHOIS and DNS records. The domain names converted by Sea Wasp are of fluctuating market value and pursuant to Texas law, the measure of damages is the highest market value of such property between the date of conversion and the filing of the suit.

8.3.  In addition to the domain names, Sea Wasp has, at least since June, 2018, converted by taking possession of and refusing to turn over to Domain Protection, all income derived from Domain Protection's domain names. Additionally, Sea Wasp converted over $150,000.00 of Domain Protection's funds that were on deposit.  Jointly and in the alternative, claim is made against the defendants pursuant to the equitable doctrine of Money Had and Received, Sea Wasp holds over $150,000.00 of funds that in equity and good conscience belong to Domain Protection.

8.4.  Sea Wasp's conversion was malicious, taken in contempt of and in disregard of the orders of the U.S. Federal District Court and the dismissal with prejudice of Baron, et. al.'s claims by the Collin County District Court.  Sea Wasp engaged in fraud to attempt to hide their conversion, including by email to Domain Protection, including for example:

> 8.4.1. On July 18, 2018 by email sent to Domain Protection, stating that if Domain Protection paid fees to Sea Wasp, (d/b/a Fabulous.com), that Domain Protection could "keep your domain names in your control";
>
> 8.4.2. On June 11, 2018, by email from David Vinterella representing that Sea Wasp's alteration of Domain Protection's domain name

nameserver records was a 'programming issue' that had been corrected; and

**8.4.3.** On June 21, 2018, by email from David Vinterella, falsely stating that Sea Wasp "maintained the same name servers and the same lock/unlock status on the domain names that was in place prior to the purchase of Fabulous by Sea Wasp";

**8.5.** Upon information and belief, the highest market value of the domain names converted by Sea Wasp exceeds $10 Million Dollars.

## COUNT V
## STORED COMMUNICATIONS ACT CIVIL DAMAGES

**9.1.** In 2014, the U.S. District Court for the Northern District of Texas authorized Lisa Katz to possess and control the domain name assets of Quantec, LLC and Novo Point LLC, which were registered at Fabulous.com. Pursuant to an agreement with creditors of Quantec, LLC and Novo Point LLC, Katz assigned the domain names to Domain Protection, LLC, and continued to manage the assets as the manager of Domain Protection, LLC. Fabulous.com was authorized by Katz, to act as an intermediary with Verisign, Inc., based in Reston, Virginia, which operates a diverse array of network infrastructure, including two of the Internet's thirteen root name servers, and is the authoritative registry for the .com and .net TLD domains. The Verisign name servers are a facility through which a communication service is provided and information about domain names is stored electronically for communication. These electronic systems provide the starting point for connecting computers using the internet to connect to domain names, such as Domain Protection's domain names, in the ".com" and ".net" domains. The electronic system provides a remote computing service and

provides to the public computer storage or processing services by means of an electronic communications system to provide information about domain names in the TLD domain of ".com" and ".net" domains.

9.2. The defendants accessed the records for Domain Protection's domain names on the electronic storage and communication system of Verisign, Inc., and, without Domain Protection's authorization, altered the data to make Sea Wasp appear as the authorized registrar of tens of thousands of Domain Protection's domain names, and then the defendants prevented the authorized access to that electronic communication and storage system by Domain Protection, and other registrars' action on behalf of Domain Protection, to access and modify that information stored in electronic storage in that system. The defendants thus intentionally accessed, without authorization, a facility through which an electronic communication service was provided; and exceeded any authorization to access that facility, and altered and prevented access authorized by Domain Protection to the electronic communication while it is in electronic storage in such system. Katz and Domain Protection did not authorize Sea Wasp, or any defendant, to act as the registrar of the Domain Protection domain names.

9.3. The conduct described above was engaged in with a knowing and/or intentional state of mind by the defendants. Domain Protection has been aggrieved by the defendants' actions described above, including by loss of control over tens of thousands of Domain Name assets, lost sales of domain names, and lost revenue from domain name advertising.

## 10. OTHER MATTERS

**10.1.** Pursuant to Fed.R.Civ.P. 38, Domain Protection LLC respectfully demands a jury trial.

**10.2.** All conditions precedent have occurred or have been performed.

**10.3.** Any inconsistent claims or allegations are pled in the alternative.

**10.4.** Factual allegations asserted anywhere in this Complaint are applicable as pleaded in the alternative, to each Count.

**10.5.** The damages detailed above are irreparable because Sea Wasp is a shell entity and will be unable to pay the judgment for damages assessed against it. Further, the actions complained of above have and are causing continuing irreparable injury to Domain Protection because the defendants are irreparably diverting all incoming email to each and every email account at each of domain Protection's domain names. Further, Sea Wasp is preventing the sale of tens of thousands of domains, while preventing the generation of income to renew those domain names, resulting in the monthly loss of thousands of domain names which have an appraised value far in excess of the net worth of the defendants, so that recovery of full loss from the defendants will be impossible, and the loss irreparable. Also, for a substantial number of the domain names lost because of the defendants' actions complained of above, the actual value of the domain substantially exceeds appraised value, but without holding an auction for the asset, (which the defendants are preventing), the value of those assets above appraised value cannot be ascertained with reasonable certainty and the loss is therefore irreparable. Similarly, although loss can be shown for prospective sales of domain names, at least to the amount of the firm offers received for purchase of that domain name, because the sale could not proceed and could not be negotiated, the ultimate negotiated sales price, above the amount of the initial

offer, is speculative, not recoverable as damages, and therefore is an irreparable loss.

## 11. PRAYER

**11.1. Actual Damages.**  Domain Protection prays for recovery against the defendants for the recovery of property and damages caused by the defendants as pleaded above.

**11.2. Exemplary Damages.**  Domain Protection further prays for recovery against the defendants for statutory and exemplary damages, as pleaded above. Exemplary damages prayed for include:

  **11.2.1.** Exemplary damages for the defendants' malicious interference with Domain Protection's contracts to sell domain names and contracts to receive advertising revenue, and Domain Protection's contract with creditors of Quantec, LLC to liquidate domain names to satisfy past-due debts;

  **11.2.2.** Exemplary damages for the defendants' malicious conversion of domain names subject of this suit;

  **11.2.3.** Exemplary damages for the defendants' civil conspiracy; and

  **11.2.4.** Exemplary damages allowed by the Stored Communications Act, pursuant to 18 U.S.C. § 2707(c).

**11.3. Injunctive Relief.**  Domain Protection further prays for injunctive relief against the defendants, as follows:

  **11.3.1.** Preliminary and permanent Injunctive relief is requested with respect to the state law claims for theft liability, conversion, interference with contract, and civil conspiracy, and with respect to the Stored Communications Act Civil Action pursuant to 18 U.S.C. § 2707(b)(1).

**11.3.2.** Domain Protection prays for an order: (i) enjoining the defendants from interfering with Domain Protection's access to and control over the domain names registered to Domain Protection; (ii) enjoining the defendants from interfering with the transfer of the domain names to a registrar authorized by Domain Protection, and (iii) enjoining the defendants from interfering with Domain Protection's control over the WHOIS and DNS records of the domain names registered to Domain Protection.

**11.4.** <u>Attorney's Fees.</u> Domain Protection further prays for an award of attorney's fees as allowed by law, including pursuant to 18 U.S.C. § 2707(b), and state law.

**11.5.** <u>Interest, costs and other relief.</u> Domain Protection further prays for an award of pre and post-judgment interest as allowed by law, all costs of court, and for any other relief, both special and general to which it may be justly entitled, including in damages and equitable relief.

Respectfully submitted,

*/s/ Gary Schepps*
Gary N. Schepps
Texas Bar No. 00791608
Drawer 670804
Dallas, Texas  75367
(972) 200-0000 - Telephone
(972) 200-0535 - Facsimile
legal@schepps.net
Counsel for DOMAIN PROTECTION LLC

DATED: February 13, 2019