# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DOMAIN PROTECTION, LLC, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-792 |
| | § | Judge Mazzant |
| SEA WASP, LLC, ET. AL. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Sea Wasp, LLC's Motion to Stay (Dkt. #199), Sea Wasp's Motion for Reconsideration (Dkt. #208), Movant Quantec, LLC's Motion for Leave (Dkt. #222), and Quantec's Second Motion to Intervene (Dkt. #224). After careful consideration, the motions will be denied.

## INTRODUCTION

The facts and procedural history are long and complicated. *See Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-cv-792, 2019 WL 3219939, at *1–3 (E.D. Tex. July 17, 2019) (discussing the facts in this case in more detail). An abbreviated summary is outlined below.

Plaintiff Domain Protection, LLC is the registered name holder for over 50,000 domain names (the "Domain Names"). Sea Wasp, on the other hand, is the Registrar over the Domain Names and is accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"). Domain Protection has sued Sea Wasp for placing an executive lock on the Domain Names and refusing to release it. Sea Wasp counters that ICANN requires it to lock the Domain Names until a dispute over whether Domain Protection is the rightful owner of the Domain Names (the "Ownership Dispute") is resolved. The Ownership Dispute turns on whether, in 2014, Lisa Katz exceeded her authority as the Local Operations Manager for Quantec when she assigned the Domain Names to Domain Protection (the "Assignment").

Domain Protection moved for a preliminary injunction in November 2018, asking the Court to force Sea Wasp to remove the executive lock. The corresponding response and reply were timely filed but a sur-reply was not. Sea Wasp then filed three motions seeking leave to file additional briefs—two in January 2019 (Dkt. #79; Dkt. #83) and a third in April 2019 (Dkt. #120). Perhaps in light of the extensive briefing, Domain Protection and Sea Wasp agreed that no hearing on the motion was necessary (*see* Dkt. Entry, April 17, 2019).

The Court took the parties at their word, and ruled on the motion for preliminary injunction without a hearing. After reviewing the Parties' briefs, however late they were filed, the Court granted Domain Protection's Motion for Preliminary Injunction (the "Preliminary Injunction Order") (Dkt. #54). The Court found that Domain Protection had made a *prima facie* showing that Sea Wasp exceeded its authority by placing an executive lock on the Domain Names, that the executive lock was causing Domain Protection irreparable harm, and that these harms outweighed those to Sea Wasp. The Court consequently enjoined Sea Wasp from "interfering with Domain Protection's control over the Domain Names," and directed Sea Wasp "to immediately undo all changes it made without Domain Protection, LLC's permission to the Domain Names' nameserver records." *Domain Prot.*, 2019 WL 3219939, at *11.

Sea Wasp now asks the Court to reconsider the Preliminary Injunction Order, and to stay its enforcement while the Court conducts its reconsideration. Sea Wasp contends that, although the motion raises arguments and evidence not before the Court when deciding the motion for preliminary injunction, any failure to timely raise these matters is due to Domain Protection's delays in the discovery process. The Preliminary Injunction Order also prompted Quantec to file three motions in this case, even though it is a non-party. These include: (1) a motion to renew its

previously denied motion to intervene, (2) a motion to intervene (subject to the motion to renew), and (3) a motion to reconsider the preliminary injunction order.

Domain Protection responds that it is still entitled to a preliminary injunction—even assuming the Court considers arguments and evidence that had not been raised in the several months its motion for preliminary injunction was pending.

**LEGAL STANDARD**

A motion seeking reconsideration may be construed under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. "The Fifth Circuit recently explained that 'Rule 59(e) governs motions to alter or amend a final judgment,' while 'Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action.'" *Dolores Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Further, "'[i]nterlocutory orders,' such as grants of partial summary judgment, 'are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires [pursuant to Rule 54(b)]." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)) (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 585, 862 (5th Cir. 1970)).

Because this is a motion seeking reconsideration of an interlocutory order, the Court uses Federal Rule of Civil Procedure 54(b). "Federal Rule of Civil Procedure 54(b) provides that, in a case involving multiple claims or parties, 'any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities or fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims

and all the parties' rights and liabilities.'" *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2018 WL 276154, at *4 (N.D. Tex. Jan. 3, 2018) (quoting FED. R. CIV. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

## DISCUSSION

After the Court issued a preliminary injunction in this case, Sea Wasp and Quantec filed several motions: (1) Quantec's motion to renew its motion to intervene; (2) Quantec's second motion to intervene; (3) Quantec and Sea Wasp's respective motions for reconsideration; and (4) Sea Wasp's motion stay enforcement of the preliminary injunction. The Court addresses each in turn.

### I. Quantec's Motion to Renew & Second Motion to Intervene

Quantec asks to renew a motion to intervene (Dkt. #15) that has been denied on several occasions (Dkt. #15; Dkt. #52). It argues that, because the preliminary injunction has just issued, Quantec has a meaningful interest in the case that it has timely asserted. The Court disagrees.

Despite Quantec's misleading suggestion otherwise, the Court has already considered *and rejected* Quantec's position that a preliminary injunction gives it a right to intervene in the original order denying Quantec's right to intervene. The Court noted that:

> Movants argue in their reply brief that disposition of the action before the court will impede the Movants' rights because Domain's preliminary injunction will affect the Movants' ownership interest in the domain names involved in this case. Immediately after this argument, however, the Movants recognize that Sea Wasp "takes no position as to ownership," and the dispute between Domain and Sea Wasp involves the power of a registrar under the ICANN rules. Movants' concern

4

regarding the preliminary injunction, which the Movants allege will affect their ownership interest, does not mean that the disposition of this action, which involves Sea Wasp's power as an ICANN registrar, will necessarily affect the Movants' alleged ownership interest in the domain names. The Movants may file their own lawsuit concerning the ownership of the domain names. *See Alam v. Mae*, Civ. Action No. H-02-44782007, 2007 WL 4411544, *5 (S.D. Tex. Dec. 17, 2007). The Movants in fact allege that they have already done so in the United States Bankruptcy Court for the Eastern District of Texas.

(Dkt. #40).[1] Accordingly, to the extent Quantec or any other party is concerned about Domain Protection's potential sale of the Domain Names, it should file a motion for preliminary injunction *in the court where that dispute is* being heard. *See Mae*, 2007 WL 4411544, at *5 (citing *James v. Harris Cty. Sherriff's Dep't.*, No. H-04-3576, 2005 WL 1878204, at *2 (S.D. Tex. Aug. 9, 2005)); *Airbus Helicopter Inc. v. Helicopter Consultants of Maui, Inc.*, No. 4:14-cv-60-O, 2015 WL 12712704, at *2 (N.D. Tex. Jan. 22, 2015) (each denying a motion to intervene since the proposed intervener could file its own lawsuit). Nothing in the Preliminary Injunction Order, which *enjoins Sea Wasp* from interfering with Domani Protection's possessory rights, would prohibit a court hearing the Ownership Dispute to enter a preliminary injunction *based on that court's authority*. Quantec's Motion to Renew will be denied for these reasons. Quantec's Second Motion to Intervene, filed "subject to [its] Motion for Leave," is thus rendered moot. (Dkt. #224 at pp. 3–18).

## II. Sea Wasp and Quantec's Respective Motion to Reconsider

Sea Wasp and Quantec argue that a preliminary injunction should not issue based on various arguments and evidence it had not previously raised. The Court is unconvinced, even assuming their failure to timely raise these matters was justified and that Quantec has the standing to bring this motion.[2]

---

[1] This Order was entered by another judge before the case was transferred to this District.
[2] Although the Court will not permit Quantec to intervene, *see supra* at Parts I, the Court considers the arguments raised in Quantec's motion for reconsideration out of an abundance of caution.

5

### a. Domain Protection's Standing to Assert its TTLA Claim

After 226 docket entries were filed, Sea Wasp argues, for the first time, that Domain Protection lacks standing to bring its claims.[3] Sea Wasp contends that Domain Protection has not sustained a protected injury in this case (Element No. 1), reasoning that (1) Katz lacked authority to assign the Domain Names to Domain Protection and, (2) as a result, Domain Protection has no protectable interest in them. *See Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 454 (5th Cir. 2017) (explaining that "a plaintiff must prove he has sustained an injury in fact that is both concrete and particularized and actual or imminent" to establish standing).

The Court cannot agree. The TTLA "provides victims of a theft, as defined in various sections of the Texas Penal Code with a civil action to recover damages, fees, and costs from the thief." *In re Powers*, 261 F. App'x 719, 721 (5th Cir. 2008). It is well-settled that a plaintiff may bring a TTLA claim based merely on its possessory interest in the property in question. *See Manning v. State*, 68 S.W.3d 697, 698 (Tex. Crim. App.—Corpus Christi 2000, pet. ref'd) (citing *Easton v. State*, 533 S.W.2d 33, 35 (Tex. Crim. App. 1976)) ("The State can prove ownership in three ways: (1) by showing title, (2) by proving possession, or (3) by showing that the alleged owner has a greater right to possession than the defendant."). This is because Texas' theft laws are broadly written to protect *any proprietary interest* a party has in property, *see Domain Prot.*, 2019 WL 3219939, at *5, even when a third party may have a greater claim to that property or when that party is in *wrongful* possession of the property, *see* TEX. PEN. CODE § 31.03 ("A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the

---

[3] The Court notes that Sea Wasp has consistently refused to timely raise arguments. For instance, although Sea Wasp should and could have raised its challenge to standing in its response to the motion for preliminary injunction –or at least in its first brief on the motion for reconsideration, it only elected to do so in its reply. Once again, the Court reminds Sea Wasp of its obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* FED. R. CIV. P. 1 (imposing this duty on the court *and the parties*).

6

property.") (emphasis added); Tex. Pen. Code § 1.07(a)(35) (defining "[o]wner" to include those with "*possession of the property, whether lawful or not*, or a greater right to possession of the property than the actor") (emphasis added). Any questions or evidence concerning how Domain Protection came into possession of the Domain Names—or whether other parties have a greater claim to them—are simply irrelevant to the TTLA claim being litigated *between Domain Protection and Sea Wasp*.

Sea Wasp acknowledges that, under Texas' theft laws, the "owner" of property is defined to include those with "*possession of the property, whether lawful or not*, or a greater right to possession of the property than the actor." Tex. Pen. Code § 31.03 (emphasis added). *See also Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986) ("When there are equal competing possessory interests in property allegedly stolen, we believe that the key to answering the question of which person has the greater right to possession of the property is who, *at the time of the commission of the offense,* had the greater right to possession of the property."). It challenges whether Domain Protection has a protected interest under the TTLA, nevertheless. Sea Wasp reasons that an "owner" is only meant to identify a "defendant under the Penal Code"—that is, anyone has appropriated property that another holds—and not to identify who can bring a claim under the TTLA. The Court disagrees. The TTLA states that "[a] person who commits theft is liable for the damages resulting from the theft," Tex. Civ. Prac. & Rem. Code § 134.003, expressly incorporates the Texas Penal Code, *id.* § 134.002, and has seemingly placed no limitation on who can bring a TTLA claim, *id.* § 134.001 *et seq.* It follows that anyone who would be a victim of theft under the Texas Penal Code—including those with a mere possessory interest in the property at issue—can bring a TTLA claim against any defendant who encroaches on that interest.

Sea Wasp notes that the Fifth Circuit has affirmed a motion to dismiss for lack of standing where the plaintiff lacked "standing to assert economic injuries" based on "a supposed property interest in assets . . . he no longer owns." *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019). But this case is not applicable to these facts. First, the plaintiff's lack of ownership was already established by other courts *as a matter of law*. *See id.* (noting that other courts had already held that the plaintiff did not own the property in question). Here, on the other hand, Quantec and its affiliates have repeatedly tried to obtain rulings that challenge the Assignment—to no avail. As importantly, the plaintiff's claims "relat[ed] to [his] *ownership* of certain assets," *id.* (emphasis added). And, in this case, Domain Protection has brought a TTLA claim under the TTLA, which, protects a broad range of proprietary interests.

Sea Wasp's challenge to the Assignment would fail anyway. The Fifth Circuit and Texas Supreme Court are clear. If one party has assigned property to another—without authority to do so or in breach of a fiduciary duty—the assignment is *voidable* in a suit by the principal. *See Reinagel v. Deutsche Bank Nat. Tr. Co.*, 735 F.3d 220, 226 (5th Cir. 2013) (citing *Nobles v. Marcus*, 533 S.W.2d 923 (Tex.1976)) (explaining that, "in *Nobles v. Marcus*, the Texas Supreme Court clarified that a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal—here, Citi (or Argent through Citi)."). This means that, *until Quantec or another party successfully challenges the Assignment in a separate suit*, it remains presumptively valid. *Nobles*, 533 S.W.2d at 926 ("It is settled that such a deed is valid and represents prima facie evidence of title *until there has been a successful suit to set it aside*.") (emphasis added). Sea Wasp has not, and likely cannot, provide the Court with an order finding that the assignment is now void. To the contrary, Quantec and/or the parties it is affiliated

with have tried to challenge the Assignment on multiple occasions and have failed each time (Dkt. #54, Exhibit 9; Dkt. #54, Exhibit 12). Domain Protection has established its standing to bring its TTLA claim for this reason.[4]

### b. Failure to Justify Consideration of New Non-Jurisdictional Arguments and Evidence

Sea Wasp correctly notes that standing may be challenged at any time. But, on a motion to reconsider under Rule 54(b), district courts are to exercise their discretion to consider new arguments and evidence "sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Tolleson v. Livingston*, No. 2:12-CV-201, 2014 WL 1386319, at *2 (S.D. Tex. Apr. 9, 2014) (citing *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414–15 (5th Cir. 1993); CHARLES ALAN WRIGHT, ET. AL., FED. PRAC. AND PROC. § 4478.1 (2d ed., 2013)). After all, "if the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] . . . the cycle of reconsideration would be never-ending." *Calpetco*, 989 F.2d at 1415. Accordingly, although a district court *may* revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, "without justification, rais[ing] new arguments for the first time." *See DAC Surgical Partners P.A. v. United Healthcare Srvs., Inc.*, No. 4:11-cv-1355, 2017 WL 3484507, at *2 (S.D. Tex. Aug. 14, 2017).

Neither Sea Wasp nor Quantec has provided any good reason why they could not have raised the arguments in their motions for reconsideration before the Preliminary Injunction Order was entered. Domain Protection first filed its motion for preliminary injunction in August of last year, and the motion has been ripe for several months. To the extent Sea Wasp needed information

---

[4] The Court will consider Sea Wasp's challenges to Domani Protection's standing to raise its other claims in the ordinary course of business since the preliminary injunction was based only on Domain Protection's TTLA claim.

to challenge the motion or Katz's credibility, Sea Wasp has had ample opportunity to do so. Instead, Sea Wasp advised the Court that no evidentiary hearing on the preliminary injunction was necessary,[5] and first sought to take Katz's deposition in early May of the following year. Quantec, on the other hand, did not weigh in on the motion for preliminary injunction at any time while it was under consideration.

Sea Wasp and Quantec insist that they did not timely raise the arguments and evidence at issue only due to Domain Protection's refusal to cooperate in the discovery process. Sea Wasp notes, for instance, that the arguments it now raises became apparent only "**after** Katz's May 31 deposition testimony." (Dkt. #208, at p. 9 n.22) (emphasis in original). But once Sea Wasp and Quantec were on notice that Katz's deposition divulged information that arguably implicates Domain Protection's right to a preliminary injunction, either could have sought leave to file additional briefing at that point—or sought an evidentiary hearing on the preliminary injunction. The preliminary injunction, after all, was not ruled on for another six weeks. But they did none of these things. Instead, Sea Wasp and Quantec chose to raise their concerns only after the Court expended a significant amount of time and energy resolving a complicated motion and reviewing the ample, largely undisputed record before it—including the arguments Sea Wasp raised in the multiple late-filed briefs. Any non-jurisdictional arguments raised in the motion for reconsideration fail solely on this ground. *See Calpetco*, 989 F.2d at 1415 ([W]e consider whether the district court was required to reconsider a summary judgment simply because Calpetco

---

[5] Sea Wasp insinuates that the Court erred by not deciding the motion for preliminary injunction without an evidentiary hearing—even though Sea Wasp has never asked for a hearing and, in fact, previously told the Court that no hearing as necessary. The case law indicates otherwise. *See Gates v. Strain*, 885 F.3d 874, 884 n.5 (5th Cir. 2018) (quoting *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997)) ("[T]he party seeking an evidentiary hearing 'must show . . . that he has and intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue an injunction."); *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("[A] district court may issue a preliminary injunction without an evidentiary hearing when the facts are not in dispute.") (citation omitted).

belatedly came forward with evidence not submitted prior to the ruling. The answer must be no. Otherwise, the cycle of reconsideration would be never-ending").

### c. The Newly Raised Merits Arguments

Sea Wasp and Quantec's motions for reconsideration would fail even if every argument were properly before the Court.

#### i. The Fifth Circuit's Opinion in *Netsphere*

Sea Wasp and Quantec argue that, if the executive lock is released, Domain Protection will sell the Domain Names to pay off alleged Quantec creditors for payments that Quantec disputes are owed. They believe that, by reversing the Receivership Order, the Fifth Circuit purportedly intended to prevent paying these alleged creditors without a judicial determination that they owed these debts. They conclude that the Preliminary Injunction Order must be reconsidered as a result.

The Court disagrees. Neither Quantec nor Sea Wasp has explained precisely how *Quantec's alleged due process rights* are relevant to the legal issue before the Court: whether *Sea Wasp* has encroached on *Domain Protection's* possessory interest in the Domain Names through the executive lock. *See Netsphere*, 703 F.3d at 308–09 (finding that the district court lacked jurisdiction to enter a receivership over Baron's assets to pay off Baron's creditors since the attorneys' claims "were not the subject matter of the underlying litigation" and the attorneys were free to file their own claims). Nor is their relevance apparent to the Court. Again, this case concerns whether Sea Wasp had the authority to lock the Domain Names once a dispute concerning the Domain Names arises—not whether Domain Protection is likely to win a separate ownership dispute over those names (Dkt. #40 at pp. 3–4). The Court already found that Sea Wasp lacked this authority—at least for purposes of a preliminary injunction. *See Domain Prot.*, 2019 WL 3219939, at *6. Quantec and Sea Wasp's zealous concerns about *Quantec's* due process rights—

11

despite Sea Wasp's contention that it is a "neutral" party in this dispute—is simply not grounds for reconsideration.[6]

Sea Wasp and Quantec's interpretation of *Netsphere* is wrong anyway. Sea Wasp and Quantec note that, in *Netsphere*, the Fifth Circuit stated that the Domain Names will not continue to be sold to pay off the LLCs' creditor. According to them, this means that the Court cannot direct Sea Wasp to release the executive lock, which would enable Domain Protection to sell the Domain Names. The Court cannot agree. In *Netsphere*, Jeffrey Baron hired, fired, and refused to pay several of his attorneys as a vexatious litigation tactic. The lower court responded by appointing a receiver over assets belonging to Barron and those belonging to Quantec, LLC and Novo Point LLC, two LLCs with ties to him. The receiver then sold assets belonging to Baron and the LLCs, including some of the Domain Names at issue in this case, to pay Baron's former attorneys. On appeal, the Fifth Circuit would reverse the receivership order and prohibited "further sales of domain names or other assets." *Id.* at 313. The Fifth Circuit reasoned that:

> Although the attorneys' allegations and claims were delaying the district court and bankruptcy proceedings, they were not the subject matter of the underlying litigation.

*Netsphere*, 703 F.3d at 309. In other words, the Fifth Circuit was prohibiting the court-appointed receiver from selling the Domain Names in a conscious attempt to resolve claims not before that court. It does not follow that the Court here cannot enjoin Sea Wasp from conduct that *is at issue in the case before it* simply because an injunction could lead to the sale of the Domain Names. After all, the Preliminary Injunction Order is meant to stop Sea Wasp from unilaterally appointing itself as the receiver over the Domain Names due to a dispute it is not a part of—a power that, under *Netsphere*, even federal district courts lack. *See id.* (finding the court-appointed receivership

---

[6] The Court notes that, throughout this litigation, Sea Wasp and Quantec have raised nearly identical arguments.

12

improper since "and claims . . . were not the subject matter of the underlying litigation"). As stated, to the extent an injunction is warranted due to the Ownership Dispute, the proper court of action is for Quantec or Baron to prove their entitlement to one to the court hearing that dispute. *See supra* at Part I.

## ii. **The New Evidence/ Allegedly Improper Assignment**

Quantec and Sea Wasp also cite new evidence that purportedly requires the Court to reconsider granting the preliminary injunction. Again, neither adequately explains precisely why this evidence impacts the Court's determination that Domain Protection is entitled to a preliminary injunction based on its TTLA claim. The Court therefore presumes that, in raising this argument, Quantec and Sea Wasp attempt to bolster Sea Wasp's argument (in its reply) that Domain Protection lacks a possessory interest protected by the TTLA. But, as the Court has now repeatedly explained, the TTLA protects a party's *possessory interest* in property—even when a non-party arguably has a greater interest in that property. *See supra* at Part II(a). To the extent the new evidence was meant to challenge the merits of the case on some other ground, these arguments are waived for being inadequately briefed. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) (quoting *Castro v. McCord*, 259 F. App'x 664, 665 (5th Cir. 2007)) ("A party 'waives an issue if he fails to *adequately* brief it.'") (emphasis added). The new evidence does not warrant reconsideration as a result.

## iii. **Reliability of Gary Schepps and Lisa Katz**

Finally, Quantec appears to argue that the Court should not trust anything stated by either Gary Schepps (Domain Protection's Counsel) or Katz. They then cite various statements that purportedly reveal their dishonest characters (Dkt. #222 at pp. 11–16). This primarily consists of complaints about how Schepps and Katz have litigated their case *against Sea Wasp*, rather than

facts that the Court relied on in granting the motion for preliminary injunction.[7] The Court is, unfortunately, well-aware that Domain Protection, Sea Wasp, and Quantec *have each* litigated this case with little regard for their roles as officers of the Court. *See* LOCAL RULE AT-3(k) ("Effective advocacy does not require antagonistic or obnoxious behavior, and members of the bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect."). But Quantec cites no authority that would allow the Court to reject statements Schepps or Katz have made simply because an adverse party (in another case), unsurprisingly, finds them untrustworthy. *See* FED. R. CIV. P. 7(b)(1)(B) (explaining that movants must "state with particularity the grounds for seeking the order"). Nor has the Court found any. To the contrary, the Fifth Circuit has made clear that courts may properly accept evidence to the extent there is no evidence that refutes it. *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("[A] district court may issue a preliminary injunction without an evidentiary hearing when the facts are not in dispute.") (citation omitted). Quantec's low opinion of Schepps and Katz is not grounds for reconsideration.

### III. Sea Wasp's Motion to Stay

Sea Wasp also sought to stay the enforcement of the preliminary injunction Order while the Court considered its pending motion for reconsideration (Dkt. #199 at p. 4). Because the Court resolves the motion for reconsideration in this order, this request is now moot.

### CONCLUSION

For these reasons:

1. Quantec's Motion for Leave to Renew Motion to Intervene and for Reconsideration (Dkt. #222) is **DENIED**;

---

[7] Quantec's familiarity with actions Schepps and Katz *directed to Sea Wasp* is curious considering Sea Wasp's purported neutrality in the case. But the Court addresses the argument that Quantec intends to make, nevertheless.

2. Quantec's Renewed Motion to Intervene (Dkt. #224), filed subject to the motion for leave, is **DENIED AS MOOT**;

3. Sea Wasp's Motion for Reconsideration of the Court's Amended Memorandum Opinion and Order (Dkt. #208) is **DENIED**; and

4. Sea Wasp's Expedited Motion to Stay (Dkt. #199) is **DENIED AS MOOT**.

Sea Wasp must comply with the Preliminary Injunction Order by August 23, 2019 at 12:00 p.m. Otherwise, the Court will enter an order requiring Sea Wasp to show cause as to why it should not be held in contempt, as Domain Protection has requested (Dkt. #198).

**IT IS SO ORDERED.**

**SIGNED this 20th day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE