# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DOMAIN PROTECTION, LLC, | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No.  4:18-cv-792 |
| | § | Judge Mazzant |
| SEA WASP, LLC, ET. AL. | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are: (1) Sea Wasp, LLC's Motion for Sanctions (Dkt. #144); (2) Sea Wasp, LLC's Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC (Dkt. #162); (3) Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps (Dkt. #189); and (4) Sea Wasp, LLC's Motion to Supplement its Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC (Dkt. #282).  Having considered the motion and the relevant pleadings, the Court finds that each Motion is **DENIED** save Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps (Dkt. #189) which is **GRANTED** in part and **DENIED** in part and Sea Wasp, LLC's Motion to Supplement its Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC (Dkt. #282) which is **GRANTED**.

## BACKGROUND

The underlying facts of the present Motions, and indeed this entire action, are needlessly complicated.[1]  At the outset, the Court notes that each party is attempting to litigate matters not before the Court.  That a number of appeals where taken up to the Fifth Circuit in prior cases by Schepps or that Jeffrey Baron brought a conspiracy claim against Domain Protection, Katz, and others is irrelevant.  The only facts that the Court will consider are the facts that concern the present

---

[1] For a full discussion of the facts surrounding the present action, see Dkt. #192 and Dkt. #261.

action and those that go directly to the validity of current representation. Those facts are as follows.

On June 18, 2018, Schepps filed the present action against Sea Wasp on behalf of Domain Protection (Dkt. #1). Domain Protection, through Schepps, claimed, in its first complaint, that Sea Wasp was liable for interference with contract, civil conspiracy, and conversion for impermissibly placing an executive lock on its Domain Names (Dkt. #1). Further, Domain Protection alleged that Sea Wasp was liable under the Texas Theft Liability Act and Stored Communications Act for the same conduct (Dkt. #1). This was not Schepps first time litigating over the Domain Names, however. Prior to the present action, Schepps represented Jeffrey Baron, Quantec, LLC, and Novo Point, LLC in matters involving rights to the Domain Names ("Initial Proceeding") (Dkt. #162). Schepps then represented Plaintiffs Chris Payne, Domain Protection, LLC, Domain Vault, LLC, and Lisa Katz in a subsequent action in the Bankruptcy Court for the Eastern District of Texas against Baron, Quantec, and Novo Point ("Bankruptcy Proceeding"). The Bankruptcy Proceeding also concerned a dispute over ownership rights and control to the Domain Names. Upon discovery of Schepps' former representation of Baron, Quantec, and Novo Point in the Initial Proceeding, Judge Brenda Rhoades, immediately disqualified Schepps from further representation of Katz and Domain Protection in the Bankruptcy Proceeding. *In re Payne*, Case No. 16-41533 (Bankr. E.D. Tex. Dec. 11, 2018). As Judge Rhoades opined, the two proceedings were substantially related, and thus it was improper for Schepps to continue his representation. *Id.*[2]

Schepps now represents Domain Protection in the present action for the very Domain Names which were in dispute in the former two actions. Baron, Quantec, Novo Point, and Katz

---

[2] The Court takes judicial notice that Gary Schepps, Lisa Katz, Domain Vault, LLC, Novo Point, LLC, and Quantec, LLC, are appealing Judge Rhoades' order disqualifying Gary Schepps to the United States District Court for the Eastern District of Texas, Sherman Division, under 28 U.S.C. § 158.

are not parties here, however. Indeed, each of Baron and Quantec's attempts to intervene have been denied by the Court (Dkt. #15; Dkt. #52; Dkt. #224). Rather, this action concerns Domain Protection's allegations against Sea Wasp and Individual Defendants Gregory Faia and Vernon Decossas. Despite Baron and Quantec's absence from the present action, Conrad Herring—counsel to Baron and Quantec—filed a Motion to Disqualify Gary Schepps (Dkt. #66) through his capacity as an officer of the court. Herring claimed that Schepps could not represent Domain Protection here as the present lawsuit was contrary to the interests of his former clients, Baron and Quantec (Dkt. #66). The Court denied Herring's Motion after finding that Herring lacked standing to challenge Schepp's representation (Dkt. #197). Specifically, the Court found that Herring was not one of the parties Schepps had formerly represented and thus, even as an officer of the court, Herring could not challenge Schepps' representation (Dkt. #197). Sea Wasp now makes the same, and additional, arguments that Herring made to disqualify Schepps from representing Domain Protection. Sea Wasp additionally utilizes the same, and again additional, arguments to attempt to levy sanctions against Schepps for his representation of Domain Protection. The additional arguments can be characterized as pre-filing conduct and post-filing conduct.[3] The Court begins with the pre-filing conduct.

Sea Wasp relies upon the testimony of Katz at the May 31 deposition to illustrate the pre-filing conduct that Schepps engaged in. The testimony of Katz is as follows. Katz and Schepps have been friends since they attended law school together at Texas Wesleyan Law School (Dkt. #175, Exhibit A). In 2011, Schepps secured a job for Katz—who had not passed the bar—as a manager for Quantec and Novo Point, LLC (Dkt. #175, Exhibit A). Katz salary was projected to be approximately $180,000 a year (Dkt. #175, Exhibit A). In her role as a manager for Quantec

---

[3] Filing refers to the filing of this lawsuit.

and Novo Point, Katz did not complete time records (Dkt. #175, Exhibit A). Katz claims that she is owed $1.62 million for her work since 2011 with Quantec and Novo Point—an amount she claims she has yet to be paid (Dkt. #175, Exhibit A). Further, Katz alleges that Schepps has not been paid for his role with Quantec and Novo Point either (Dkt. #175, Exhibit A). On February 28, 2014, Judge Sam Lindsay appointed Katz to hold Quantec's 59,000-plus Domain Names (Dkt. #175, Exhibit A). Katz admits that she was serving in a fiduciary role to Quantec following her appointment (Dkt. #175, Exhibit A).

In early 2014, following Katz' appointment, Chris Payne, Schepps, and Katz had a "back-room meeting" which resulted in the decision to create a "liquidation vehicle" (Dkt. #175, Exhibit A). The liquidation vehicle would be used to sell Quantec's domain names to pay back Schepps, Payne, Rasansky, Katz, and other creditors for, among other things, attorneys' fees and backpay (Dkt. #175, Exhibit A). A liquidation vehicle was opted for by Payne, Schepps, and Katz because Quantec's assets were allegedly being threatened by creditors who were planning to put Quantec into bankruptcy (Dkt. #175, Exhibit A). Thus, using a liquidation vehicle to transfer Quantec's assets out of Quantec would protect those assets from other creditors (Dkt. #175, Exhibit A). The most active member in implementing the liquidation vehicle idea from the "back-room meeting" was Schepps (Dkt. #175, Exhibit A). That liquidation vehicle became Domain Protection (Dkt. #175, Exhibit A).

The structure and implementation of Domain Protection is relevant for these motions. Katz is Domain Protection's manager and sole employee (Dkt. #175, Exhibit A). As its manager, Katz testified that she could not identify Domain Protection's "business address, phone number, fax number, sign, office furniture, website, or other indicia of ordinary business" (Dkt. #162). Katz further testified that Schepps: "drew up the papers to set up Domain Protection"; "handled Domain

Protection's corporate registration"; "drew up the contract that transferred the Quantec domain names to the 'liquidation vehicle,' Domain Protection"; and acted as "Domain Protection's lawyer and effective decision-maker on all legal matters" (Dkt. #162) (summarizing the May 31 deposition of Katz). The foregoing actions, along with the conduct described in Dkt. #192 and Dkt. #261, which was allegedly committed by Sea Wasp, led to the present lawsuit. This leads the Court back to the recent past for Sea Wasp's second additional argument—i.e., Schepps alleged post-filing conduct.

As previously stated, Schepps filed this lawsuit on June 18, 2018 (Dkt. #1). After Schepps filed this lawsuit, Schepps provided the Court with a Certificate of Interested Persons (Dkt. #4). The Certificate named Domain Protection, LLC; Sea Wasp, LLC; Gregory G. Faia; and Vernon H. Decossas as the persons who had a financial interest in the outcome of the proceeding (Dkt. #4). Notably, the Certificate did not name Katz or Schepps, a fact that Sea Wasp now claims requires Schepps disqualification (Dkt. #162). The parties then continued into discovery which brings the Court to the present Motions.

On April 23, 2019, "Sea Wasp wrote Schepps for deposition dates for Plaintiff and Lisa Katz by May 8" (Dkt. #189). Schepps responded that he would provide the deposition dates (Dkt. #189, Exhibit C). After no deposition dates were provided, however, Sea Wasp unilaterally sent out deposition notices for Katz and Plaintiff for May 2 and May 3, respectively (Dkt. #189). Schepps did not object to these notices, or the eventual subpoenas that were provided to Katz, until May 1 (Dkt. #189). Following Schepps eventual objection, Katz refused to appear on both May 2 and May 3 (Dkt. #189). This led to a hearing before the Court. On May 3, 2019, the Court ordered the parties to set the Rule 30(b)(6) deposition of Lisa Katz by the following week. Following the inability of the parties to agree on matters surrounding the 30(b)(6) deposition, the Court then

ordered that the deposition be held on May 31, 2019. The Court then granted in part and denied in part Plaintiff's Motion for Protective Order (Dkt. #131) thus creating the topics for the deposition (Dkt. #149). The Court also granted Sea Defendant Sea Wasp's Motion to Compel Production of Documents from Domain Protection, LLC (Dkt. #148). On May 28, 2019, the Court ordered Defendant to appear in Sherman as noticed for a period of 7 hours to complete the deposition. On June 3, 2019, after a dispute at the deposition of Katz, a Hotline Order was entered which ordered that the parties either complete the deposition as scheduled or determine a mutually agreeable time to reconvene and complete the deposition (Dkt. #156). Since the imposition of that Hotline Order, the deposition of Katz has yet to resume. Indeed, following the Hotline Order, another subpoena had been sent to Katz for a deposition on June 19, 2019 (Dkt. #189). Schepps again responded that "Ms. Katz will not be attending a deposition on the 19th" (Dkt. #189, Exhibit K). The Court has since intervened and again ordered that the deposition be finished by November 19, 2019 (Dkt. #263).

The allegations related to Schepps prior representation as well as his pre- and post-filing conduct have led to the five current motions. First, Sea Wasp filed: (1) Sea Wasp's Opposed Motion for Leave to Exceed Page Limit of its Motion for Sanctions (Dkt. #143); (2) Sea Wasp, LLC's Motion for Sanctions (Dkt. #144); and (3) Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps (Dkt. #189). Domain Protection opposes each of Sea Wasp's Motions (Dkt. #157; Dkt. #205). The arguments made in support of, and against, each of the Motions are as follows:

- Schepps "has a personal financial stake in the outcome, as Plaintiff was formed as a "liquidation vehicle" to secure and pay his creditor claims";
  - The assertion that Schepps has a financial stake in the outcome is unsupported by the record and "whatever Domain Protection ultimately desires to do with its assets is not the business of Sea Wasp and is not an element of or defense to any claim asserted in this suit."

- Schepps "is a fact witness to the things Katz testified regarding the "liquidation vehicle" and its justification, a justification vigorously disputed by Dallas lawyers Jeff Rasansky and Chris Payne, making Schepps' testimony critical at any hearing or trial related to same";
  - The assertions are unsupported by the record and stale. Further, Sea Wasp cannot challenge the validity of the assignments as it lacks standing to do so. Thus, Sea Wasp has "made no showing that Domain Protection's Counsel's testimony is 'critical' for any purpose."
- Schepps "has repeatedly obstructed efforts to obtain Katz's deposition through misrepresentations, baseless pleadings, and refusals to cooperate in the carrying out of three orders by this Court for the Plaintiff's deposition to proceed";
  - "Sea Wasp has failed to establish that any representation made by Counsel for Domain Protection which was erroneous." Further, Sea Wasp failed to show any knowing misrepresentations by Schepps, any pleading that was baseless, or any Orders that Schepps has violated.
- Schepps "has evidently violated Judge Brenda Rhoades' December 11, 2018 order prohibiting Schepps from representing Katz by his filings and activity in the May 31 partial deposition of Katz";
  - "Sea Wasp misunderstands Hon. Bankruptcy Judge Rhoades disqualification order. That order is applicable only to the Payne Adversary proceedings where Jeff Baron is the Plaintiff, suing Christopher Payne and his wife."
- Schepps "has aided and abetted Katz's answering questions under oath, including instructing answers that do not involve claims of privilege"; and
  - "Sea Wasp failed to show any specific question or instruction, and has failed to show that the instruction was not meritorious. Sea Wasp has likewise failed to show any bad faith intention with respect to any specific question or instruction."
- Schepps "has misrepresented Katz's personal representation by her son (he doesn't, that she would be obtaining her own counsel (she hasn't), and acted as personal counsel by conditioning her appearance at the (personally) subpoenaed June 19 deposition on the basis of a Sea Wasp waiver of any disqualification claims against him"
  - "Sea Wasp has failed to show any knowing misstatement of any fact, at any time." Further, "Counsel for Domain Protection did not agree to undertake the personal representation of Lisa Katz, and declined Sea Wasp's invitation to do so."

(Dkt. #189; Dkt. #205).

Sea Wasp then filed Sea Wasp, LLC's Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC (Dkt. #162) and Sea Wasp, LLC's Motion to Supplement its Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC (Dkt. #282).[4] In its original Motion, Sea Wasp requests an expedited hearing and argues that

---

[4] In its second Motion concerning disqualification, Sea Wasp requests that the Court take judicial notice of the subject matter discussed in footnote 2, *supra*.

Schepps should be disqualified pursuant to Texas Rule of Professional Conduct 1.09(a)(3), 3.08, 1.12, or 1.08(h). Sea Wasp argues that under 1.09(a)(3), Schepps is disqualified because he is representing Domain Protection against a former client, Quantec, in an adversarial proceeding that concerns the same Domain Names. As to 3.08, Sea Wasp argues that Schepps is impermissibly "scrambling roles" as both an advocate and witness who can establish facts regarding Domain Protection's "entitlement to Quantec's domain names" (Dkt. #162). Sea Wasp also alleges that Schepps is using Domain Protection as his alter ego to commit fraud (Dkt. #162). Under 1.12, Sea Wasp claims that Schepps interests "so domina[te]" Domain Protection that there is an "untenable conflict between his interests and the company's" (Dkt. #162). Finally, under 1.08(h), Sea Wasp claims that, even if Domain Protection is not found to be an alter ego of Schepps, Schepps "has an impermissibly large stake in this litigation" due to an alleged proprietary interest (Dkt. #162).[5]

Domain Protection opposes the disqualification of Schepps (Dkt. #169). In its Response, Domain Protection argues that under 1.09, Domain Protection is appearing against Sea Wasp, not Quantec, and thus Schepps is not appearing against a former client (Dkt. #169). [6] Domain Protection continues that under 3.08, Schepps would be a corroborating witness, the facts that Sea Wasp argues Schepps would corroborate are not at issue here, and that disqualification of Schepps would work substantial hardship on Domain Protection (Dkt. #169). Next, Domain Protection contends that Sea Wasp's 1.12 argument is insufficient because "Sea Wasp has not demonstrated any way in which Domain Protection's Counsel is not representing Domain Protection, as distinct from its employees, members, or constituents" (Dkt. #169). Domain Protection additionally contends that Sea Wasp has not presented the Court with any authority supporting Sea Wasp's

---

[5] Specifically, Sea Wasp argues that Schepps should be disqualified because it alleges that Schepps has an undisclosed financial interest in the present action of over $4 million and is thus an interested party. Sea Wasp further alleges that Katz is an interested party because she purportedly has an undisclosed financial interest of $1.62 million.
[6] Domain Protection also alleges that there is no showing of a conflict or of common issues or claims (Dkt. #169).

argument that 1.12 may serve as a vehicle for disqualifying opposing counsel (Dkt. #169). Finally, as to Sea Wasp's 1.08(h) argument, Domain Protection argues that this rule is not a basis for an opponent to disqualify opposing counsel

The Court will first address Sea Wasp's Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC (Dkt. #162). Following that analysis, the Court will then determine whether Schepps should be sanctioned for the alleged conduct described in Sea Waps's remaining three Motions (Dkt. #143; Dkt. #144; Dkt. #189).

**LEGAL STANDARD**

I.      Disqualification

The Fifth Circuit has "made clear that 'disqualification cases are governed by state and national ethical standards adopted by the court.'" *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.3d 605, 610 (5th Cir. 1992)). In the Fifth Circuit, when considering disqualification of an attorney, district courts generally rely upon the following: (1) the local rules in the district; (2) American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct. *See Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001); *Ayus v. Total Renal Care, Inc.*, 48 F. Supp. 2d 714, 714 (S.D. Tex. 1999). Beyond the various rules and codes identified above, "[a] court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)).

In the Eastern District, "the standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court." Eastern District of Texas, Local Rule AT-2. In Texas, disqualification is a "severe remedy." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989). Motions to disqualify are subject to an exacting standard both to protect a party's right to counsel of choice as well as to discourage the use of such motions as a "dilatory trial tactic." *Id.* "The party seeking disqualification bears the burden of proving that disqualification is warranted." *Frito-Lay North America v. Medallion Foods, Inc.*, 2012 WL 12893877, at *1 (E.D. Tex. Oct. 24, 2012) (citing *Koch Ref. Co. v. Boudreau*, 85 F.3d 1178, 1181 (5th Cir. 1996). "[T]hat burden is heavy." *U.S. v. Aleman*, 2004 WL 1834602, at *1 (W.D. Tex. Aug. 12, 2004) (citing *United States v. Phillips*, 952 F. Supp. 480, 482 (S.D. Tex. 1996)).

II.     Rule 37 Sanctions

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders. A court may bar the disobedient party from introducing evidence, or it may direct that certain facts shall be "taken to be established for purposes of the action." FED. R. CIV. P. 37(b)(2)(A)(i). Rule 37 also permits a court to strike claims from the pleadings, and even to "dismiss the action . . . or render a judgment by default against the disobedient party." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980) (citation omitted); *accord* FED. R. CIV. P. 37(b)(2)(A)(v)-(vi). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express*, 447 U.S. at 763–64 (citation omitted).

In addition, Rule 37(b)(2) requires that any sanction be just and specifically related to the particular claim that was the subject of the discovery violation. *See Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (citation omitted). Further, the penalized party's discovery violation must be willful. *See United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003).

## ANALYSIS

As previously stated, there are four related motions seeking sanctions against, or disqualification of, Gary Schepps. The Court first addresses Sea Wasp, LLC's Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC. The Court then addresses: (1) Sea Wasp's Opposed Motion for Leave to Exceed Page Limit of its Motion for Sanctions; (2) Sea Wasp, LLC's Motion for Sanctions; and (3) Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps.

I.      Sea Wasp, LLC's Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC

As previously stated, Sea Wasp seeks to disqualify Schepps pursuant to Texas Rule of Professional Conduct 1.09(a)(3), 3.08, 1.12, or 1.08(h). The Court addresses each Rule in turn.

i.      Rule 1.09: Substantially Related Subject Matter

Rule 1.09(a) states:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client;
(2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
(3) if it is the same or a substantially related matter.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a). Rule 1.09(a) provides distinct grounds for disqualification. Under 1.09(a)(3), one ground for disqualification is "if the current matter is

substantially related to the matters in which the lawyer has represented the former client." *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992). The Fifth Circuit has determined that the "substantial relationship" test, which is used in cases involving prior representations, applies to Rule 1.09. *Id.* Under the "substantial relationship" test:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations.

*Id.* (citing *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1345 (5th Cir. 1981); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir. 1981), *cert. denied,* 454 U.S. 895 (1981)). While the test categorically requires disqualification should a substantial relationship be established between past and current representations, the test is not applied so mechanically that it would "prevent[] an attorney from ever representing an interest adverse to that of a former client." *Id.* (citing *Duncan,* 646 F.2d at 1027–28). Rather, the Fifth Circuit has held that "a substantial relationship may be found only after 'the moving party delineates with specificity the subject matters, issues and causes of action' common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent.'" *Id.* (citing *Duncan,* 646 F.2d at 1029 (quoting *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174 (5th Cir. 1979))).

Before a court engages in this painstaking factual analysis, it must first ascertain whether the party seeking disqualification on former relationship grounds is the proper party to do so. The Fifth Circuit requires parties "seeking to disqualify opposing counsel on the ground of a former relationship" to have "an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify." *In re Am. Airlines, Inc.*, 972 F.2d at 614. This is because, on a

motion to disqualify based on an attorney's prior representations, "the only real party in interest" is the former client. *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 90 (5th Cir. 1976). Thus, if the party fails to carry its burden on prong one of the "substantial relationship" test, the court need not reach prong two.

Here, Schepp's former clients, Baron, Quantec, and RPV are the only parties who could seek to disqualify Schepps based on his prior representation of them. Baron, Quanec, and RPV did not do so and, in fact, are not parties to this action (Dkt. #40; Dkt. #147). Despite Schepp's former clients not seeking disqualification of Schepps,[7] Sea Wasp now attempts to assert Quantec's rights on its behalf. But this is not how the law works under 1.09. *In re Am. Airlines, Inc.*, 972 F.2d at 614. Even if Schepps were acting contrary to Quantec's interest—an issue that the Court need not reach—Quantec is not a party to this lawsuit. And, more importantly, Sea Wasp cites no prior representation of itself by Schepps. Therefore, because Sea Wasp does not have an "actual attorney-client relationship" with Schepps, the Court finds that Sea Wasp is not the proper party to seek the disqualification of Schepps for its prior interpretation of Quantec under 1.09(a)(3). *Id.*; *In re Yarn Processing Patent Validity Litig.*, 530 F.2d at 90. This means that the Court need not continue to the second prong of the "substantial relationship" test because the first prong cannot be met by Sea Wasp. *Id.* Sea Wasp's Motion, as to Rule 1.09, is accordingly denied.

    ii.    "Scrambled Roles"

        a.   Rule 3.08

ABA Model Rule 3.7 provides "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." Texas Rule of Disciplinary Conduct 3.08(a)

---

[7] The Court notes that Herring—counsel to Baron and Quantec—sought to disqualify Schepps through his role as an officer of the court. As the Court has already stated, however, Herring's Motion was denied because Herring lacked standing to challenge Schepps' representation when he was not personally represented by Schepps.

provides "[a] lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client." *Diamond Consortium, Inc. v. Manookian*, No. 4:16-cv-00094 (E.D. Tex. May 31, 2017) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)). As the Supreme Court of Texas has stated, "[t]he fact that a lawyer serves as both an advocate and a witness does not in itself compel disqualification." *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (citing *Ayres v. Canales,* 790 S.W.2d 554, 557–58 (Tex. 1990); *In re Chu,* 134 S.W.3d 459, 464 (Tex. App.—Waco 2004, orig. proceeding); *May v. Crofts,* 868 S.W.2d 397, 399 (Tex. App.—Texarkana 1993, orig. proceeding)). To be sure, Rule 3.08(a)(5) provides an exception to disqualification when "the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)(5). Thus, the determination of whether to disqualify an attorney requires an exacting standard. *See Coker*, 765 S.W.2d at 399.

Under Texas law, "[d]isqualification is only appropriate if the lawyer's testimony is "necessary to establish an essential fact" and one of the exceptions does not apply. *Id.* (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)). To establish that disqualification is appropriate, "the party requesting disqualification must demonstrate that the opposing lawyer's dual roles as attorney and witness will cause the party actual prejudice." *Id.* (citing *Ayres,* 790 S.W.2d at 558). For instance, "disqualification is inappropriate under Rule 3.08 when opposing counsel merely announces their intention to call the attorney as a fact witness without establishing both a genuine need for the attorney's testimony and that the testimony goes to an essential fact." *In re Garza*, 373 S.W.3d 115, 118 (Tex. App.—San Antonio 2012, orig. proceeding) (citing *In the Int. of A.M.,*

974 S.W.2d 857, 864 (Tex. App.—San Antonio 1998, no pet.)). Disqualification is appropriate, however, when counsel "effectively 'testif[ies]' as [the sole] expert witness in [a] controverting affidavit in order to defeat [another party's] motion . . . ." *Mauze v. Curry*, 861 S.W.2d 869, 870 (Texas 1993). Disqualification is additionally appropriate even if counsel is not serving as an expert. *See Southtex 66 Pipeline Co., Ltd. V. Spoor*, 238 S.W.3d 538, 544 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Mauze*, 861 S.W.2d at 870). When considering whether to disqualify an attorney, "preservation of a popular faith in the judicial system is a primary consideration." *U.S. Fire Ins.*, 50 F.3d at 1311–16. As the Supreme Court of Texas has stated, "Rule 3.08 is grounded principally on the belief that the finder of fact may become confused when one person acts as both advocate and witness." *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 422 (Tex. 1996). To be sure, one of the concerns of an attorney acting in a dual role is that the attorney's dual role may place the attorney "in the unseemly and ineffective position of arguing his own credibility." *Warrilow v. Norrell*, 791 S.W.2d 515, 521 n.6 (Tex. App.—Corpus Christi 1989, writ denied).

Here, Sea Wasp alleges that Schepps should be disqualified because he is impermissibly serving as an advocate when he is also a witness who is necessary to establish essential facts surrounding "Domain Protection's entitlement to Quantec's domain names" (Dkt. #162). Further, Sea Wasp alleges that Schepps is a necessary witness as to his potential alter ego status (Dkt. #162). The Court addresses the entitlement issue first, then proceeds to the alter ego issue.

### 1. Domain Protection's Entitlement to Quantec's Domain Names

Sea Wasp alleges that Schepps is a necessary witness to establish essential facts surrounding the transfer of Quantec's assets to Domain Protection and whether Domain Protection is entitled to those Domain Names (Dkt. #162). Specifically, Sea Wasp points to Schepps

involvement in the creation of the liquidation vehicle (Dkt. #162). Domain Protection responds that Schepps would only be a corroborating witness, not a necessary witness (Dkt. #169). Further, Domain Protection contends that the facts Sea Wasps argues Schepps is necessary for are not at issue in this case, and that the disqualification of Schepps would work substantial hardship on Domain Protection (Dkt. #169). The Court agrees with Domain Protection that Schepps is not a necessary witness and that, even if he were, his disqualification would work a substantial hardship on Domain Protection.

Under *In re Garza*'s interpretation of Rule 3.08, disqualification is only appropriate if the moving party establishes "*both* a genuine need for the attorney's testimony *and* that the testimony goes to an essential fact." 373 S.W.3d at 118 (emphasis added). Irrespective of whether the entitlement facts here are even at issue,[8] let alone essential, it is readily apparent that Schepps is not the only witness who could testify to the Domain Protection's proprietary interest. Katz, not Schepps, is the witness who has testified to her role as a fiduciary of Quantec, her decision to transfer the Domain Names to Domain Protection, and the reasoning behind the use of the liquidation vehicle, Domain Protection. While Schepps is at the "center" of the picture that Katz paints (Dkt. #175), Katz is also at the center of this picture and is involved in every occurrence and situation that Schepps is involved in. As Sea Wasp itself states, "Katz has admitted facts supporting the conclusion that she 'intentionally [and] knowingly misapply[ied] property . . .'" (Dkt. #175). Regardless of whether Sea Wasp's characterization of Katz' testimony is true, Sea Wasp itself admits that Katz is a witness to the very conduct Sea Wasp claims it needs Schepps for. Schepps cannot be a necessary witness given this admission. Further, were Schepps to testify, he would merely serve as a corroborating witness providing cumulative testimony to facts that

---

[8] *See* Dkt. #192.

Katz has already provided. The Fifth Circuit has held that when a witness's testimony is merely cumulative, that witness is not a necessary witness. *See Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001). As in *Horaist*, Schepps would merely provide cumulative testimony; thus, he is by definition not necessary.[9]

Even if Schepps were a necessary witness as Sea Wasp claims, his disqualification would work a substantial hardship on Domain Protection, and is thus not required under Rule 3.08(a)(5). Schepps is Domain Protection's only attorney (Dkt. #169). Schepps has "specialized knowledge as to the law relating to Domain Names" (Dkt. #169). And "Domain Protection lacks funds to secure replacement counsel" (Dkt. #169, Exhibit 150). Tellingly, Sea Wasp does not refute that such hardship would occur. For these reasons, the Court finds that Sea Wasp's first argument for disqualification under 3.08 is insufficient. The Court need not reach Domain Protection's third argument having found the other two arguments meritorious.

### 2. Alter Ego Status

In addition to Sea Wasp's entitlement argument *supra*, Sea Wasp also claims that "there is a serious fact issue on Schepps' *alter ego* status" which makes Schepps a necessary witness (Dkt. #162). Following this statement, Sea Wasp continues that: "Whether Schepps intends to testify or not, his testimony, his credibility, and his participation, will be critical to a trier of fact" (Dkt. #162). But 3.08 is not this broad. Sea Wasp does not point to any declaration, proffered testimony, or even anticipated testimony made by Schepps. Rather, Sea Wasp states that "whether or not" Schepps intends to testify, he is necessary. Sea Wasp then proceeds to a series of statements, *made by Katz*, which implicate Schepps and claim an alter ego status is afoot (Dkt. #162). Merely claiming fraud, or a "Trojan Horse" as Sea Wasp describes Domain

---

[9] The Court is also mindful of, and guided by, every "litigant's right to freely chosen counsel." *Woods*, 537 F.2d at 810.

Protection, however, is insufficient to trigger 3.08. It does well to reiterate what 3.08 states. Under 3.08, "[a] lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a). Sea Wasp makes no claim that Schepps even needs to serve as a witness to the new alter ego allegation Sea Wasp espouses. Rather, Sea Wasp cites 3.08, recites a few lines from Katz deposition, and then claims that *whether Schepps testifies or not*, he is a material witness and should be disqualified. The Court disagrees. Sea Wasp's second argument under 3.08 is entirely insufficient. Consequently, Sea Wasp's Motion, as to Rule 3.08, is denied.

b. Rule 1.12

Rule 1.12 states, in relevant part, that:

(a) A lawyer employed or retained by an organization represents the entity. While the lawyer in the ordinary course of working relationships may report to, and accept direction from, an entity's duly authorized constituents, in the situations described in paragraph (b) the lawyer shall proceed as reasonably necessary in the best interest of the organization without involving unreasonable risks of disrupting the organization and of revealing information relating to the representation to persons outside the organization.

(c) Except where prior disclosure to persons outside the organization is required by law or other Rules, a lawyer shall first attempt to resolve a violation by taking measures within the organization. In determining the internal procedures, actions or measures that are reasonably necessary in order to comply with paragraphs (a) and (b), a lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters, and any other relevant considerations. Such procedures, actions and measures may include, but are not limited to, the following:

(1) asking reconsideration of the matter;
(2) advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and
(3) referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization as determined by applicable law.

(e) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing or when explanation appears reasonably necessary to avoid misunderstanding on their part.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.12(a), (c), & (e). Sea Wasp claims that Schepps cannot comply his with ethical duties under Rule 1.12 because his interests "are so dominant that if Domain Protection were a legitimate LLC, Schepps as its lawyer would have an untenable conflict between his interests and the company's" (Dkt. #162). In support of this argument, Sea Wasp claims that Schepps "**is** the company for all practical decision-making purposes" and that Katz "operates under his direction" (Dkt. #162). Domain Protection refutes these claims and retorts that Rule 1.12 is "not recognized as a basis for a party to disqualify its opponent's counsel" (Dkt. #178).

Sea Wasp has provided the Court with no caselaw supporting its argument that 1.12 may be used by a party to disqualify its opposing counsel. Further, Domain Protection responds that it "could locate no authority, in any jurisdiction, where Rule 1.12 was considered as a basis for a party to disqualify an *opponent's* counsel" (Dkt. #169) (emphasis added). Sea Wasp's argument is not enough to meet its heavy burden or even enough to be considered a fully briefed argument that would be proper for the Court to include in its analysis. *See United States v. Volksen*, 766 F.2d 190, 193 (5th Cir. 1985); *Ragland v. Dallas Cty. Cmty. Coll. Dist.*, 2017 WL 1196863, at *5 (N.D. Tex. Mar. 31, 2017); *Kostic v. Tex. A & M Univ. at Commerce*, 11 F. Supp. 3d 699, 735 (N.D. Tex. 2014) (citing *Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 585 (N.D. Tex. 2012)). For this reason, Sea Wasp's Motion, as to Rule 1.12, is denied.

c. Rule 1.08(h)

Under Rule 1.08(h) "[a] lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client . . . ." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.08(h). As *In re Slusser* interpreted Rule 1.08(h), Rule 1.08(h) does not

"provide any guidance relevant to a party seeking to disqualify an opposing party's attorney." 136. S.W.3d 245, 249 (Tex. App.—San Antonio 2004, orig. proceeding).

Sea Wasp argues that Schepps should be disqualified because he has a $4 million claim that is to be paid from the $3 million in assets that Domain Protection is in possession of (Dkt. #162; Dkt. #175). This means, according to Sea Wasp, that Schepps "owns the dominant interest in the case and controls the levers of the case to promote his, not the client's independent interests" (Dkt. #175). Accordingly, Sea Wasp avers that Schepps has violated Rule 1.08(h) by acquiring a proprietary interest in the action (Dkt. #162, Dkt. #175). Regardless of Sea Wasp's allegations, *In re Slusser* unequivocally states that 1.08 is not a basis to disqualify an opponent's attorney. 136 S.W.3d at 249. Thus, the Court will not conduct a 1.08 analysis.

Even if 1.08(h) was a basis for disqualifying an opponent's attorney, Sea Wasp again has failed to fully brief the Court. To be sure, Sea Wasp has only provided conclusory briefing with nearly no legal citation. A party seeking to disqualify opposing counsel carries a heavy burden to establish that disqualification is necessary. *See Medallion Foods, Inc.*, 2012 WL 12893877 at *1; *Aleman*, 2004 WL 1834602 at *1. Sea Wasp, again, has failed to carry that burden.

For the foregoing reasons, Sea Wasp's Motion to Disqualify Schepps pursuant to Texas Rule of Professional Conduct 1.09(a)(3), 3.08, 1.12, or 1.08(h) is denied.

II.     Sea Wasp, LLC's Motion for Sanctions

     i.     Sea Wasp's Opposed Motion for Leave to Exceed Page Limit of its Motion for Sanctions & Sea Wasp, LLC's Motion for Sanctions

Before the Court can proceed to the merits of whether Schepps should be sanctioned, it must first address a preliminary argument made by Domain Protection. Domain Protection opposes Sea Wasp's Motion for Leave to Exceed Page Limit of its Motion for Sanctions (Dkt. #143) because it believes that Sea Wasp's Motion for Sanctions Violates Rule 11

(Dkt. #157).  Namely, Domain Protection claims that because Sea Wasp filed its Motion pursuant to "FRCP Rule 11, FRCP Rule 37, EDTX Local Rule AT-2 and AT-3, the Court's Scheduling Order, the Court's inherent power, and 28 U.S.C. Sec. 1927," (Dkt. #144) Sea Wasp's Motion must violate Rule 11 which requires that Rule 11 motions "be made separately from any other motion."  FED. R. CIV. P. 11.  As Wright & Miller have stated, "[t]he Advisory Committee Note accompanying the 1993 amendment explains that a party may not seek sanctions by filing a motion that is 'simply included as an additional prayer for relief contained in another motion.'"  5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1337.1 (3d ed. 2004) (citing Advisory Committee Note to the 1993 amendment to Rule 11, reprinted in 146 F.R.D. 577, 591 (1993)).  "A failure to comply with this requirement usually will result in a denial of the motion for sanctions." *Id.* (citations omitted).  With that being said, a Rule 11 motion, according to some courts, need not be entirely hermitical.  Rather, the Sixth Circuit has held that "the combination of a Rule 11 motion with similar requests for sanctions made pursuant to other provisions regulating attorney behavior did not conflict with the purpose of the rule's requirement and that insisting upon the requests being made in separate motions in that context would 'amount to needless duplication of paper, time, and effort, for practitioners as well as the courts . . . .'" *Id.* (citing *Riddler v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997).  Other courts have agreed with the Sixth Circuit's interpretation of Rule 11.  *Id.* (citing *DiPaolo v. Moran*, 277 F. Supp. 2d 528, 537 n.15 (E.D. Pa. 2003), aff'd, 407 F.3d 140 (3d Cir. 2005); *Kron v. Moravia Central School District*, 2001 WL 536274 (N.D.N.Y. 2001)).

While there is some agreement that Rule 11 does not prohibit the combination of like-motions, that agreement is not universal.  In the Eastern District of Texas, for instance, there is precedent holding that Rule 11 may not be combined with like-motions.  In *International*

*Development Corp. v. Richmond*, defendants filed a motion seeking attorneys' fees pursuant to Rule 11, 28 U.S.C. § 1927, and the court's inherent power. 2010 WL 1375182, at *3 (E.D. Tex. Mar. 31, 2010). The court there held that because defendants "did not file their FED. R. CIV. P. 11(b) motion separately from any other motion . . . . the imposition of sanctions pursuant to Rule 11 [was] not appropriate." *Id.* at *4.

Here, Sea Wasp filed its Motion for Sanctions pursuant to "FRCP Rule 11, FRCP Rule 37, EDTX Local Rule AT-2 and AT-3, the Court's Scheduling Order, the Court's inherent power, and 28 U.S.C. Sec. 1927 . . . ." (Dkt. #144). Because of Sea Wasp's inclusion of Rule 11 amongst other similar rules, the Court is presented with what appears to be an open question of law in the Fifth Circuit: i.e., whether the filing of a motion for sanctions pursuant to Rule 11 may be made simultaneously with requests for sanctions pursuant to similar provisions. The Court need not reach this issue. Sea Wasp's original Motion for Sanctions spends the majority of its Motion arguing the merits of Domain Protection's proprietary interest in the Domain Names and engaging in ad hominem attacks (Dkt. #144). To support its arguments, Sea Wasp rehashes old disputes followed by colorful language and rhetorical questions. This Motion is followed by Sea Wasp's Second Motion for Sanctions which was filed approximately two months after the original Motion (Dkt. #189). Sea Wasp's Second Motion forgoes any Rule 11 language,[10] is predicated upon conduct that effects the current action—not conduct which is not before the Court, and provides a clearer, more developed, picture of the factual allegations. The Court accordingly finds that Sea Wasp's Motion for Sanctions (Dkt. #144) should be denied for Sea Wasp's failure to carry its burden in establishing whether sanctions are appropriate. The Court will instead review Sea

---

[10] The Court notes that Rule 11 is included in the prayer at the end of Sea Wasp's briefing. This is discussed in footnote 11, *infra*.

Wasp's Second Motion which provides the Court with a more illuminated, and indeed, less muddled, picture of the factual allegations.

  ii. Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps (Dkt. #189)

  Sea Wasp filed its Second Motion for Sanctions pursuant to Federal Rule of Civil Procedure Rule 37,[11] EDTX Local Rule AT-2[12] and AT-3, the Court's Scheduling Order, the Court's inherent power, and 28 U.S.C. § 1927. The relevant provisions of law are as follows.

- Rule 37: For a discussion of Rule 37, see the Legal Standard section, *supra*.

- Section 1927: 28 U.S.C. § 1927 states that "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

- AT-3: EDTX Local Rule AT-3 provides, in relevant part, that: "A lawyer owes candor, diligence, and utmost respect to the judiciary." L.R. AT-3. AT-3 continues by stating that: "A lawyer owes, to opposing counsel, a duty of courtesy and

---

[11] In its Second Motion, Sea Wasp states in its prayer that it is seeking sanctions pursuant to Rule 11 (Dkt. #189). Sea Wasp does not brief Rule 11 nor reference Rule 11 elsewhere in its Motion. Domain Protection again argues that Sea Wasp has violated Rule 11(c)'s requirement that Rule 11 motions be made "separately from any other motion" (Dkt. #205). In its Reply, Sea Wasp states that "[r]elief under Rule 11 was not briefed, even though that rule was mentioned inadvertently in the prayer. To the extent of confusion resulted, the undersigned apologizes and withdraws the Rule 11 language in the prayer" (Dkt. #209). The Court agrees with Sea Wasp that Rule 11 was not briefed nor a vehicle utilized by Sea Wasp to motion for sanctions. Accordingly, the Court disregards the Rule 11 language and considers the Motion before it.

[12] Sea Wasp fails to brief the Court on which provision of Local Rule AT-2 that Schepps allegedly violated in its Second Motion. The Court will not speculate. Thus, the Court does not consider AT-2 in its decision.

cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves." *Id.*

- The Court's Scheduling Order: The Court's Scheduling Order provides that: "[f]ailure to comply with relevant provision of the Local Rules, the Federal Rules of Civil Procedure or this order may result in the exclusion of evidence at trial, the imposition of sanctions by the Court, or both" (Dkt. #65).

Additionally, the Court has the inherent power to impose sanctions to manage the cases before it and prevent the abuse of the discovery process. *See Chambers v. NASCO*, 501 U.S. 32, 40–48 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'") (citing *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980)).

Sea Wasp asserts that there are six independent reasons that Schepps should be sanctioned by the Court. Those arguments can be summarized as including allegations that: (1) Schepps has an impermissible financial stake in the litigation; (2) Schepps is a fact witness; (3) Schepps has attempted to obstruct efforts to obtain Katz deposition; (4) Schepps has violated Judge Rhoades' Order; (5) Schepps has aided and abetted Katz in instructing her not to answer questions at the May 31 deposition; and (6) Schepps has misrepresented Katz representation status. In reviewing the Second Motion, the Court will discuss each of the six posited grounds for sanctions individually.

i. Financial Stake

Sea Wasp maintains that Schepps "has a personal financial stake in the outcome, as Plaintiff was formed as a "liquidation vehicle" to secure and pay his creditor claims" (Dkt. #189).

Domain Protection responds that "Sea Wasp's assertions [are] not supported by the record" (Dkt. #205). Further, Domain Protection retorts that "whatever Domain Protection ultimately desires to do with its assets is not the business of Sea Wasp and is not an element of or defense to any claim asserted in this suit" (Dkt. #205). Domain Protection is mistaken. Pursuant to Federal Rule of Civil Procedure 7.1, Domain Protection filed its Certificate of Interested Persons (Dkt. #4). In that filing, Domain Protection provided the following:

> A complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case: DOMAIN PROTECTION, LLC; SEA WASP, LLC; GREGORY G. FAIA; and VERNON H. DECOSSAS.

(Dkt. #4). Notably, Schepps, on behalf of Domain Protection, did not disclose that either Katz, or himself, had a financial interest in the litigation. To this day, Schepps maintains that "Sea Wasp has shown no personal financial stake in the lawsuit" (Dkt. #205). Yet, quite the opposite is true. In the May 31 deposition of Katz, Katz explicitly testified to both her and Schepps financial interest in the Domain Names (Dkt. #93). Katz, having been first duly sworn, testified:

> Q. Okay. You mentioned separately in one of the answers that Domain Protection was a liquidation vehicle. Can you tell us what you meant by that?
> A. There were a lot of people who were owed money, including myself. There were several lawyers. I think -- I can't name them all, but I think there were 11 or 12 of them who were not paid. And because Quantec was a foreign entity, they wanted some reassurance that they would be paid. So we had some meetings and discussions and so forth. And the result was that Domain Protection was formed. The -- Quantec's names were assigned to Domain Protection, and a payout formula was devised so that people could get paid a pro rata share of what they were owed.
>
> Q. Okay. And how much was Mr. Schepps owed?
> A. I'm not sure but it was in the millions.
> Q. Over 4 million?
> A. I'm not sure.
> Q. Does that sound about right?
> A. I don't want to speculate.
> Q. Did you know at that time?
> A. At the time, yeah.
> Q. So this is just a matter of your forgetting the specific amount.

A. Correct.

Q. And if there are documents which reflect that he has made claim for $4 million, do you have any indication that that's not accurate?

A. No.

Q. And so you and Mr. Schepps and Mr. Rasansky and Mr. Payne all agreed that what you would do would be to create Domain Protection, correct?

A. Correct.

MR. SCHEPPS: Objection. Form.

Q. (BY MR. SANDERS) And it would be known as or understood as a liquidation vehicle, correct?

A. Yes.

Q. And the liquidation vehicle, Domain Protection, would be designed to get control of the domain names from Quantec, and then there would be a formula for distribution of monies to the creditors through the sale of domain names, right?

A. Probably, yes.

Q. What do you mean "probably"? Isn't that what you swore to in your declarations?

A. Well, there are no guarantees.

Q. But that was the plan.

A. Yes.

Q. The plan that you, Rasansky, Schepps and Payne had was, you would form Domain Protection. It would then receive the domain names of Quantec, correct?

A. Uh-huh.

Q. Is that a yes?

A. Yes.

Q. And then there would be, you as manager would then go sell the domain names and distribute the funds on some kind of *pro rata* basis to Mr. Schepps, Mr. Payne, Mr. Rasansky and yourself, correct?

A. And the other creditors as well.

(Dkt. #189, Exhibit A). While it is unclear how much of a financial interest Schepps has in the present action, one thing remains unclear: Schepps has a financial interest in the present action and he did not disclose that interest with the Court. The Local Rules state that: "A lawyer owes candor, diligence, and utmost respect to the judiciary." L.R. AT-3. Further, the Court's Scheduling Order states that: "(f)ailure to comply with relevant provisions of the Local Rules, the Federal Rules of Civil Procedure or this may result in the exclusion of evidence at trial, the imposition of sanctions by the Court, or both" (Dkt. #65). Schepps did not disclose his nor Katz' financial interest in the present action. Such failure is unacceptable. Accordingly, the Court orders that Schepps file an updated Certification of Interested Parties. The Certificate must expressly disclose the amount of

financial interest that both Schepps and Katz have in the Domain Names which are the basis of this action—i.e., the amount that Schepps and Katz would pay themselves upon liquidation of Domain Protection. Additionally, the Court awards Sea Wasp the costs of briefing for: Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps (Dkt. #189). Failure to comply with either of these mandates within seven (7) days of the publishing of this opinion will result in the imposition of additional sanctions.

ii.    Fact Witness

Sea Wasp claims that Schepps "is a fact witness to the things Katz testified regarding the "liquidation vehicle" and its justification, a justification vigorously disputed by Dallas lawyers Jeff Rasansky and Chris Payne, making Schepps' testimony critical at any hearing or trial related to same" (Dkt. #189). Sea Wasp cites no authority for its proposition that Schepps should be sanctioned because he is a witness. Further, as the Court held *supra*, even if Schepps is a witness, he is not a *necessary* witness. Without more, the Court is not of the opinion that sanctions are warranted for Schepps first-hand knowledge of the current matters.

iii.    Obstruction Efforts

Sea Wasp claims that Schepps "has repeatedly obstructed efforts to obtain Katz's deposition through misrepresentations, baseless pleadings, and refusals to cooperate in the carrying out of three orders by this Court for the Plaintiff's deposition to proceed" (Dkt. #189). On October 28, 2019, the Court ordered that the deposition of Lisa Katz in her 30(b)(6) and personal capacity must occur, or be completed, by 11:59 p.m. on November 19, 2019 in Sherman, Texas (Dkt. #263). The Court stated that, should Katz fail to make herself available for each deposition by the Court's deadline, the Court would permit leave for Sea Wasp to file a motion for sanctions (Dkt. #263). The Court's Order equally applies to Schepps. Should Schepps obstruct the deposition of Katz,

Sea Wasp will be granted leave to file a motion for sanctions against Schepps. Until then, however, the Court will refrain from imposing sanctions against Schepps under obstruction allegations.

### iv.     Violation of Judge Rhoades' Order

Sea Wasp next argues that Schepps "has evidently violated Judge Brenda Rhoades' December 11, 2018 order prohibiting Schepps from representing Katz by his filings and activity in the May 31 partial deposition of Katz" (Dkt. #189). Judge Rhoades order did not extend as far as Sea Wasp contends. Rather, Judge Rhoades order states as follows:

> Gary Schepps is presently representing Lisa Katz (AKA Elisa Katz, Elissa Katz) and Domain Vault, LLC in this case. The issues in this case involve disputed ownership and right to control Internet domain names claimed by Plaintiffs. Mr. Schepps previously represented Plaintiffs, Jeffrey Baron, Quantec, LLC and Novo Point, LLC in matters involving rights to the same domain names. The matters are substantially related. Accordingly, the Court hereby grants the motion and ORDERS that Gary Schepps is disqualified from representing persons adverse to Plaintiffs, including Lisa Katz and Domain Vault, LLC.

(Dkt. #162, Exhibit B). This is not the sweeping language that Sea Wasp argues. Rather, Domain Protection is correct that the "order is applicable only to the Payne Adversary proceedings where Jeff Baron is the Plaintiff, suing Christopher Payne and his wife" (Dkt. #205). Even if this order were to extend outside the confines of that individual action, the text of that order only prohibits Schepps from representing people adverse to "Plaintiffs" (Dkt. #162, Exhibit B). In that case, the plaintiffs were RPV, Ltd., Quantec, LLC, Novo Point, LLC, and Jeffrey Baron (Dkt. #162, Exhibit B). Not one of those plaintiffs are currently before the Court. Sea Wasp's Motion, in this instance, is again denied.

### v.     Aiding & Abetting

Sea Wasp next alleges that Schepps "has aided and abetted Katz's answering questions under oath, including instructing answers that do not involve claims of privilege" (Dkt. #189). In support of this argument, Sea Wasp merely provides one sentence of argument which states:

"Schepps also instructed 29 times not to answer questions, and she did not" (Dkt. #189). This claim is then followed by a citation to the deposition transcript with zero analysis on how Schepps instructions did not involve claims of privilege. Sea Wasp also fails to argue that those attorney-client privilege assertions were not meritorious and were proffered in bad faith. As previously stated, the Court will not consider arguments that are not fully briefed. *See Volksen*, 766 F.2d at 193; *Ragland*, 2017 WL 1196863 at \*5; *Kostic*, 11 F. Supp. 3d at 735. Sea Wasp's Motion, on this ground, is accordingly denied.

### vi.    Purposeful Misrepresentation

Sea Wasp finally claims that Schepps "has misrepresented Katz's personal representation by her son (he doesn't, that she would be obtaining her own counsel (she hasn't), and acted as personal counsel by conditioning her appearance at the (personally) subpoenaed June 19 deposition on the basis of a Sea Wasp waiver of any disqualification claims against him" (Dkt. #189). Sea Wasp has not established that any alleged misrepresentation by Schepps was willful. *See $49,000 Currency*, 330 F.3d at 376. Accordingly, Sea Wasps Motion, on this ground, is again denied.

**CONCLUSION**

It is therefore **ORDERED** as follows:

- Sea Wasp, LLC's Motion for Sanctions (Dkt. #144) is **DENIED**.

- Sea Wasp, LLC's Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC (Dkt. #162) is **DENIED**.

- Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps (Dkt. #189) is **GRANTED in part and DENIED in part**.

- Sea Wasp, LLC's Motion to Supplement its Opposed Motion to Disqualify Gary Schepps as Counsel for Domain Protection, LLC (Dkt. #282) is **GRANTED**.

Gary Schepps has seven (7) days to: (1) file an updated Certificate of Interested Parties; and (2) provide Sea Wasp with the costs for Sea Wasp's briefing of Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps (Dkt. #189).

**SIGNED this 19th day of November, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE