# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DOMAIN PROTECTION, LLC, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:18-cv-792 |
| | § | Judge Mazzant |
| SEA WASP, LLC, ET. AL. | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Domain Protection's Rule 12 Motion to Dismiss Sea Wasp's Counterclaims and Strike Sea Wasp's Insufficient Defenses (Dkt. #136). Having considered the motion and the relevant pleadings, the Court finds that Domain Protection's Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

On June 18, 2018, Domain Protection filed its initial Complaint against Sea Wasp, LLC and Doe 1 – Doe 5 (Dkt. #1). Domain Protection alleged that by placing executive locks on Domain Protection's Domain Names, Sea Wasp encroached on its proprietary interests in the Domain Names since it could not transfer them or update their nameserver records (Dkt. #1). Domain Protection consequently alleges the following against the original defendants: interference with contract, civil conspiracy, conversion, and respective violations of the Texas Theft Liability Act and the Stored Communications Act (Dkt. #1). On February 13, 2019, Domain Protection filed its First Amended Complaint (Dkt. #93). The First Amended Complaint added Vernon Decossas and Gregory Faia as Individual Defendants (Dkt. #93). The allegations remain the same (Dkt. #93). On April 18, 2019, Sea Wasp filed Sea Wasp, LLC's Answer to First Amended Complaint and Counterclaims (Dkt. #117). In its Answer, Sea Wasp denies the allegations that

were originally enumerated in the Initial Complaint and subsumed in the First Amended Complaint (Dkt. #117). Sea Wasp also, however, provides a number of affirmative defenses and counterclaims (Dkt. #117). Those affirmative defenses and counterclaims are the subject of this opinion.

Sea Wasp asserts three affirmative defenses. First, Sea Wasp argues that "Domain Protection has not demonstrated special interest in the subject domain names which qualifies it to demand the relief it seeks" (Dkt. #117). Sea Wasp labels this affirmative defense as: "No Standing" (Dkt. #117). Second, Sea Wasp argues that "Domain Protection has acted inconsistently with the right to seek the relief it seeks and has miscited to the Court the nature and extent of prior Court rulings, and particularly those *Netsphere, Inc., et al, v. Baron, et al*, CA 3:09-CV-0988-L [Dkt. 1368]" (Dkt. #117). Sea Wasp labels this affirmative defense as: "Lack of Demonstrated Ownership" (Dkt. #117). Third, Sea Wasp argues that:

> Domain Protection and/or its owners or members has/have not demonstrated ownership right in any properly constituted legal entity to be entitled to the relief it seeks and has miscited to the Court the nature and extent of prior Court rulings, and particularly those *Netsphere, Inc., et al, v. Baron, et al*, CA 3:09-CV-0988-L [Dkt. 1368]. More specifically, by misciting justification for bringing this action, but failing to do so based on facts, Domain waives any other evidence of interest or method to prove ownership interest. Domain has limited itself to the miscited legal authority. That assertion waives all other potential sources of explanation of ownership.

(Dkt. #117). Sea Wasp labels this affirmative defense as: "Waiver" (Dkt. #117). Sea Wasp also asserts six counterclaims for declaratory relief under 22 U.S.C. § 2201. Those counterclaims include:

> (1) Domain has no standing to bring this action against Sea Wasp;
> (2) Domain has waived its right to assert any basis for ownership or control of the domain names in question, except the cited Judge Lindsay *Netsphere* order [Dkt. 1368];
> (3) Judge Lindsay's *Netsphere* order [Dkt. 1368] does not vest title in Domain or any of Domain's affiliates;
> (4) Sea Wasp abided by the law in receiving the domain names in issue when it purchased those names when they were under "lock;"
> (5) Sea Wasp abided by the law in maintaining the "lock;" and

2

(6) Sea Wasp possessed an immunity to maintain the "lock," as here.

(Dkt. #117). Domain Protection opposes the inclusion of these affirmative defenses and counterclaims (Dkt. #136).

On May 13, 2019, Domain Protection filed Plaintiff Domain Protection's Rule 12 Motion to Dismiss Sea Wasp's Counterclaims and Strike Sea Wasp's Insufficient Defenses (Dkt. #136). In its Motion, Domain Protection contends that none of Sea Wasp's affirmative defenses are recognized by law (Dkt. #136). Thus, Domain Protection argues that the affirmative defenses should be stricken from Sea Wasp's Answer (Dkt. #136). As to Sea Wasp's counterclaims, Domain Protection offers a variety of arguments for why the counterclaims should be dismissed (Dkt. #136). Those arguments include, among other things, that the counterclaims are conclusory, not supported by any plausible factual allegations, and not proper subjects for declaratory judgment (Dkt. #136).[1] Sea Wasp disagrees.

Sea Wasp filed Sea Wasp, LCC's Response to Motion to Dismiss Counterclaims and Strike Insufficient Defenses on May 28, 2019 (Dkt. #152). In its Response, Sea Wasp argues that Sea Wasp's pleadings are proper and the issues raised therein "should be determined on the merits after Plaintiff fully responds to discovery requests" (Dkt. #152). More specifically, as to the affirmative defenses, Sea Wasp argues that it is a drastic remedy to strike a pleading, the affirmative defenses go directly to the central issue, as Sea Wasp characterizes it, of ownership, and that Domain Protection is not prejudiced by the inclusion of these affirmative defenses (Dkt. #152). As to the counterclaims seeking declaratory relief, Sea Wasp argues that the issue of ownership is squarely before the Court due to Domain Protection's first Amended Complaint and various pleadings (Dkt. #152). Accordingly, Sea Wasp maintains that its counterclaims should

---

[1] The specific arguments for each counterclaim will be addressed in further detail in the Court's discussion, *infra*.

remain so that they may be resolved by the Court. The Court now turns Domain Protection's Motion.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The Court will address the arguments surrounding Sea Wasp's affirmative defenses first, then proceed to the arguments surrounding Sea Wasp's counterclaims.

I.   Affirmative Defenses

Under Federal Rule of Civil Procedure 8(c), "when responding to a pleading, a party must, affirmatively state any avoidance or affirmative defense . . . ." FED. R. CIV. P. 8(c). An affirmative defense not pleaded is considered waived. *See Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir. 1999); *McDaniel v. IntegraCare Holdings, Inc.,* 901 F. Supp. 2d 863, 868 (N.D. Tex. 2012). Rule 8(c) provides nineteen affirmative defenses. *See* FED. R. CIV. P. 8(c). Those affirmative defenses, however, are not exhaustive. Rather, 8(c) states that "any other matter constituting an avoidance or an affirmative defense" may qualify as a Rule 8(c) affirmative defense. *Id.* To qualify as an

affirmative defense under Rule 8(c)'s residuary clause, the Fifth Circuit has instructed courts to "look to the logical relationship between the defense and the cause of action and assess whether failure to timely plead the defense will result in unfair surprise." *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 466 (5th Cir. 2001) (citing *Ingraham v. United States,* 808 F.2d 1075, 1079 (5th Cir. 1987)). To determine whether the affirmative defense will result in unfair surprise, a court only need look at whether the claimant has fair notice of the defense. *In re Snelson,* 305 B.R. 255, 263 (Bkr. N.D. Tex. 2003) (citing *Woodfied,* 193 F.3d at 362); *see also Home Ins. Co. v. Matthews,* 998 F.2d 305, 309 (5th Cir. 1993) (stating that a claimant has fair notice of the defense only if the defendant "sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise") (citing *Bull's Corner Rest. v. Director, FEMA,* 759 F.2d 500, 502 (5th Cir. 1985)). If an affirmative defense is deficient—i.e., it it is either legally insufficient, *Kaiser Aluminum & Chem. Sals, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), or irrelevant and prejudicial *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 n.5 (N.D. Tex. 1993)—a court may strike the affirmative defense from the pleadings. With that being said, "it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. Of Pub. Instruction of Esambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). To be sure, a motion to strike is often "sought by the movant simply as a dilatory tactic." *Niblo*, 821 F. Supp. at 449. Thus, "[i]f an affirmative defense raises either a question of fact or a question of law[,] the court must deny a motion to strike." *Mosser v. Aetna Life Insurance Company*, 2018 WL 3301808, at *2 (E.D. Tex. Mar. 9, 2018) (citing *Niblo*, 821 F. Supp. at 449) (Johnson, Mag. J.), *report and recommendation adopted*

*by*, 2018 WL 1517032 (E.D. Tex. Mar. 28, 2018) (Mazzant, J.). "The decision whether to grant a motion to strike is within the court's discretion." *Id.*

   a. No Standing

Article III of the Constitution limits federal jurisdiction to "Cases" and "Controversies." *See* U.S. CONST. Art III; *Aetna Life Ins. Co. of Hartford Conn. v. Haworth*, 300 U.S. 227, 239 (1937). To have a case or controversy, there must be real parties with an actual dispute. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing addresses whether a plaintiff is the proper party to bring a matter before the court for adjudication. A plaintiff does not have Article III standing if the plaintiff cannot present a case or controversy. In *Lujan v. Defenders of Wildlife*, the Supreme Court held that Article III standing requires a plaintiff to show the following elements: (1) it has suffered an "injury in fact" that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely the injury will be redressed by a favorable decision. 504 U.S. 555, 560–61 (1992). To have an "injury in fact" or "legally protected interest" the Supreme Court has consistently stressed that a plaintiff's complaint must establish that he has a "personal stake" in the alleged dispute and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997); *see also Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical.") (citations omitted). "[O]bjections to standing are jurisdictional in nature and can be raised at any time." *Bankston v. Burch*, 27 F.3d 164, 167 (5th Cir. 1994) (citing FED. R. CIV. P. 12(h)(3)). A plaintiff bears the burden of proof in establishing standing. *Mosser v. Aetna Life Insurance Company*, 2018 WL 1517032, at *2 (E.D. Tex. Mar. 9, 2018) (citing *Native Am. Arts, Inc. v. The Waldron Corp.*, 253 F. Supp. 2d 1041 (N.D.

7

Ill. 2003)). As such, standing "typically cannot be an affirmative defense." *Id.* With that being said, circumstances may militate a different conclusion. *Id.* To be sure, "nothing in the language of Rule 8(c) purports to limit what may be pleaded as affirmative defenses. *Id.*

Sea Wasp proffers that "Domain Protection has not demonstrated special interest in the subject domain names which qualifies it to demand the relief it seeks" (Dkt. #117). Domain Protection argues that standing is "not an affirmative defense recognized by law" (Dkt. #136). While it is true that standing "typically cannot be an affirmative defense," the circumstances here militate a different conclusion. *Mosser*, 2018 WL 1517032 at *2. Sea Wasp is simply putting Domain Protection on notice that Sea Wasp believes it has the right to contest the ownership of the Domain Names in dispute. Irrespective of whether Sea Wasp actually has the right to challenge Domain Protection's ownership, the Court has permitted defendants to put plaintiffs on notice of standing challenges via affirmative defenses prior to the present action. *Id.* The Court is not persuaded that this case should be any different. Indeed, "striking the defense from [Sea Wasp's] [A]nswer would be pointless because [Domain Protection] is not at risk of prejudicial harm. *Id.* (citing *Joe Hand Promotions, Inc. v. Izalco, Inc.*, 2017 WL 3130581, at *1 (S.D. Tex. 2017)). Because Sea Wasp's decision to plead standing as an affirmative defense does not prejudice Domain Protection, the Court has permitted such pleadings before, and it is a drastic remedy to strike a pleading, the Court denies Domain Protection's Motion as to Sea Wasp's first affirmative defense. *Augustus*, 306 F.2d at 868.

b. Lack of Demonstrated Ownership

Sea Wasp contends that "Domain Protection has acted inconsistently with the right to seek the relief it seeks and has miscited to the Court the nature and extent of prior Court rulings, and particularly those *Netsphere, Inc., et al, v. Baron, et al*, CA 3:09-CV-0988-L [Dkt. 1368]"

(Dkt. #117). Domain Protection avers that this affirmative defense is unsupported by any plausible factual allegations and is not an affirmative defense recognized by law. The Court disagrees. As discussed earlier:

> In order to succeed on a motion to strike surplus matter from an answer, it must be shown that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.

*Niblo*, 821 F. Supp. at 449. Here, the defense that Domain Protection has acted inconsistently with the right to seek relief—whether that is true or not—goes directly to Sea Wasp's challenge to Domain Protection's ownership. Domain Protection provides no argument that the inclusion of this defense prejudices Domain Protection. *See Niblo*, 821 F. Supp. at 449 n.5. Furthermore, Domain Protection fails to cite a single legal authority that suggests that Sea Wasp's "Lack of Demonstrated Ownership" defense is legally insufficient. *See Avondale Shipyards, Inc.*, 677 F.2d at 1057. Without briefing on why this defense is legally inadequate and any argument that the defense prejudices Domain Protection, the Court finds that Domain Protection has failed to establish why the Court should utilize such a drastic remedy against Sea Wasp. *See Augustus*, 306 F.2d at 868. The inclusion of this affirmative defense simply puts Domain Protection on notice that Sea Wasp believes it may challenge Domain Protection's ownership of the Domain Names. *See Bowman,* 193 F.3d at 362. For these reasons, Domain Protection's Motion as to Sea Wasp's second affirmative defense is denied.

    c. Waiver

Sea Wasp finally pleads that:

> Domain Protection and/or its owners or members has/have not demonstrated ownership right in any properly constituted legal entity to be entitled to the relief it seeks and has miscited to the Court the nature and extent of prior Court rulings, and particularly those *Netsphere, Inc., et al, v. Baron, et al*, CA 3:09-CV-0988-L [Dkt. 1368]. More specifically, by misciting justification for bringing this action, but failing to do so based on facts, Domain waives any other evidence of interest or method to prove ownership interest.

9

> Domain has limited itself to the miscited legal authority. That assertion waives all other potential sources of explanation of ownership.

(Dkt. #117). Domain Protection responds by arguing that this is not a defense recognized by law and then proceeds to outline the law surrounding the entitlement of an LLC to sue in its own name (Dkt. #136). Sea Wasp's affirmative defense is functionally one of waiver. Indeed, Sea Wasp is arguing that because Domain Protection allegedly limited its arguments as to ownership to a "miscited" opinion, Domain Protection has effectively waived "all other potential sources of explanation of ownership" (Dkt. #93). Even if this "wavier" was not the "waiver" considered by Rule 8(c), as Domain Protection seemingly argues, once again, Sea Wasp has simply put Domain Protection on notice of the contentions Sea Wasp seeks to make. Further, Domain Protection has again failed to brief the court on *why* Sea Wasp's affirmative defense is "legally insufficient" (Dkt. #136). *Avondale Shipyards, Inc.*, 677 F.2d at 1057. Domain Protection has also not proffered any argument that it would be prejudiced by the inclusion of this "waiver" defense either. *See Niblo*, 821 F. Supp. at 449 n.5. Therefore, even if this defense did not equate to waiver under Rule 8(c), the Court is of the opinion again that Domain Protection has failed to establish why the Court should strike Sea Wasp's defense. *See Augustus*, 306 F.2d at 868. Domain Protection's Motion, as to Sea Wasp's third affirmative defense, is accordingly denied. *See Niblo*, 821 F. Supp. at 449.

II. Counterclaims

The Federal Declaratory Judgment Act provides, in relevant part, that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Declaratory Judgment Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286–87 (1995). In each particular case, "the propriety of declaratory relief [] will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* Put simply, a court has broad discretion in "determining whether to entertain a declaratory judgement action under 28 U.S.C. § 2201." *Burlington Ins. Co. v. Ranger Specialized Glass, Inc.*, 2012 WL 6569774, at *2 (S.D. Tex. Dec. 17, 2012). In determining whether to entertain a declaratory judgment action, the Fifth Circuit has provided that a court must first determine "whether the declaratory action is justiciable." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). This essentially means that a court must determine at the outset whether an actual controversy exists between the parties to the action. *Id.* (citing *Rowan Companies, Inc. v. Griffin,* 876 F.2d 26, 27–28 (5th Cir. 1989)). If the court has jurisdiction, then it must next resolve "whether it has the "authority" to grant declaratory relief in the case presented." *Id.* (citing *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc,* 996 F.2d 774, 776 (5th Cir. 1993) (parenthetical omitted)). Finally, the court must "determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* (citing *Travelers Ins. Co.*, 996 F.2d at 778).

When considering how to exercise its discretion, a court may be guided by the purpose of the Declaratory Judgment Act. The Declaratory Judgment Act "gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND

PROCEDURE § 2751 (4th ed. 2019) (citing *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002); *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1428 (Fed. Cir. 1997)). Indeed, "[t]he remedy made available by the Declaratory Judgment Act and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued." *Id.* (citations omitted). By allowing for this preemptive remedy, the Declaratory Judgment Act can relieve potential defendants "from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure . . . ." *Id.* (citing *Halkin v. Helms*, 690 F.2d 977, 1007 n.110 (D.C. Cir. 1982)). For this reason, a request for declaratory judgment "need not be permitted" if the request "adds nothing to an existing lawsuit." *Burlington Ins. Co.*, 2012 WL 6569774 at *2 (citing *Pan–Islamic Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir. 1980)). Indeed, courts in the Fifth Circuit "have regularly rejected declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit." *Id.*; *see, e.g., Pan–Islamic Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir.1980) (affirming refusal to allow leave to add claims that were adequately raised in the original complaint); *Xtria LLC v. Tracking Sys., Inc.,* 2007 WL 1791252, at *3 (N.D. Tex. Jun.21, 2007) (dismissing declaratory judgment action under Rule 12(b)(6) where it duplicated an existing breach of contract claim); *Assistmed, Inc. v. Conceptual Health Solutions, Inc.,* 2006 WL 3691003, at *17 (N.D. Tex. Dec.14, 2006) (standing for the same proposition); *Kogul v. Xspediou Mgmt. Co.,* 2005 WL 1421446, at * 4 (N.D. Tex. Jun.1, 2005) (dismissing declaratory actions that sought resolution of matters already to be resolved in the ongoing lawsuit because "[s]eparate declaratory judgment actions would be redundant.").

In the present action, Sea Wasp seeks a declaration, pursuant to 28 U.S.C. § 2201, that:

a) Domain has no standing to bring this action against Sea Wasp;
b) Domain has waived its right to assert any basis for ownership or control of the domain names in question, except the cited Judge Lindsay *Netsphere* order [Dkt. 1368];
c) Judge Lindsay's *Netsphere* order [Dkt. 1368] does not vest title in Domain or any of Domain's affiliates;
d) Sea Wasp abided by the law in receiving the domain names in issue when it purchased those names when they were under "lock;"
e) Sea Wasp abided by the law in maintaining the "lock;"
f) Sea Wasp possessed an immunity to maintain the "lock," as here.

(Dkt. #93). Even if the Court were to assume that these counterclaims are justiciable, *Wolfe*, 212 F.3d at 895, and that the Court has the authority to grant these counterclaims, *Travelers Ins. Co.*, 996 F.2d at 776, the Court is of the opinion that it should, in its discretion, dismiss these counterclaims. *Travelers Ins. Co.*, 996 F.2d at 778. The counterclaims that Sea Wasp has pleaded mirror Domain Protection's complaint, are merely duplicative,[2] and seek resolution of matters that are already set to be resolved in this ongoing lawsuit. *See, e.g., Pan–Islamic Corp.,* 632 F.2d at 546; *Xtria LLC v. Tracking Sys., Inc.,* 2007 WL 1791252 at *3; *Assistmed*, 2006 WL 3691003 at *17; *Kogul*, 2005 WL 1421446 at * 4. Accordingly, rather than permitting Sea Wasp to seek a separate, redundant declaratory judgment action, the Court finds it more prudent to dismiss the counterclaims. Sea Wasp's counterclaims are therefore dismissed with prejudice pursuant to Rule 12(b)(6).

---

[2] In addition to duplicating existing claims from the complaint, the counterclaims espoused by Sea Wasp also duplicate the affirmative defenses proffered by Sea Wasp earlier in its Answer. Thus, the Court's decision to dismiss the counterclaims in its discretion will not prejudice Sea Wasp in any manner.

**CONCLUSION**

It is therefore **ORDERED** that Plaintiff Domain Protection's Rule 12 Motion to Dismiss Sea Wasp's Counterclaims and Strike Sea Wasp's Insufficient Defenses (Dkt. #136) is hereby **GRANTED** in part and **DENIED** in part. Specifically, the Court **DENIES** Domain Protection's Motion requesting the Court to strike Sea Wasp's affirmative defenses. The Court, however, **GRANTS** Domain Protection's Motion requesting dismissal of Sea Wasp's counterclaims and accordingly dismisses the counterclaims with prejudice pursuant to Rule 12(b)(6).

**SIGNED this 22nd day of November, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE