# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DOMAIN PROTECTION, LLC, | § | |
|     *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:18-cv-792 |
| | § | Judge Mazzant |
| SEA WASP, LLC, ET. AL. | § | |
|     *Defendants*. | § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Domain Protection's Motion for Reconsideration of Sanctions Imposed Against its Counsel (Dkt. #312); Plaintiff Domain Protection's Motion for Clarification on Sanctions Ordered (Dkt. #314); Plaintiff Domain Protection's Motion to Allow Payment into Registry of the Court or for Stay Pending Reconsideration of Imposition of Sanctions (Dkt. #315); and Motion for Leave to File Sealed Certificate (Dkt. #316). Having considered the motion and the relevant pleadings, the Court finds that: Plaintiff Domain Protection's Motion for Reconsideration of Sanctions Imposed Against its Counsel (Dkt. #312) and Plaintiff Domain Protection's Motion to Allow Payment into Registry of the Court or for Stay Pending Reconsideration of Imposition of Sanctions (Dkt. #315) are **DENIED**. Plaintiff Domain Protection's Motion for Clarification on Sanctions Ordered (Dkt. #314) and Domain Protection's Motion for Leave to File Sealed Certificate (Dkt. #316), however, are **GRANTED**.

## **BACKGROUND**

On November 25, 2019, Domain Protection filed Plaintiff Domain Protection's Motion for Reconsideration of Sanctions Imposed Against its Counsel (Dkt. #312). In its Motion, Domain Protection seeks reconsideration of the Courts imposition of sanctions based upon Schepps failure to disclose his financial interest in the present action. Domain Protection argues that the Court did

not provide Schepps with Due Process because the Court "inadvertently imposed sanctions on grounds that were raised in Sea Wasp's *first* Motion for Sanctions, **without allowing Domain Protection the opportunity to be heard on that motion or those grounds**" (Dkt. #312) (emphasis in original). Further, Domain Protection avers that Sea Wasp failed to disclose the "full truth" to the Court (Dkt. #312). This purported lack of disclosure, Domain Protection maintains, "induced the Court to find, contrary to the record, that '*Schepps . . . did not disclose that interest with the Court . . . Schepps did not disclose his nor Katz' financial interest in the present action. Such failure is unacceptable*'" (Dkt. #312) (emphasis in original). Finally, Domain Protection contends that "this Honorable Court has found that there was no showing that any purported misrepresentation by counsel for Domain Protection was made willfully. In that circumstance, sanctions against an attorney are inappropriate" (Dkt. #312) (citation omitted).

On November 26, 2019, Domain Protection filed three Motions. First, Domain Protection filed Plaintiff Domain Protection's Motion for Clarification on Sanctions Ordered (Dkt. #314). Here, Domain Protection seeks clarification for the costs that it is required to pay. Second, Domain Protection filed Plaintiff Domain Protection's Motion to Allow Payment into Registry of the Court or For Stay Pending Reconsideration of Imposition of Sanctions (Dkt. #315). Finally, Domain Protection filed its Motion for Leave to File Sealed Certificate (Dkt. #316). Domain Protection argues here that Schepps should be permitted to file the Court-mandated certificate disclosing his financial interest under seal (Dkt. #316). Permitting the certificate to be filed under seal is warranted, Domain Protection maintains, given that the certificate allegedly contains confidential settlement information and has "no relevance to the matters at issue in the lawsuit at bar" (Dkt. #316).

On December 2, 2019, Sea Wasp filed Sea Wasp, LLC's Response to Motion for Reconsideration of Sanctions [Dkt. #312] and to Counsel's Certificate [Dkt. #318] (Dkt. #320). As to Domain Protection's Motion for Reconsideration of Sanctions Imposed Against its Counsel, Sea Wasp argues that Schepps was given proper notice, Schepps had an adequate opportunity to respond, and sanctions should be imposed (Dkt. #320). As to Domain Protection's Motion for Leave to File Sealed Certificate, Sea Wasp enumerates a number of grievances it has with the contents of the Certificate (Dkt. #320).

On December 4, 2019, Sea Wasp filed Sea Wasp, LLC's Response to Plaintiff's Motion for Clarification [Dkt. #314][,] to Allow Payment in Registry of the Court [Dkt. #315], and for Leave to File Sealed Certificate [Dkt. #316]. First, Sea Wasp argues that any determination of what "costs" entails is for the Court to make (Dkt. #324). Sea Wasp also includes a number of exhibits which outline, among other things, the costs associated with Sea Wasp's Second Motion for Sanctions (Dkt. #324). Second, Sea Wasp opposes Domain Protection's characterization of Sea Wasp's financial integrity in Plaintiff Domain Protection's Motion to Allow Payment into Registry of the Court or for Stay Pending Reconsideration of Imposition of Sanctions (Dkt. #324). Finally, Sea Wasp argues, among other things, that Scheppss "claimed legal fees are relevant and could figure significantly in the a) factual findings underlying the outcome of this case and/or b) relief to be ordered, if any" (Dkt. #324) (citing Dkt. #320, note 13). This was followed by Defendants Vernon Decossas and Gregory Faia's Response to Domain Protection's Motions for Clarification (Dkt. #314) To Allow Payment into Registry of the Court (Dkt. #315), and For Leave to File Sealed Certificate (Dkt. #316) (Dkt. #325). The Individual Defendants make similar arguments to those already proffered by Sea Wasp.

On December 4, 2019, Domain Protection filed its Reply in Support of Plaintiff Domain Protection's Motion for Reconsideration of Sanctions Imposed Against its Counsel (Dkt. #326). On December 11, 2019 Sea Wasp filed Sea Wasp, LLC's Sur-Reply to Plaintiff's Reply in support of Plaintiff's Motion for Reconsideration of Sanctions [Dkt. #312] (Dkt. #330). Domain Protection, also on December 11, 2019, filed its Reply in Support of Plaintiff Domain Protection's Motions for Clarification, to Stay and for Leave to Seal (Dkt. #331). The Court now turns to Domain Protection's Motions.

## LEGAL STANDARD

### I. Motion to Reconsider

Motions to reconsider serve a very limited purpose: "to permit a party to correct manifest errors of law or fact, or to present newly discovered evidence." *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002) (citations omitted). Mere disagreement with a district court's order does not warrant reconsideration of that order. *Id.* at 332. A party should not restate, recycle, or rehash arguments that were previously made. *Id.* District court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Verdin v. Fed. Nat'l. Mortg. Ass'n*, No. 4:10-cv-590, 2012 WL 2803751, at *1 (E.D. Tex. July 10, 2012) (citations omitted).

### II. Motion to Seal

The public has a common law right to view judicial records and judicial proceedings. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 538, 598 (1978); *United States Holy Land Found. for Relief 7 Dev.*, 624 F.3d 685, 690 (5th Cir. 2010); *Data Engine Techs. LLC v. IBM Corp.*, Nos. 6:13-CV-858-RWS-JDL, 6:13-CV-859-RWS-JDL, 6:13-CV-860, 2016 WL 9281313, at *1 (E.D. Tex. Apr. 27, 2016). However, such right is not absolute. *Sec. Exch. Comm'n v. Van*

*Wayenberghe*, 990 F.2d 845, 858 (5th Cir. 1993). In deciding whether to seal a transcript, the Court must balance the common law right of access to judicial records with the purported interest in sealing the record. *Data Engine Techs.*, 2016 WL 9281313, at *1 (citations omitted). "The Court considers 'the relevant facts and circumstances of the particular case,' and weighs 'the interests advanced by the parties in light of the public interest and the duty of the courts.'" *Id.* (citations omitted).

**ANALYSIS**

The Court will address each of Domain Protection's Motions independently.

I. Plaintiff Domain Protection's Motion for Reconsideration of Sanctions Imposed Against its Counsel

Domain Protection provides a number of arguments supporting its Motion for Reconsideration. Those arguments can be placed into three categories. First, Domain Protection's Due Process argument. Second, Domain Protection's bad-faith argument. Third, the remainder of Domain Protection's arguments. The Court considers each category in turn.

a. Due Process Argument

In issuing sanctions, "[a] court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Due Process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldrige*, 424 U.S. 319, 333 (1976). "Notice may be in the form of a personal conversation, an informal telephone call, a letter, or a timely [motion for sanctions]." *Jabary v. McCullough*, 325 F.R.D. 175, 183 (E.D. Tex. 2018) (citing *Veillon v. Expl. Servs., Inc.*, 876 F.2d 1197, 1202 (5th Cir. 1989)).

Domain Protection argues it was not afforded notice and an opportunity to be heard (Dkt. #312). Domain Protection is mistaken. First, Domain Protection was put on notice that the Court was considering sanctions under Sea Wasp's Second Motion for Sanctions when Sea Wasp claimed: "[Schepps] has a personal financial stake in the outcome, as Plaintiff was formed as a 'liquidation vehicle' to secure and pay his creditors claims" (Dkt. #189). To be sure, Domain Protection responded directly to Sea Wasp's financial interest argument in Plaintiff Domain Protection's Response to Sea Wasp, LLC's Second Motion for Sanctions Against Gary Schepps (Dkt. #205) (hereinafter "Second Motion for Sanctions"). In its Response, Domain Protection countered that: "Sea Wasp's assertion is not supported by the record" (Dkt. #205). Domain Protection continued its defense of Schepps by stating that "Sea Wasp has shown no personal financial stake in the lawsuit at bar with respect to Domain Protection's Counsel." (Dkt. #205). It is readily apparent that Domain Protection was put on notice that the Court was considering whether to levy sanctions against Schepps for his, at that time, purported financial interest in the case. *See Jabary*, 325 F.R.D. at 183. Domain Protection's notice argument is therefore rejected.

Second, Domain Protection argues that it was not granted an opportunity to be heard. This argument falls flat. Domain Protection, as was previously discussed, was given the opportunity to file its Response (Dkt. #205) and its Sur-Reply (Dkt. #215). This permitted the Court to hear directly from Domain Protection as to why its counsel should not be sanctioned. Even with the opportunity to file a Response and Sur-Reply, Domain Protection still argues that it did not receive its opportunity to be heard. Domain Protection argues that the Court relied upon Sea Wasp, LLC's Motion for Sanctions (Dkt. #144) (hereinafter "First Motion for Sanctions"), which had not received a response, and thus "inadvertently" ruled on sanctions without Domain Protection's input. Domain Protection is mistaken. The Court was clear. In its opinion, the Court first stated

6

that it would not consider Sea Wasp's First Motion for Sanctions. *See* Dkt. #295 at pp. 20–23. The Court then turned to Sea Wasp's Second Motion for Sanctions. *See* Dkt. #295 at p. 23–29. As previously stated, Domain Protection responded directly to Sea Wasp's Second Motion for Sanctions. The Court only considered Sea Wasp's Second Motion for Sanctions in its analysis as evidenced by the Court citing Dkt. #189, not Dkt. #144, throughout its analysis. Domain Protection accordingly was provided with its constitutionally required opportunity to be heard, *Mathews*, 424 U.S. at 333, after receiving proper notice, *Jabary*, 325 F.R.D. at 183. Domain Protections Due Process argument is therefore rejected.

      b. Bad-Faith Argument

In *Chambers v. NASCO*, the Supreme Court stated, "[i]t has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" 501 U.S. at 40–48 (citing *United States v. Hudson*, 7 Cranch 32, 34 (1812); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). Indeed, "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.* at 44 (citing *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821); *Ex parte Robinson*, 19 Wall. 505, 510 (1874)). Such implicit powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)). A court must exercise these implicit powers with discretion. *Id.* at 44. In exercising these powers, a court is permitted to fashion appropriate sanctions for "conduct which abuses the judicial process." *Id.* at 45. One of the means of measuring whether the judicial process has been abused is compliance with the local rules of a

7

court's district. In the Eastern District of Texas, EDTX Local Rule AT-3 provides, in relevant part, that: "A lawyer owes candor, diligence, and utmost respect to the judiciary." L.R. AT-3. A court, when acting under its inherent authority, may only impose sanctions upon a finding of bad faith. *See Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993).

Here, the Court cited L.R. AT-3, not rule 37, Rule 11, nor § 1927 when issuing sanctions. As such, the Court was relying upon its inherent power and the Local Rules[1]—which the Court had previously cited at the outset of the relevant portion of the Court's opinion— to levy sanctions against Schepps.[2] In levying these sanctions, the Court relied upon its implicit finding of bad faith after laying out specific findings of fact. The Court, in the interest of clarifying the record, will make its specific finding of "bad faith" explicit. The Court considered the following, explicitly laid out facts, when making its determination: (1) Domain Protection's response in Dkt. #205 which claimed "Sea Wasp's assertions [were] not supported by the record"; (2) Domain Protection's Certificate of Interested Persons (Dkt. #4) which omits Schepps and Katz as having a financial interest in the case; (3) Domain Protection's argument in Dkt. #205 that "Sea Wasp has shown no personal financial stake in the lawsuit"; and (4) Katz' testimony at the May 31 deposition outlining her and Schepps financial interest which directly contradicts the previous three assertions. *See* Dkt. #295. In considering Schepps inconsistent statements, misrepresentations, and decision to not openly admit his and Katz' financial interest, the Court determined that sanctions were appropriate. Put simply, the Court found that, while Schepps was arguing that he had no financial interest in Domain Protection, or at least Sea Wasp could not prove that he had a

---

[1] Even if the Court had not found bad faith, its decision would not merit reconsideration. By citing Local Rule AT-3, the Court was not required to make a finding of bad faith. Indeed, the Fifth Circuit has expressed, albeit, in an unpublished opinion, that a court has authority to enforce its local rules through appropriate sanctions without a finding of bad faith. *See In re Hermesmeyer*, 688 Fed. App'x 300, 304–05 (2017) (per curiam). Regardless of *In re Hermesmeyer*, the Court found bad faith which has been made more explicit in this opinion.
[2] Reliance upon the Court's inherent power and the Local Rules was proper because Rule 11 was not briefed and Rule 37 and § 1927 were not directly on point.

8

financial interest, Schepps actually had the very financial interest that Sea Wasp alerted the Court to and Schepps willfully decided to mislead the Court. *See* Dkt. #295 (stating "Schepps did not disclose his nor Katz' financial interest in the present action" after discussing Schepps' arguments and Katz' sworn testimony to the contrary). Accordingly, the Court sanctioned Schepps by requiring him to pay the costs of briefing and file an updated Certificate of Interest. *See* Dkt. #295. Notwithstanding the Court's prior implicit finding of bad faith, the Court will make its finding explicit. The Court finds that Schepps acted in bad faith in concealing his financial interest in the case by filing documents with the Court which purposefully omitted his interest. *Resolution Trust*, 6 F.3d 336 at 340. Schepps actions were in direct violation of Local Rule AT-3—which requires a lawyer to act with candor and utmost respect for the judiciary—and resulted in an abuse of the judicial process. L.R. AT-3. Consequently, sanctions are, and were, appropriate.

The Court's conclusion, however, does not satisfy Schepps. Schepps, through Domain Protection, argues that, because the Court did not explicitly pen the phrase "bad faith" or "willful" in the section discussing Schepps' financial interest, the Court could not sanction Schepps. First, the Court has now made that implicit finding explicit. Second, the Court's now explicit statement should not have been necessary for Schepps to understand the Court's opinion. While the Court did not explicitly state that Schepps acted in "bad faith," the Court made its finding of Schepps' "bad faith" quite implicit. Indeed, the Court demonstrated that Schepps was not being candid with the Court and that his story did not match with his key witness' story. This finding was after the Court had stated that there is generally a bad faith or willfulness requirement for sanctions. *See* Dkt. #295 (citing *United States v. $49,000 Currency*, 300 F.3d 371, 376 (5th Cir. 2003). Domain Protection argues, however, that the Court's statement in a later section—finding that there was

9

no proof of bad faith as to that particular argument—means that the Court *never* found bad faith. Again, Domain Protection is mistaken.

Sea Wasp's Second Motion for Sanctions had six arguments for the imposition of sanctions. Each argument was addressed independently. *See* Dkt. #295 at p. 24 ("In reviewing the Second Motion, the Court will discuss each of the six posited grounds for sanctions *individually*.") (emphasis added). In addressing Sea Wasp's sixth argument regarding Schepps purported misrepresentation of Katz' personal representation—which was labeled as *Purposeful Misrepresentation*—the Court stated that "Sea Wasp has not established that any alleged *misrepresentation* by Schepps was willful" (Dkt. #295) (emphasis added). The Court concluded, in that subsection, that "Sea Wasp's Motion, *on this ground*, is again denied (Dkt. #295). Domain Protection now argues that this individual subsection should be read into the entirety of the Court's opinion. Domain Protection is, again, mistaken. The Court's opinion in this subsection is strictly limited to Sea Wasp's sixth argument concerning the alleged *purposeful misrepresentation* of Katz' personal representation by Schepps. The opinion accordingly mirrors the language of said argument when the Court found no willful *misrepresentation* in the representation context. If the Court's statement that it would review each argument independently, followed by the Court's individualized discussion of Sea Wasp's sixth argument, is not enough for Domain Protection, it also bears noting that the Court concluded the relevant subsection by stating "Sea Wasp's Motion, *on this ground*, is again denied" (Dkt. #295). The Court was clear. The discussion in Part II(ii)(iv) of Dkt. #295 does not carry over to the other subsections of Part II(ii).[3] Therefore, Domain Protection's argument that the Court failed to find bad faith is rejected.

---

[3] That the Court found no willfulness in this subsection, after citing a willfulness requirement for sanctions in general, further supports that the Court found willfulness when it sanctioned Schepps in the Court's subsection on financial interest.

10

Finally, it is worth noting that the Court's finding of bad faith is bolstered by Domain Protection's recent filing. In its Motion for Reconsideration, Domain Protection, through Schepps, argues that Schepps "repeatedly disclosed to the Court" his financial interest. This argument, however, was not raised by Domain Protection when originally opposing sanctions against its counsel. Indeed, Domain Protection, again, represented by Schepps, took a different tone and line of argument when it stated: "Sea Wasp's assertion is not supported by the record. Sea Wasp has shown no personal financial stake in the lawsuit at bar" (Dkt. #205). Rather than admit that Schepps had a financial stake in the present action, Domain Protection, through Schepps, argued that Sea Wasp could not, and had not, proved Schepps' financial interest. This inconsistency in Schepps' claims provides further support for the Court's determination of bad faith as Schepps has purposefully not been candid with the Court. Domain Protection's arguments surrounding bad faith are accordingly rejected.

      c. Remaining Arguments

The Court has already considered Domain Protection's argument concerning the evidence provided by Sea Wasp as to Schepps' financial interest, Rule 7.1, and Rule 11 and found each argument unpersuasive. These renewed arguments are therefore also rejected.

The Court's opinion held that Schepps acted in bad faith after providing Schepps with the his constitutionally required due process. That bad faith has been made more explicit here. The remainder of Schepps arguments have already been made and will not be reconsidered by the Court. Consequently, Plaintiff Domain Protection's Motion for Reconsideration of Sanctions Imposed Against its Counsel is hereby denied.

II. Plaintiff Domain Protection's Motion for Clarification on Sanctions Ordered

Federal courts have inherent authority to sanction a litigant for bad faith conduct. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183–84 (2017) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)). In issuing such sanctions, a district court has broad discretion and may order the bad-faith litigant to pay the other sides legal fees. *Id.* at 1183–84. Indeed, the Supreme Court has stated that one permissible sanction is an order "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.* at 1186 (citing *Chambers*, 501 U.S. at 45). Such a sanction ""must be compensatory rather than punitive in nature." *Id.* (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 826–830 (1994). "That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.* Consequently, a district court should only grant an award of costs or fees so as to shift those costs or fees "incurred because of the misconduct at issue." *Id.* (stating that "a sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by" the bad-faith acts on which it is based.'") (citing *Mine Workers*, 512 U.S. at 834).

The Court awarded costs of briefing in its opinion sanctioning Schepps (Dkt. #295). Costs of briefing are not the same as costs of filing. But, with that being said, use of the phrase "costs of briefing" is admittedly ambiguous and can be subject to differing interpretations. As such, the Court will clarify its order. Given that the Court's issuance of sanctions was predicated upon a finding of bad faith, the Court awarded Sea Wasp with costs in the "broader sense" that Domain Protection notes (Dkt. #314). Namely, Domain Protection is ordered to pay the costs—or, in other words, attorneys' fees—incurred by Sea Wasp in briefing the Court through its Second Motion for Sanctions. *Goodyear Tire & Rubber Co*, 137 S. Ct. at 1186. Sea Wasp's Second Motion for Sanctions would not have been necessary but for Schepps sanctionable conduct. Consequently,

such a sanction is compensatory, *id.*, and calibrated as a means of rectifying the damages directly caused by Schepps' bad-faith acts, *Mine Workers*, 512 U.S. at 834.

Unlike Domain Protection's contention in its Motion, however, the issuance of sanctions here is not a blank check. The parties in this district are encouraged to cooperate. Thus, Domain Protection and Sea Wasp were afforded the opportunity to attempt to determine appropriate costs free from judicial intervention. The Court, however, was not washing its hands of Domain Protection as Domain Protection implies. Domain Protection was, and still is, permitted to file a motion disputing the amount of fees it would be, or has been, asked to pay Sea Wasp. At this point, the Court would calculate the Lodestar and consider the *Johnson* Factors. The Court, having not received such a motion, has not judicially reviewed the amount that Sea Wasp asks for. The lack of judicial review, however, is the direct result of Domain Protection not filing such a motion. To ensure that Domain Protection is aware that it may seek judicial review of Sea Wasp's requested costs, the Court grants Domain Protection leave to contest the bill provided to it. The parties are still encouraged to meet and confer in attempts to reach a mutually agreeable payment. If the parties reach an impasse and cannot resolve this dispute by December 27, 2019 at 5 p.m., then Domain Protection may file a motion contesting the requested payment. That motion must be filed by January 10, 2020 at 5 p.m. The Court, should such motion be filed, will then engage in the judicial review that Domain Protection seeks.

III. Plaintiff Domain Protection's Motion to Allow Payment into Registry of the Court or for Stay Pending Reconsideration of Imposition of Sanctions

Plaintiff Domain Protection's Motion to Allow Payment into Registry of the Court or for Stay Pending Reconsideration of Imposition of Sanctions is denied as moot given the Court's holding in Part I, *supra*.

IV. Plaintiff Domain Protection's Motion for Leave to File Sealed Certificate

The Court, finding Schepps' conduct sanctionable, ordered that Schepps file an updated Certificate of Interested Parties (Dkt. #295). In response, Domain Protection filed Plaintiff Domain Protection's Motion for Leave to File Sealed Certificate. At the outset, the Court notes that the procedural posture of this Motion is anything but customary. Domain Protection first filed its Motion to Seal (Dkt. 316). Following the Motion to Seal, Domain Protection filed a sealed, *ex parte* Certificate with the Court (Dkt. #317). Domain Protection then filed a redacted version of the *ex parte* Certificate (Dkt. #318). Interestingly, Domain Protection, in its Motion for Leave to File Sealed Certificate, argues that the Court-mandated Certificate should be filed under seal because of an alleged confidential settlement agreement and due to the privacy interest of Schepps (Dkt. #316). Those privacy interests, Domain Protection continues, concern Schepps' desire to keep the amount of work performed on behalf of Quantec, LLC, and the fee for that work, private (Dkt. #316). Domain Protection also argues that Schepps' work for Quantec and fees that he charged are irrelevant (Dkt. #316). Despite these arguments, Domain Protection's actions are more consistent with a request for *in camera* review so as to permit Domain Protection to file a redacted version of the Certificate with the Court. This would prevent Sea Wasp's review of a non-party's financial information; rather than a Motion to Seal which would permit Sea Wasp to review the contents of said Certificate. Based upon the substance of Domain Protection's Motion, along with the actions accompanying said Motion, a request to file a redacted version of the Certificate following *in camera* review, rather than a request for leave to file a sealed version of

the Certificate, seems more appropriate. The Court will construe Domain Protection's Motion accordingly.

Having waded through the procedural murkiness, and reviewed Domain Protection's *ex parte* Certificate, the Court is of the opinion that Domain Protection is entitled to file a redacted version of the Certificate with the Court. Sea Wasp and the Individual Defendants do not contest the veracity of Schepps' claim that he has entered into a confidential settlement agreement. That settlement agreement goes to a reduction in payment which Schepps agreed to (Dkt. #316). By redacting the Certificate to not permit Sea Wasp or the public to view the payment structure that Schepps and Quantec agreed to, Domain Protection both complies with the Court's Order in Dkt. #295 and the confidential settlement agreement. While Sea Wasp may desire information on Schepps, the production of this Certificate of Interest is not for Sea Wasp; it is for the Court. To be sure, the hours that Schepps spent working for Quantec, and the rate he charged for that work, is not relevant to Sea Wasp's defense. *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (stating that relevance is defined by whether a request is reasonably calculated to lead to the discovery of admissible evidence). After all, Sea Wasp cannot defend against its liability for the five causes of action asserted against it by pointing to Schepps' prior business deals. Here, the information is only relevant in two regards. First, the Certificate clears the record and provides the Court with a candid response to rectify Schepps' sanctionable conduct. This follows from the Court's reasoning that sanctions were appropriate based upon an offense *against the Court*, not against Sea Wasp. *See* Dkt. #295; L.R AT-3. Second, it is only the admission of Schepps' financial interest, not the *amount* of that interest, that is relevant for Sea Wasp's purposes. Indeed, the Court would not permit Sea Wasp to compel information regarding Schepps' prior representation had it asked. *See Crosby*, 647 F.3d at 262. Further, Sea Wasp is already aware that

Schepps is financially interested in the case and has received testimony from Katz as to that interest. Consequently, the Court will not be persuaded that a confidential settlement agreement should be made public simply because an opposing party is interested in the underlying facts. *See Data Engine Techs.*, 2016 WL 9281313, at *1. Neither the public's interest nor Sea Wasp's interest outweigh the merits of a confidentiality agreement in this case. *See Nixon*, 435 U.S. at 598; *United States Holy Land Found. for Relief 7 Dev.*, 624 F.3d at 690; *Data Engine Techs.*, 2016 WL 9281313, at *1. It suffices then, for Sea Wasp's purposes, that Sea Wasp is now categorically aware of Schepps' interest. Plaintiff Domain Protection's Motion for Leave to File Sealed Certificate, as reconstrued by the Court, is therefore granted.

## CONCLUSION

It is therefore **ORDERED** that:

- Plaintiff Domain Protection's Motion for Reconsideration of Sanctions Imposed Against its Counsel (Dkt. #312) is **DENIED**.

- Plaintiff Domain Protection's Motion for Clarification on Sanctions Ordered (Dkt. #314) is **GRANTED**.

- Plaintiff Domain Protection's Motion to Allow Payment into Registry of the Court or for Stay Pending Reconsideration of Imposition of Sanctions (Dkt. #315) is **DENIED**.

- Plaintiff Domain Protection's Motion for Leave to File Sealed Certificate (Dkt. #316) is **GRANTED**.

If the parties cannot agree upon a calculation of the costs of briefing that Sea Wasp should be awarded by December 27, 2019 at 5 p.m., Domain Protection may then file a motion contesting the requested payment. That motion must be filed by January 10, 2020 at 5 p.m.

**SIGNED this 13th day of December, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE