# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DOMAIN PROTECTION, LLC, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No.  4:18-cv-792 |
| | § | Judge Mazzant |
| SEA WASP, LLC, ET. AL. | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Domain Protection's Motion for Statutory Relief (Dkt. #383), Defendant Sea Wasp LLC's Motion for Attorneys' Fees Under the Texas Theft Liability Act (Dkt. #390), and Defendants' Motion for Entry of Final Judgment (Dkt. #391). Having considered the motions and the relevant pleadings, the Court finds that Plaintiff Domain Protection's Motion for Statutory Relief is **DENIED**, Defendant Sea Wasp LLC's Motion for Attorneys' Fees Under the Texas Theft Liability Act is **DENIED**, and Defendants' Motion for Entry of Final Judgment is **GRANTED in part**.

## BACKGROUND

Domain Protection is the registered name holder for over 50,000 domain names (the "Domain Names"). Sea Wasp is the registrar over those Domain Names. This suit concerned whether Sea Wasp encroached on Domain Protection's proprietary interest in the Domain Names by placing an executive lock on them, which prevented Domain Protection from selling the Domain Names or updating their registration information. Domain Protection brought claims against Sea Wasp for tortious interference, civil conspiracy, conversion, and respective violations of the Texas Theft Liability Act ("TTLA") and the Stored Communications Act ("SCA")

(Dkt. #1).[1]  Sea Wasp insisted, and to this day still insists, that Domain Protection lacks any proprietary interest in the Domain Names in light of a dispute over their ownership.  That ownership dispute need not be fully discussed here but can be viewed in its entirety in the Court's Memorandum Opinion and Order granting in part and denying in part Domain Protection's First Motion for Partial Summary Judgment (Dkt. #332).

On February 3, 2020, after the Court found Sea Wasp liable for violations of the TTLA and SCA, as well as tortious interference and conversion (Dkt. #332), the Court proceeded to trial. The issues at trial were: (1) what amount of damages, if any, was Domain Protection entitled to under the TTLA, SCA, tortious interference with contract, or conversion; and (2) whether Defendants Vernon Decossas and Gregory Faia ("Individual Defendants") were personally liable for Sea Wasp's conduct.  On February 4, 2020, the Court granted the Individual Defendants' Motion for Directed Verdict (Dkt. #373).  Following the Court's entry of a directed verdict, the Court submitted the issue of damages to the jury.  That same day, the jury returned a take-nothing verdict on all counts (Dkt. #379).

On February 5, 2020, the Court ordered Domain Protection to file a motion for statutory damages under the TTLA (Dkt. #374).  On February 19, 2020, Domain Protection filed Plaintiff Domain Protection's Motion for Statutory Relief (Dkt. #383).  In its Motion, Domain Protection seeks $57,000,000 in statutory damages, $483,930 in punitive damages, and attorneys' fees (Dkt. #383).  Domain Protection also seeks a permanent injunction (Dkt. #383).  Notably, Domain Protection's Motion abandons the issue of statutory damages under state law and instead seeks damages and fees under the SCA (Dkt. #383).

---

[1] On July 17, 2019, the Court entered its Memorandum Opinion and Order granting Domain Protection's Motion for Preliminary Injunction (Dkt. #192).

On March 4, 2020, Sea Wasp filed Defendant Sea Wasp, LLC's Response to Plaintiff Domain Protection's Motion for Statutory Relief (Dkt. #388). Sea Wasp avers that: (1) Domain Protection waived any damages under the TTLA; (2) Domain Protection lacks Article III standing to seek relief under the SCA; (3) Domain Protection is not entitled to SCA damages because the jury awarded no actual damages; (4) even if actual damages are not required for a statutory damages award under the SCA, the SCA does not provide for a statutory award of $1,000 per violation; (5) even if the SCA provides for a per violation award, Domain Protection is not entitled to $57,000,000; (6) Domain Protection waived any claim for punitive damages; (7) even if Domain Protection did not waive its claim for punitive damages, the Court should deny the request; (8) the Court should deny Domain Protection's request for attorneys' fees under the SCA; and (9) the Court should deny Domain Protection's request for a permanent injunction (Dkt. #388). On March 11, 2020, Domain Protection filed Plaintiff Domain Protection's Reply in Support of Motion for Statutory Relief (Dkt. #393). On March 17, 2020, Sea Wasp filed Defendant Sea Wasp, LLC's Sur-Reply to Plaintiff's Reply in Support of Plaintiff's Motion for Statutory Relief (Dkt. #395).

On March 5, 2020, Sea Wasp filed the second post-trial motion with the Court: Defendant Sea Wasp LLC's Motion for Attorneys' Fees Under the Texas Theft Liability Act (Dkt. #390). In its Motion, Sea Wasp asserts that it is the prevailing party under the TTLA because it successfully defended against Domain Protection's TTLA claim (Dkt. #390). Consequently, Sea Wasp concludes that it is entitled to attorneys' fees (Dkt. #390). On March 19, 2020, Domain Protection filed Plaintiff Domain Protection's Response to Defendant Sea Wasp LLC's Motion for Attorneys' Fees Under the Texas Theft Liability Act (Dkt. #390). Domain Protection counters that Sea Wasp's request must be rejected because: (1) Sea Wasp did not comply with the mandatory notice requirement for attorneys' fees; and (2) in any event, Sea Wasp is not the prevailing party

3

(Dkt. #390).  On March 26, 2020, Sea Wasp filed Defendant Sea Wasp LLC's Reply in Support of its Motion for Attorneys' Fees Under the Texas Theft Liability Act (Dkt. #398).  On April 2, 2020, Domain Protection filed Plaintiff Domain Protection's Sur-Reply in Opposition to Sea Wasp's Motion for Attorneys' Fees Under the Texas Theft Liability Act (Dkt. #401).

On March 5, 2020, Sea Wasp filed the third and final post-trial motion: Defendants' Motion for Entry of Final Judgment (Dkt. #391).  Defendants claim that they are entitled to a final judgment holding that: (1) the Individual Defendants are not liable and Domain Protection takes nothing on all claims against them; (2) Domain Protection failed to prove any damages on any of its claims and thus takes nothing on all claims; (3) Sea Wasp is the prevailing party under the TTLA and is therefore entitled to attorneys' fees and expenses reasonably incurred; and (4) pursuant to Rule 54(d), Defendants are the prevailing party in this matter and are entitled to costs (Dkt. #391).  On March 19, 2020, Domain Protection filed Plaintiff Domain Protection's Response to the Defendants' Motion for Entry of Final Judgment (Dkt. #397).  Domain Protection agrees that it is appropriate to enter final judgment, but counters that the final judgment should: (1) grant judgment in favor of Domain Protection pursuant to 18 U.S.C. § 2707(a)(1); (2) grant judgment in favor of Domain Protection on its claim of conversion and adjudicate that Domain Protection is entitled to control over the Domain Names; (3) grant judgment in favor of Domain Protection on its claim of tortious interference with existing contract; (4) grant judgment in favor of Domain Protection for Sea Wasp's violation of the TTLA; (5) enter judgment in conformity with a ruling that Domain Protection is entitled to statutory relief under § 2707(c) for $1,000 per violation of the SCA; and (6) grant a permanent injunction against Sea Wasp (Dkt. #397).  On March 26, 2020, Defendants filed Defendants' Reply in Support of Their Motion for Entry of Final Judgment

(Dkt. #399).  On April 2, 2020, Domain Protection filed Plaintiff Domain Protection's Sur-Reply

in Opposition to Sea Wasp's Motion for Entry of Final Judgment (Dkt. #400).

## LEGAL STANDARD

I.      Standing

"Different standards apply when a litigant challenges standing on a FED. R. CIV. P. 12(b)

motion than on a motion for summary judgment under FED. R. CIV. P. 56." *Cramer v. Skinner*,

931 F.2d 1020, 1024 (5th Cir. 1991).  Federal Rule of Civil Procedure 12(b)(1) authorizes

dismissal of a case for lack of subject matter jurisdiction when the district court lacks the "statutory

or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of

Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998); *accord* FED. R. CIV. P. 12(b)(1).  If a Rule 12(b)(1)

motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional

attack under Rule 12(b)(1) before addressing any attack on the legal merits.  *Ramming v. United

States*, 281 F.3d 158, 161 (5th Cir. 2001).  In deciding the motion, the Court may consider "(1) the

complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record;

or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed

facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v.

United States*, 74 F.3d 657, 659 (5th Cir. 1996)).  The Court will accept as true all well-pleaded

allegations set forth in the complaint and construe those allegations in the light most favorable to

the plaintiff. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage,

general factual allegations of injury resulting from the defendant's conduct may suffice, for on a

motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are

necessary to support the claim.'") (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990);

*Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994)).  Once a defendant files a motion to

dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction.  *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief.  *Lane*, 529 F.3d at 557.

When the defendant moves for summary judgment because of a lack of standing, however, the plaintiff must submit affidavits and comparable evidence that indicate that a genuine issue of fact exists on the standing issue.  *See Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. R. Civ. P. 56(e), which for purposes of the summary judgment motion will be taken to be true.  And at the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'") (citing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114–15 (1979)).

## II.     Attorneys' Fees

"Under the 'bedrock principle known as the 'American Rule,' '[e]ach litigant pays his own attorney[s'] fees, win or lose, unless a statute or contract provides otherwise.'"  *Marc v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013).  One such statute is 18 U.S.C. § 2707(c).

## III.     Permanent Injunction

A party seeking a permanent injunction must establish "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest."  *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 533 (5th Cir. 2016) (citing *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (citing

*Dresser–Rand, Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847–48 (5th Cir. 2004)).  The party

seeking a permanent injunction bears the burden of establishing those four factors.  *Abraham v.*

*Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013).

## ANALYSIS

The Court is presented with three post-trial motions.  Each Motion is addressed

independently below.

I.       Plaintiff Domain Protection's Motion for Statutory Relief

In Domain Protection's Motion for Statutory Relief, Domain Protection seeks $57,000,000

in statutory damages, $483,930 in punitive damages, and attorneys' fees under the SCA.  Domain

Protection also seeks a permanent injunction.  Domain Protection states in its Motion that it

"abandons further issues of statutory damages under state law" (Dkt. #383).  Accordingly, Domain

Protection has waived any claim or argument for statutory relief under the TTLA.  Sea Wasp

opposes each of Domain Protection's remaining requests.  The Court now turns to those remaining

requests.

A.  Stored Communications Act

Domain Protection claims that it is entitled to $57,000,000 in statutory damages under the

SCA because Sea Wasp purportedly violated the SCA 57,000 times and the SCA awards damages

on a "per violation" basis.  Sea Wasp counters that: (1) Domain Protection lacks Article III

standing to seek relief under the SCA; (2) Domain Protection is not entitled to SCA damages

because the jury awarded no actual damages; (3) even if actual damages are not required for a

statutory damages award under the SCA, the SCA does not provide for a statutory award of $1,000

per violation; and (4) even if the SCA provides for a per violation award, Domain Protection is not

entitled to $57,000,000.  Domain Protection also seeks punitive damages and attorneys' fees which

Sea Wasp likewise opposes.  The Court finds that Domain Protection is not entitled to statutory damages, punitive damages, or attorneys' fees under the SCA.

      a.  Domain Protection has Established Standing to Sue Under the Stored Communications Act.

Article III of the Constitution limits federal jurisdiction to "Cases" and "Controversies." *See* U.S. CONST. art III; *Aetna Life Ins. Co. of Hartford Conn. v. Haworth*, 300 U.S. 227, 239 (1937).  To have a case or controversy, there must be real parties with an actual dispute.  *See Allen v. Wright*, 468 U.S. 737, 750 (1984).  Standing addresses whether a plaintiff is the proper party to bring a matter before the court for adjudication.  A plaintiff does not have Article III standing if the plaintiff cannot present a case or controversy.  Accordingly, a court must decide issues of standing before all other issues because it "determines the court's fundamental power even to hear the suit." *Ford v. NYLCare Health Plan of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002).  In *Lujan*, the Supreme Court held that Article III standing requires a plaintiff to show the following elements: (1) it has suffered an "injury in fact" that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely the injury will be redressed by a favorable decision.  504 U.S. at 560–61.  To have an "injury in fact" or "legally protected interest" the Supreme Court has consistently stressed that a plaintiff must establish that he has a "personal stake" in the alleged dispute and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'") (citations omitted).

"[O]bjections to standing are jurisdictional in nature and can be raised at any time." *Bankston v.*

*Burch*, 27 F.3d 164, 167 (5th Cir. 1994) (citing FED. R. CIV. P. 12(h)(3)).

Sea Wasp argues that the Court did not directly address whether Domain Protection

established Article III standing in its Memorandum Opinion and Order denying Defendants'

Motion to Dismiss for Lack of Standing (Dkt. #261).  Sea Wasp is mistaken.  As the Court stated

in its Order:

> To challenge standing, Defendants filed a Motion to Dismiss under Rule 12(h)(3).  Rule
> 12(h)(3) states that "if the court determines at any time that it lacks subject-matter
> jurisdiction, the court must dismiss the action." FED. R. CIV. PRO 12(h)(3).  Rule 12(h)(3)
> is not a vehicle to challenge standing.  Rather, Rule 12(b)(1)—the Rule that Rule 12(h)(3)
> discusses—is the proper vehicle to challenge standing.  Rule 12(b)(1) states that "[e]very
> defense to a claim for relief in any pleading must be asserted in the responsive pleading if
> one is required.  But a party may assert the following defenses by motion: (1) lack of
> subject-matter jurisdiction." FED. R. CIV. PRO 12(b)(1).  The Court will thus conduct its
> standing analysis under Rule 12(b)(1), rather than Rule 56.  This means that the Court will
> accept the allegations in the pleadings as true rather than examining any affidavits or
> evidence set forth by Domain Protection. *Lujan*, 504 U.S. at 560–61.  Defendant's claim,
> however, that Domain Protection "has the burden to produce evidence that establishes its
> standing to invoke the Court's federal jurisdiction" (Dkt. #248).  Defendant's contention
> is, to a degree, false (Dkt. #248).  While it is true that Domain Protection's pleadings must
> satisfy the requirements of Article III standing, Domain Protection is not, at this time,
> required to provide additional proof.  Consequently, rather than placing an evidentiary
> burden on Domain Protection, the Court will take the allegations in the pleadings as true
> and determine whether Domain Protection has carried its burden by establishing "an
> invasion of a legally protected interest." *Ford*, 301 F.3d at 332.

(Dkt. #261) (footnote omitted).  The Court then proceeded to find that Domain Protection had

established Article III standing, at the 12(b)(1) stage, to sue under the Stored Communications Act

(Dkt. #261).  As evidenced by the Court's Memorandum Opinion and Order denying Defendants'

Motion to Dismiss for Lack of Standing, Court did analyze whether Domain Protection had

standing to sue under the SCA at the 12(b)(1) stage, contrary to Sea Wasp's assertion.

Nonetheless, Sea Wasp maintains that Domain Protection lacks standing post-trial.

Specifically, Sea Wasp argues that Domain Protection has presented no evidence of an injury-in-

fact because any harm that resulted from Sea Wasp's placement of an executive lock on the

Domain Names fell upon "another entity" (Dkt. #388).   Because Sea Wasp challenges standing post-trial, the Court must now look beyond mere allegations and consider whether Domain Protection has established standing "by affidavit or other evidence specific facts . . . ."   *Ford*, 301 F.3d at 332.   Domain Protection mistakenly concludes that because the Court "has already rejected Sea Wasp's standing arguments," Domain Protection need not argue standing again.   To the contrary, *Bankston* makes it quite clear that a defendant may raise a standing issue at any time.   27 F.3d at 167.   What is more, *Ford* unequivocally establishes that Domain Protection's burden shifts depending upon the stage at which Sea Wasp asserts a jurisdictional standing issue.   301 F.3d at 332.   Thus, at this juncture, Domain Protection cannot simply sit silently and claim that this issue has already been resolved.   Indeed, Domain Protection's burden is quite the opposite of the laissez-faire approach it takes.   As the Fifth Circuit has made readily apparent, Domain Protection is required to proffer "affidavits or other evidence specific facts validating [Domain Protection's] right to standing."   *Ford*, 301 F.3d at 332–33 (citing *Lujan*, 540 U.S. at 561).   Luckily for Domain Protection, the Court's "fundamental power even to hear the suit" was concretely established by the requisite evidence at summary judgment.   Thus, despite Domain Protection's radio-silence now, Domain Protection carried its burden in demonstrating an injury in fact at summary judgment.

First, the Court disagrees with Sea Wasp's assertion that any harm that resulted from Sea Wasp's placement of an executive lock on the domain names fell upon "another entity."   The Court has time and again rejected this argument.   To be sure, the Court has stated that the Fifth Circuit and Texas Supreme Court are clear: if one party has assigned property to another—without authority to do so or in breach of a fiduciary duty—the assignment is *voidable* in a suit by the principal.   Thus, the Court has held that, *until Quantec or another party successfully challenges*

*the Assignment in a separate suit*, the assignment of Domain Names to Domain Protection remains presumptively valid.  Sea Wasp has not, and likely cannot, provide the Court with an order finding that the assignment is now void.  To the contrary, Quantec, and/or the parties Quantec is affiliated with, have tried to challenge the Assignment on multiple occasions and have failed each time (Dkt. #54, Exhibit 9; Dkt. #54, Exhibit 12).  Thus, Domain Protection has the requisite interest in the Domain Names.[2]  *See* Dkt. #332 ("Sea Wasp is not the proper party to challenge whether Domain Protection has clear title to the Domain Names."); *see also* Dkt. #105 ("Absent the executive lock, Sea Wasp agrees that Domain Protection would be the "factual" possessor of the domain names because Domain Protection is listed in the WHOIS registration database as the registrant of the domain names.").  The question then becomes whether Domain Protection has proffered evidence of an injury in fact to that legally protected interest.  *See Raines*, 521 U.S. at 819; *Spokeo*, 136 S. Ct. at 1548.

The Court finds that Domain Protection proffered evidence establishing injury in fact at summary judgment.  Domain Protection offered the Katz Declaration as Exhibit 151 in support of Domain Protection's First Motion for Partial Summary Judgment.  The Court, after considering Sea Wasp's arguments to strike the Katz Declaration, determined that the Katz Declaration was proper Rule 56 summary judgment evidence.  The Katz Declaration provided that, due to Sea Wasp's conduct:

- Thousands of unique domain names have already expired and have been permanently lost to Domain Protection.
- With each passing month, Domain Protection is suffering further damages from lost domain name sales, lost nonrenewed domain names and lost advertising revenue as the direct result of Sea Wasp's exercise of control over Domain Protection's domain names.

---

[2] The Court would also note that any arguments grounded in Rule 17—which Sea Wasp cites to in footnote 17 of its Response—are unavailing as the Court has already deemed any "real party in interest" arguments waived.  *See* Dkt. #261.

- By making its unauthorized changes to the nameserver records, Sea Wasp cut off email to every account at all of Domain Protection's domain names and diverted all of Domain Protection's advertising revenue.

- Sea Wasp's interference has directly caused Domain Protection to lose all of its advertising revenue, and irreparably lose sales contracted for, as well as the loss of actual prospective sales which were in the process of negotiation.

(Dkt. #123, Exhibit 151).   In addition to the Katz Declaration, Domain Protection submitted judicial admissions made by Sea Wasp in Sea Wasp's Response in Opposition to Cross-Defendant's Motion to Dismiss Interpleader (Dkt. #105).  Those admissions included, among other things, statements such as:

- Sea Wasp has placed an "executive lock" on the domain names and possesses exclusive dominion and control over them.

- The lock prevents Domain Protection from using, selling, or transferring the domain names.

- [W]hile the executive lock is in place[,] Domain Protection cannot transfer or sell the domain names; it cannot use any of the domain names; it cannot change the name servers; it cannot change the registrant information in the WHOIS database; it cannot manage the monetization of the domain names; it cannot access the revenue generated by the monetization of the domain names; and perhaps most significantly, it cannot remove the executive lock. By contrast, Sea Wasp can exclusively take any or all of these actions based on its ability to control and implement the executive lock

(Dkt. #123) (attaching Dkt. #105).  This evidence, which includes admissions by Sea Wasp, surely satisfies the Article III requirement that Domain Protection establish it has been injured.  *See Ford*, 301 F.3d at 332.  Sea Wasp itself admits such injury by stating that, because of its actions, Domain Protection could no longer use, sell, or transfer the Domain Names it possessed.  Sea Wasp's actions concretely harmed Domain Protection's ability to control its Domain Names and generate revenue.  Moreover, Sea Wasp's invasion of Domain Protection's interest was not conjectural or hypothetical; rather, Sea Wasp's invasion had actually occurred and was tangibly harming Domain Protection by the time Domain Protection sought judicial intervention.   In short, Domain

Protection has established Article III's injury in fact requirement. *See Spokeo*, 136 S. Ct. at 1548.

Sea Wasp's standing argument is accordingly unavailing.

> b. **The Stored Communications Act Applies in this Case as Discussed in the Court's Memorandum Opinion and Order Granting in Part and Denying in Part Domain Protection's First Motion for Partial Summary Judgment.**

The basic purpose of Federal Rule of Civil Procedure 54(b) "is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2654 (4th ed. 2019). As such, Rule 54(b) also "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Dolores Lozano v. Baylor Univ.*, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Indeed, a "trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

Sea Wasp argues that the Court's finding that domain names are "communications" under the SCA is incorrect and the Court should thus revise its decision. In requesting said revision, Sea Wasp relies upon a previous argument already considered by the Court. Indeed, Sea Wasp admits that "[t]he Court previously rejected this argument when it denied Sea Wasp's motion to dismiss and granted Plaintiff's motion for partial summary judgment on liability" (Dkt. #388). Sea Wasp's argument is no more persuasive now. Having already considered Sea Wasp's argument, the Court declines to reconsider its decision.

      c.   Domain Protection is Not Entitled to Statutory Damages Because The Stored Communications Act Requires an Award of Actual Damages Before Statutory Damages May be Awarded.

Domain Protection argues that it is entitled to $57,000,000 in statutory damages under the SCA.  In seeking this sum, Domain Protection maintains that the SCA awards damages on a per violation basis and that the statute permits an award of damages irrespective of any award of actual damages.  Sea Wasp disagrees.  Sea Wasp counters that the SCA requires an award of actual damages for the Court to consider an award of statutory damages.  Further, even if there has been an award of actual damages, Sea Wasp claims that the SCA is not a per violation statute.  Before considering whether the SCA operates under a "per violation" scheme, the Court must first decide the threshold question: whether an aggrieved party under the SCA may receive an award of statutory damages absent an award of actual damages.

The issue of whether the SCA provides for statutory damages in the absence of an award of actual damages is an open question in the Fifth Circuit.[3]  What is more, this issue of statutory interpretation is an open issue for the majority of circuits across the United States.  To be sure, only the Fourth Circuit and Sixth Circuit, along with a number of district courts, have weighed in on this matter.  Because the Court finds the reasoning of the Fourth and Sixth Circuits persuasive, the Court holds that the SCA only provides for statutory damages upon proof of actual damages.

As in all cases of statutory interpretation, the Court begins with the text of the statute. *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335–36 (5th Cir. 2010); *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 288 (5th Cir. 2008) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)).  In interpreting the text of the statute, the Court looks to the statute as a whole, *McLaurin*, 529 F.3d at 288 (citing *United States v. Ridgeway*, 489 F.3d 732, 734 (5th Cir. 2007)),

---

[3] The Fifth Circuit recently took up *Hovanec v. Miller*, 2020 WL 420838 (W.D. Tex. Jan. 27, 2020), *appeal docketed*, No. 20-50080 (5th Cir. Feb.4, 2020) on appeal to decide this very question.

and seeks to enforce the plain meaning of the text.  *U.S. Nat. Bank of Oregon v. Ind. Ins. Agents of America, Inc.*, 508 U.S. 439, 454 (1993).

The Stored Communications Act, 18 U.S.C. § 2707, provides, in relevant part:

**(a) Cause of action.**--Except as provided in section 2703(e), any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

**(b) Relief.**--In a civil action under this section, appropriate relief includes--

**(1)** such preliminary and other equitable or declaratory relief as may be appropriate;

**(2)** damages under subsection (c); and

**(3)** a reasonable attorney's fee and other litigation costs reasonably incurred.

**(c) Damages.**--The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000.  If the violation is willful or intentional, the court may assess punitive damages.  In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

The operative language in § 2707 is nearly identical to the language in the Privacy Act which provides, in relevant part:

**(4)** In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--

**(A)** actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000;

5 U.S.C. § 552a(g)(4)(A).  Consequently, while an analysis of § 2707's text is a novel question for the Fifth Circuit, the Court is not without guidance in understanding the text.  The relevant text in § 552a(g)(4)(A)—text that is identical to § 2707—has already been interpreted by the Supreme Court in *Doe v. Chao*, 540 U.S. 614 (2004).  Moreover, the Supreme Court's analysis of § 552a(g)(4)(A) has already been extended to the text of § 2707 by the Fourth and Eleventh

Circuits.  The Court finds the reasoning of the Fourth and Eleventh Circuit's persuasive; thus, the Court finds it appropriate to briefly discuss *Doe*, and how the Fourth and Eleventh Circuits have extended *Doe* to § 2707's text, to fully explain the Court's holding.

*Doe v. Chao*

In *Doe*, Petitioner Buck Doe sued the Department of Labor after the Department used Doe's Social Security number to identify his application for benefits under the Black Lung Benefits Act.  540 U.S. at 616–17.  Doe claimed that the Department's use of his Social Security number to identify his claim on official agency documents went beyond the limits set by the Privacy Act, 5 U.S.C. § 552a(b).  *Id.*  Consequently, Doe joined with six other black lung claimants in suing the Department of Labor.  *Id.*  After denying class certification, the district court entered judgment against the other plaintiffs but granted summary judgment as to Doe and awarded Doe $1,000 in statutory damages pursuant to 5 U.S.C. § 552a(g)(4).  *Id.*  On appeal, the Fourth Circuit reversed and held that the United States was entitled to judgment.  *Id.*  More specifically, the Fourth Circuit "treated the $1,000 statutory minimum as available only to plaintiffs who suffered actual damages . . . ."  *Id.*  Doe subsequently petitioned for review and the Supreme Court granted certiorari.  *Id.* at 618.

The Supreme Court affirmed the Fourth Circuit and held that § 552a(g)(4)(A) requires proof of actual damages.[4]  *Id.*  In reaching its holding, the Court began with a "straightforward textual analysis" and reasoned that "[w]hen the [Privacy Act] gets to the point of guaranteeing the $1,000 minimum, it not only has confined any eligibility to victims of adverse effects caused by

---

[4] The Supreme Court's holding was contrary to a plethora of Circuit Courts that previously held that no proof of actual damages was necessary.  *Doe*, 540 U.S. at 618 (citing *Orekoya v. Mooney*, 330 F.3d 1, 7–8 (1st Cir. 2003); *Wilborn v. Dep't. of Health and Human Servs.*, 49 F.3d 597, 603 (9th Cir. 1995); *Waters v. Thornburgh*, 888 F.2d 870, 872 (D.C. Cir. 1989); *Johnson v. Dep't.. of Treasury, IRS*, 700 F.2d 971, 977 & n.12 (5th Cir. 1983); *Fitzpatrick v. IRS*, 665 F.2d 327, 330–331 (11th Cir. 1982)).

intentional or willful actions, but has provided expressly for liability to such victims for 'actual damages sustained.'" *Id.* at 620.  The Court reasoned that the text of the statute specifically limited the class of persons who could recover to only "person[s] entitled to recovery." *Id.*  By adhering to the simplest reading of the statute as a whole, the Court reasoned that the phrase "person entitled to recovery" must "look[] back to the immediately preceding provision for recovering actual damages . . . ." *Id.*  Thus, the Court rejected Doe's interpretation of the text—an interpretation grounded in a showing of intent or willfulness rather than actual damages—and held that "[t]he statute guarantees $1,000 only to plaintiffs who have suffered some actual damages." *Id.* at 627.  Any other interpretation, the Court concluded, would render the phrase "person entitled to recovery" as meaningless surplusage. *Id.*

*Van Alstyne v. Electronic Scriptorium, Ltd.*

Following the Supreme Court's holding in *Doe*, the Fourth Circuit was presented with a similar question regarding an award of statutory damages absent an award of actual damages.  This time, however, the issue centered around the text of the Stored Communications Act, 28 U.S.C. § 2707(c).

*Van Alstyne* concerned a former employee, Bonnie Van Alstyne, who sued her employer, Electronic Scriptorium Limited ("ESL"), and the president of her employer, Edward Leonard, under the SCA for accessing her personal email account after ESL terminated her.  560 F.3d 199, 201–02 (4th Cir. 2009).  At trial, the jury rendered a verdict in favor of Van Alstyne and awarded her $150,000 in compensatory damages against Leonard as well as $25,000 in compensatory damages against ESL.  *Id.* at 203.  "The compensatory damages award represented a statutory damages award of $1,000 for each violation of the SCA." *Id.*  The jury also awarded punitive damages.  *Id.*  In entering final judgment, the district court awarded Van Alstyne costs and

attorneys' fees. *Id.* Leonard and ESL timely appealed and challenged the award of statutory damages, punitive damages, and attorneys' fees and costs absent Van Alstyne proving actual damages under the SCA. *Id.*

Turning to the plain text of the statute and *Doe*, the Fourth Circuit held that, under the SCA, statutory damages are only available to plaintiffs who first prove actual damages. *Id.* at 205. First, the Fourth Circuit noted that the SCA and Privacy Act "contain the substantively identical following phrase: 'but in no case shall a person entitled to recover receive less than the sum of $1,000,' which 'looks back to the immediately preceding provision for recovering actual damages.'" *Id.* (citing *Doe*, 540 U.S. at 620). The only difference between the two statutes, the Fourth Circuit continued, is that the SCA employs the term "suffered" rather than "sustained." *Id.* Thus, noting that the Fourth Circuit was "left to interpret statutory language in all important respects identical to that already interpreted by the Supreme Court[,]" the Fourth Circuit held that "just as the Privacy Act required proof of 'actual damages' as a prerequisite to recovering damages, so does the SCA." *Id.* This conclusion was buttressed, the Fourth Circuit continued, by the fact that similar statutes, such as the Wiretap Act, 18 U.S.C. § 2520(c)(2), and the Driver's Privacy Protection Act, 18 U.S.C. § 2724, employed explicit language denoting that Congress did not always require proof of actual damages. *Id.* at 205–06.

In concluding that the SCA requires proof of actual damages for an award of statutory damages, the Fourth Circuit rejected a number of arguments advanced by Van Alstyne. First, Van Alstyne argued that the structure and legislative history of the SCA dictated a different result; a result that some district courts had previously reached. *Id.* at 206 (citing *In re Hawaiian Airlines, Inc.*, 355 B.R. 225, 231 (D. Haw. 2006); *Freedman v. Town of Fairfield*, 2006 WL 2684347, at *3 (D. Conn. Sept. 19, 2006); *Cedar Hill Assocs. v. Paget*, 2005 WL 3430562, at *3 (N.D. Ill. Dec.

9, 2005)).  The Fourth Circuit found Van Alstyne's structural argument that "entitled to recover" referred back to a "person aggrieved," not a person who suffered actual damages, unpersuasive. The Fourth Circuit reasoned that the text provides that a "person aggrieved" may "recover . . . such relief as may be appropriate."  *Id.* (citing 18 U.S.C. § 2707(a)).  Appropriate relief is then further defined in subsection (b) as: (1) equitable or declaratory relief; (2) damages under subsection (c); or (3) reasonable attorneys' fees and/or costs.  *Id.* (citing § 2707(b)).  Consequently, the Fourth Circuit reasoned that a "person aggrieved" is not automatically a person "entitled to recover" as defined under subsection (c).  *Id.*  Rather, "a person aggrieved may recover appropriate relief, which encompasses damages as defined and limited by subsection (c)."  *Id.*  Thus, "entitled to recover" should be read as relating back to the beginning of § 2707(c), as the Supreme Court held in *Doe*, to a person who "suffered" actual damages.  *Id.*  Following the Fourth Circuit's structural analysis, the Fourth Circuit rejected any reliance on legislative history.  The Fourth Circuit reasoned that there was "no need for recourse to legislative history" because the statutory language was "plain and unambiguous."  *Id.* at 207.

Van Alstyne next asserted that the common law roots of the SCA and the Privacy Act required a contrary conclusion.  *Id.*  More specifically, Van Alstyne argued that the SCA, unlike the Privacy Act, was more akin to the common law of trespass which, at common law, did not require proof of actual damages.  *Id.* (citing RESTATEMENT (SECOND) OF TORTS §§ 158 and 163 (1965)).  The Fourth Circuit, again, was unpersuaded and reasoned that Van Alstyne was improperly conflating trespass to *land* with trespass to *chattel*, "which more closely mirrors the SCA [and requires actual damages]."  *Id.* at 208.  Finally, the Fourth Circuit rejected Van Alstyne's reliance on the dissenting opinions from *Doe*.  *Id.*  Thus, the Fourth Circuit held that, under a straightforward textual analysis, "the district court erred in permitting the jury to award Van

Alstyne statutory damages without requiring her to prove that she sustained actual damages." *Id.* (citing *Doe*, 540 U.S. at 620).  The Fourth Circuit held that proof of actual damages is not required for an award of either punitive damages or attorneys' fees, however, because the operative language "person entitled to recover" is absent from those clauses.  *Id.* at 209.

*Vista Marketing, LLC v. Burkett*

Like the Fourth Circuit, the Eleventh Circuit has also faced the issue of whether an aggrieved party under § 2707 may recover statutory damages in the absence of actual damages.  And, like the Fourth Circuit, the Eleventh Circuit answered no.

In *Vista Marketing*, Vista, a telemarketing company, sued Terri Burkett ("Terri"), a non-employee who repeatedly accessed Vista's web mail account to determine whether her estranged husband, Franklin Burkett, a managing member of Vista, was lying about the financial status of Vista in divorce proceedings.  812 F.3d 954, 958–59 (11th Cir. 2016).  At trial, the jury found that Terri committed 450 violations of the SCA but also found that Vista had sustained no actual damages as a result of Terri's actions.  *Id.* at 961.  The jury consequently awarded Vista no actual or punitive damages.  *Id.*  Following trial, the court heard argument regarding whether Vista was entitled to statutory damages.  *Id.*  Vista argued that it was entitled to $450,000 in statutory damages—or, in other words, $1,000 for each violation of the SCA.  *Id.*  Terri argued that the district court should award no statutory damages because the jury had found that Vista suffered no actual damages.  *Id.*  The district court departed from either request and, in its discretion, awarded Vista $50,000 in statutory damages.  *Id.*  The court also declined to award any punitive damages or attorneys' fees.  *Id.* at 961–62.

Vista timely appealed the district court's order granting an award of statutory damages and Terri cross-appealed.  Both appeals were predicated, in part, on the interpretation and application

of the SCA.  *Id.*   After holding that Terri "accessed a facility through which an electronic communication service was provided and thereby obtained access to an electronic communication while it was in 'electronic storage,'" the Court considered whether the district court erred in awarding statutory damages absent an award of actual damages.  *Id.* at 962–63.  The Eleventh Circuit began with the text and, assuming that "Congress employed the common and ordinary meaning of the terms in the statute," determined that the issue hinged on the meaning of the phrase "person entitled to recover."  *Id.* at 965 (citing § 2707(c)).  Recognizing that the Supreme Court "construed the materially indistinguishable phrase 'person entitled to recovery' under the Privacy Act" in *Doe*, the Eleventh Circuit looked to *Doe* for the same language and grammatical structure analysis.  *Id.*   The Eleventh Circuit then reiterated the Supreme Court's holding that the phrase "'person entitled to recovery' in § 552a(g)(4)(a) 'looks back to the immediately preceding provision for recovering actual damages,' which appears earlier in the same sentence."  *Id.* (citing *Doe*, 540 U.S. at 620).  Further, the Eleventh Circuit noted, as the Supreme Court did, that Congress chose not to provide simply for "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person receive less than the sum of $1,000."  *Id.* at 966 (citing *Doe*, 540 U.S. at 623).  Therefore, the Eleventh Circuit held that "courts should give meaning to the words 'entitled to recovery' because that [could] be done reasonably."  *Id.* (citing *Doe*, 540 U.S. at 623).  Among other things, the Eleventh Circuit also noted that, "like the Privacy Act, the SCA (and § 2707(c) in particular) provides for the availability of other types of relief, including [attorneys' fees], in separate sentences that are not modified by the phrase 'entitled to recover.'"  *Id.*

The Eleventh Circuit finally engaged in an extensive comparison of the SCA and the Wiretap Act's damages provisions.[5] *See id.* at 967–971. The Wiretap Act's damages provision authorizes courts to assess damages as either the greater of actual damages and profits made by the violator *or* statutory damages. *Id.* at 968. This is vastly different, the Eleventh Circuit reasoned, than § 2707(c) which allows district courts to only award "actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation." *Id.* This diversion between the two otherwise similar statutes made "all the difference" to the Eleventh Circuit. *Id.* As the Eleventh Circuit concluded, if "Congress intended for the SCA to allow a party to choose between actual damages and statutory damages, the contemporaneously enacted amendments to the Wiretap Act certainly demonstrate that Congress knew how to say so." *Id.* Thus, after bolstering its textual analysis with a comparative review of the Wiretap Act,[6] the Eleventh Circuit concluded that the SCA does not authorize an award of statutory damages in the absence of an award for actual damages. *Id.* at 968. Like the Fourth Circuit, the Eleventh Circuit also distinguished the absence of the phrase "entitled to recover" in the punitive damages and attorneys' fees clauses. *Id.* at 977. Further, the Eleventh Circuit held that an award of punitive damages and attorneys' fees is "entirely discretionary" given § 2707(c)'s use of the permissive "may" rather than the mandatory "shall." *Id.*

*The Present Matter*

The Court finds that the Fourth Circuit and Eleventh Circuit's reasoning compel the conclusion that, like § 552a(g)(4)(A) in *Doe*, § 2707(c)'s phrase "person entitled to recovery"

---

[5] The Eleventh Circuit also rejected Vista's arguments that *Van Alstyne* was based in "faulty reasoning."
[6] During this comparison of the SCA and Wiretap Act's damages provisions, the Eleventh Circuit also concluded that § 2707(c) does not require a per violation damages award but rather establishes "a floor award of $1,000."

22

mandates an award of actual damages before an aggrieved person can recover statutory damages.[7]

*Vista Marketing*, 812 F.3d at 968; *Van Alstyne*, 560 F.3d at 205.   A straightforward textual analysis supports the Court's conclusion.   The text of § 2707(c) expressly limits the class of persons entitled to receive statutory damages to "person[s] entitled to recovery."   Such modifying phrase is absent from the clauses dealing with punitive damages and attorneys' fees.   Thus, the phrase "person entitled to recovery" must modify the sentence it is located within, and only that sentence. Consequently, the simplest reading, as the Supreme Court held in *Doe*, the Fourth Circuit held in *Van Alstyne*, and the Eleventh Circuit held in *Vista*, is to read the phrase "person entitled to recovery" as contemplating the preceding provision concerning "actual damages suffered by the plaintiff."   18 U.S.C. § 2707(c).   To interpret § 2707(c) otherwise would effectively eviscerate Congress' employment of the qualifying phrase.   This conclusion is supported by the Supreme Court's interpretation of identical language—save the terms "suffered" and "sustained"—in the Privacy Act.   *Doe*, 540 U.S. at 620.

A structural review of similar statutes further reinforces the Court's conclusion.   As the Fourth Circuit and Eleventh Circuit recognized, the Wiretap Act, 18 U.S.C. § 2520(c)(2), and the Driver's Privacy Protection Act, 18 U.S.C. § 2724, employ explicit language denoting that Congress does not always require proof of actual damages.   *Vista Marketing*, 812 F.3d at 968; *Van Alstyne*, 560 F.3d at 205–06.   To be sure, as the Eleventh Circuit discussed, the Wiretap Act authorizes courts to assess damages as either the greater of actual damages and profits made by the violator *or* statutory damages.   Section 2707(c) of the Stored Communications Act, however, grants no such authority.   On the contrary, § 2707(c) allows district courts to *only* award "actual

---

[7] The Court recognizes, but is unpersuaded by, a variety of district courts and state courts who have held to the contrary. *See In re Hawaiian Airlines*, 355 B.R. at 231; *Freedman*, 2006 WL 2684347, at *3; *Paget*, 2005 WL 3430562, at *3; *but see Hovanec*, 2020 WL 420838, at *4 (citing *Vista Marketing* and *Van Alstyne* for the proposition that, under § 2707(c), "in the absence of actual damages, statutory damages are not available").

damages suffered by the plaintiff and any profits made by the violator as a result of the violation." *Id.* Thus, if Congress had intended that actual damages not be a prerequisite to statutory damages, it could have drafted the SCA with the same language it utilized in previous statutes.

Because the text is plain and unambiguous, the Court finds it improper to consider legislative history. *See Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018) ("[W]here a statute's text is clear, courts should not resort to legislative history.") (citing *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)). Further, the Court finds no reason to consider the common law backdrop of the SCA when the text provides an answer. Thus, while the Fourth Circuit may have found that the common law supported its conclusion, the Court need not reach such consideration to hold the same here. The Court consequently holds that, under § 2707(c) of the Stored Communications Act, an aggrieved party may only recover statutory damages if the party was previously awarded actual damages.

Domain Protection argues that it is entitled to statutory damages despite the jury's return of a take-nothing verdict. Domain Protection is mistaken. Because Domain Protection was awarded no actual damages, Domain Protection cannot, under the text of § 2707(c), be awarded statutory damages. Domain Protection cites *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457 (5th Cir. 1994), to argue to the contrary. *Steve Jackson* does not support Domain Protection's conclusion. *Steve Jackson* concerned a "narrow issue": "whether the seizure of a computer, used to operate an electronic bulletin board system, and containing private electric mail which had been sent to (stored on) the bulleting board, but not read (retrieved) by the intended recipients, constitutes an unlawful intercept under the Federal Wiretap Act . . . ." *Id.* at 458. The Fifth Circuit's opinion focused on the definition of "intercept," how that definition had been previously applied, amendments to the Wiretap Act by Title I of the Electronic Communications

24

Privacy Act of 1986 ("ECPA"), the legislative history of the ECPA, and how Title II of the ECPA

applied in the situation.  *Id.* at 458–64.  The only mention of statutory damages occurred in footnote

5 of the opinion where the Fifth Circuit stated:

> Title I of the ECPA increased the statutory damages for unlawful interception from $1,000
> to $10,000.  *See Bess v. Bess*, 929 F.2d 1332, 1334 (8th Cir. 1991).  On the other hand, as
> noted, Title II authorizes an award of "the actual damages suffered by the plaintiff and any
> profits made by the violator as a result of the violation, but in no case . . . less than the sum
> of $1000".  18 U.S.C. § 2707(c).  As discussed, the individual appellants each received
> Title II statutory damages of $1,000.

*Id.* at 460 n.5.  While the Fifth Circuit recognized that the district court awarded statutory damages

in the absence of actual damages, such award was not an issue on appeal.  Indeed, all the Fifth

Circuit did in footnote 5 was *recognize* that such award occurred.  The Fifth Circuit did not speak

to the validity, or propriety, of the award.  Thus, there is nothing in *Steve Jackson* that supports

Domain Protection's contention that "under the Fifth Circuit's approach, the $1,000 per violation

statutory damages are recoverable regardless of recovery for actual damages."  Dkt. #383.  With

*Steve Jackson* silent on this issue, the Court concludes that because Domain Protection was

awarded no actual damages at trial, Domain Protection is not entitled to statutory damages under

18 U.S.C. § 2707(c).

> d. Even if the Stored Communications Act Did Not Require an Award of
>    Actual Damages, Domain Protection Would Not be Entitled to $57,000,000
>    in Damages.

Any way that Domain Protection tries to spin it, Domain Protection is not entitled to

$57,000,000 in damages.  As previously discussed, § 2707(c) employs the permissive term "may"

in each of its three clauses.  As such, a district court "*may* assess as damages"; "*may* assess punitive

damages"; and "*may* assess the costs of the action."  *Id.* at § 2707(c) (emphasis added).  While it

is true that Domain Protection was injured by Sea Wasp's conduct, Domain Protection has done

nothing to merit an award of $57,000,000 in damages.

When ordered to disclose damages on the eve of trial, Domain Protection provided what was essentially a carbon copy of its initial Rule 26(A)(1) Disclosure of Domain Protection, LLC ("Initial Disclosure").   The Initial Disclosure was submitted on August 10, 2018.   The Supplemental Disclosure was submitted on December 23, 2019.  Domain Protection proffered no documentation, exhibits, or other evidentiary material supporting, or expounding upon, its analysis or computation of damages.  Rather, Domain Protection merely claimed damages were a "simple math calculation" and asked the Court and the jury to take its word.  The Court will do no such thing.

The Court finds, in its discretion, that even if an award of actual damages were not required under § 2707(c), Domain Protection would still not be entitled to $57,000,000 in statutory damages.   The Court need not reach the issue of whether the SCA awards damages on a per violation basis to reach this conclusion because Domain Protection did not establish that 57,000 violations occurred.  At trial, Domain Protection called William Christopher Smith (Mr. Smith"), an internet marketing consultant, to testify as to how the internet *generally* works.  Counsel for Domain Protection asked Mr. Smith whether it was "*possible* to alter the registry records of multiple domain names at the same time with a single access to the registry."  Dkt. #388, Exhibit A (emphasis added).  Mr. Smith replied, "I don't believe so."  Dkt. #388, Exhibit A.  Counsel for Domain Protection then followed up by stating: "So then your testimony is each record that – each nameserver record that is changed has to be – is a separate access?"  Dkt. #388, Exhibit A.  Mr. Smith replied: "Each one would be a separate access, a separate transaction between the systems."  Dkt. #388, Exhibit A.  Domain Protection contends that Mr. Smith's testimony is conclusive proof that Sea Wasp violated the SCA 57,000 times.  Domain Protection's argument blinks reality.  Mr. Smith did not speak in absolutes; indeed, Mr. Smith predicated his response in an unsure, "I don't

believe so."  Further, Mr. Smith testified that he is not an internet registrar.  And, when pushed on whether he was convinced that the internet *generally* would require a registrar to access a registry independently for each individual alteration, Mr. Smith replied that it would not be impossible to write computer code to do a batch code for a bulk transfer.  Dkt. #388, Exhibit A.  In other words, Mr. Smith spoke in couched terms, discussed the Internet *generally*, and did not provide a scintilla of evidence corroborating Domain Protection's assertion that Sea Wasp changed each nameserver record in a rote fashion some 57,000 times.

If that is not enough, Domain Protection's Motion curiously omits the trial testimony of Sea Wasp's Chief Operating Officer, Rob Alfonso ("Mr. Alfonso").  Mr. Alfonso testified at trial that to implement an executive lock, a registrar simply "goes in and ticks a box . . . and that is it." Dkt. #388, Exhibit B.  Sea Wasp's counsel followed Mr. Alfonso's statement with a hypothetical asking: "If there are 85,000 names, do you do 85,000 authorizations?"  Dkt. #388, Exhibit B.  Mr. Alfonso responded simply: "No.  It is just one bulk operation."  Dkt. #388, Exhibit B.  Mr. Alfonso then conclusively affirmed that the Domain Protection authorization was done using a bulk or batch operation.  Dkt. #388, Exhibit B.  It is readily apparent that Domain Protection did not established 57,000 separate violations of the SCA.  No distortion of the record will convince the Court otherwise.  Thus, based on Mr. Alfonso's testimony—which Mr. Smith's wavering answers do not contradict—there was likely a single violation of the SCA.  So, even if an award of actual damages was not required under the SCA for Domain Protection to receive statutory damages, Domain Protection would not be entitled to $57,000,000.  To award $57,000,000 for one established violation of the SCA would be an egregious abuse of discretion—the Court will not entertain such thought.  And, if Domain Protection now believes it is at least entitled to damages for the one violation of the SCA that occurred, the Court's analysis below demonstrates why, in

the Court's discretion, the Court would not award any damages in this action.  *See* 18 U.S.C. § 2707(c)("may").

> e.   Domain Protection is Not Entitled to Punitive Damages.

Domain Protection also avers that it is entitled to punitive damages under the SCA.  Sea Wasp counters that Domain Protection waived any request for punitive damages by not requesting a jury question on punitive damages.  And, even if a jury question was not required, Sea Wasp maintains that punitive damages are still not appropriate.  The Court agrees with Sea Wasp.

As the Court held in Part I(A)(c), *supra*, punitive damages do not require a preliminary award of actual damages.  With that being said, awarding punitive damages is, to a degree, within the discretion of the Court.  18 U.S.C. § 2707(c) ("*may* assess punitive damages") (emphasis added).  The Eleventh Circuit held that the district court in *Vista Marketing* correctly declined to award punitive damages when the jury returned a verdict of $0 in damages because "the Seventh Amendment precludes a court from increasing the jury's award."  812 F.3d at 978.  Thus, the Eleventh Circuit placed a limit on the discretion afforded to district courts by prohibiting an award of punitive damages where a jury declined to award punitive damages.  *Id.*  The Court finds the Eleventh Circuit's approach compelling.  And, even if the Court was imbued with unfettered discretion irrespective of the jury's verdict, the Court would find punitive damages inappropriate. First, far from the insidious intent Domain Protection now casts upon Sea Wasp in its Motion, the Court's holding that Sea Wasp acted intentionally attributes no such personification.  Second, Sea Wasp has refuted each of Domain Protection's new allegations of ongoing misconduct that Domain Protection uses to argue for punitive damages.  For example, Domain Protection claims that Sea Wasp refuses to turn over $75,000 that belongs to Domain Protection.  Dkt. #383, Exhibit E.  Sea Wasp, however, provided a declaration establishing that Sea Wasp has in fact wired those

funds over to Domain Protection.  Dkt. #395, Exhibit 1.  Likewise, Domain Protection argues that Sea Wasp absconded with more of Domain Protection's Domain Names.  Dkt. #383.  Yet Sea Wasp provides evidence that those Domain Names expired due to Domain Protection's inaction. Dkt. #395, Exhibit C.  Domain Protection had its day in court.  Proffering new, quickly defeated allegations will not change the outcome of the jury's verdict.  Thus, although actual damages are not required for punitive damages under the SCA, the Court finds it inappropriate to award punitive damages when Domain Protection could not secure compensatory damages.  And, even if the Court were to disregard the jury's verdict, the Court would still find it inappropriate to award Domain Protection punitive damages here.

f.   Domain Protection is Not Entitled to Attorneys' Fees.

Domain Protection also makes a passing request for attorneys' fees under § 2707(b)(3) at the end of its Motion.  Attorneys' fees under § 2707(c) are entirely within the Court's discretion. *Vista Marketing*, 812 F.3d at 968.  Domain seemingly argues that, unlike § 2707(c), § 2707(b)(3) requires attorneys' fees.  The Court will not read the two provisions to conflict with one another. Rather, the Court reads both subsections to be permissive as other courts addressing § 2707(b)(3) have.  *See Hamilton Group Funding, Inc. v. Basel*, 2020 WL 580677, at *2 (S.D. Fla. 2020); *Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1136 n.15 (N.D. Fla. 2019).  The Court, in its discretion, declines to award Domain Protection attorneys' fees.

Domain Protection has time and again litigated in an unbecoming manner, distorted the record, and misstated the law.  Put simply, Domain Protection is not the innocent party it purports to be.  Indeed, neither party here has clean hands.  As such, the Court, in its discretion, finds that Domain Protection is not entitled to attorneys' fees under § 2707(b)(3).

B.  Permanent Injunction

Domain Protection finally requests that the Court enter a permanent injunction against Sea Wasp.  A party seeking a permanent injunction must establish "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *ExxonMobil*, 824 F.3d at 533.  Domain Protection has not carried its burden and is thus not entitled to a permanent injunction.  *See Abraham*, 708 F.3d at 626–27.

Domain Protection argues that it is entitled to a permanent injunction "[f]or the same reasons explained in [the] Court's ruling [granting a preliminary injunction] . . . ." (Dkt. #383). But that is not the standard for granting a permanent injunction.  *See ExxonMobil*, 824 F.3d at 533. Domain Protection falls quite short of meeting that standard.  First, Domain Protection attempts to spin the jury's verdict by arguing that "the jury verdict in this case [—a verdict of $0—] confirmed that the damages caused to Domain Protection are irreparable."  Dkt. #383.  The jury's verdict finding no actual damages surely does not establish irreparable injury when Domain Protection was unable to provide any persuasive evidence of damages.  Second, Domain Protection, without citing any evidence or authority, asserts that Sea Wasp "appears to believe that the summary judgment [the Court] entered as to liability under the Stored Communications Act has no meaning in the face of the jury's verdict."  Dkt. #383.  The Court will not find the threat of an ongoing injury based on unsupported accusations.  Third, Domain Protection claims that Sea Wasp "is apparently emboldened by the jury's verdict and has once again engaged in unauthorized access to Domain Protection's domain name records."  Dkt. #383.  As originally filed, this assertion was backed by no evidentiary support.  Then, in Domain Protection's Reply, Domain Protection offered a Declaration by Lisa Katz to support its contention.  Dkt. #393, Exhibit C.  Sea Wasp

objects to this new Katz Declaration as hearsay and irrelevant.  Irrespective of Sea Wasp's objections, Sea Wasp, as addressed in Part I(A)(e), *supra*, has discredited these new accusations. What is more, Sea Wasp has complied with the Court's preliminary injunction and removed the executive lock.  Fourth, Domain Protection offers no argument whatsoever that a permanent injunction in this action would not disserve the public interest.  Rather, Domain Protection, in its Reply, again points out that "[the Court] has already ruled on the elements necessary for permanent injunctive relief."  Dkt. #393.  Not so.  The Court ruled on Domain Protection's Motion for Preliminary Injunction some ten months ago.  Domain Protection has a new burden to establish why the Court should make that *preliminary* injunction *permanent*.  *See ExxonMobil*, 824 F.3d at 533.  Because Domain Protection has not carried its burden, the Court denies Domain Protection's request for a permanent injunction.[8]

II.    Defendant Sea Wasp LLC's Motion for Attorneys' Fees Under the Texas Theft Liability Act

Sea Wasp moves for attorneys' fees claiming that it is the prevailing party under the TTLA because Sea Wasp successfully defended against Domain Protection's TTLA claim.  Domain Protection opposes Sea Wasp's request and argues that: (1) Sea Wasp did not comply with the mandatory notice requirement for attorneys' fees; and (2) in any event, Sea Wasp is not the prevailing party.  The Court finds that Sea Wasp is not entitled to attorneys' fees under the TTLA.

Section 134.005(b) of the TTLA provides that: "Each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney[s'] fees."  TEX. CIV. PRAC. & REM. CODE § 134.005(b).  Given the use of the term "shall," attorneys' fees are mandatory under the TTLA.  *See Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143,

---

[8] With that being said, should Sea Wasp reinstitute an executive lock on the Domain Names in an impermissible manner, Domain Protection will be well within its right to file a new action seeking another injunction.

155 (5th Cir. 2017).  The Supreme Court of Texas has adopted the definition of "prevailing party"

as set out in *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).  Accordingly,

> [t]o qualify as a prevailing party, a . . . plaintiff must obtain at least some relief on the
> merits of his claim.  The plaintiff must obtain an enforceable judgment against the
> defendant from whom fees are sought, or comparable relief through a consent decree or
> settlement.  Whatever relief the plaintiff secures must directly benefit him at the time of
> the judgment or settlement.  Otherwise the judgment or settlement cannot be said to "affect
> the behavior of the defendant toward the plaintiff."  Only under these circumstances can
> civil rights litigation effect "the material alteration of the legal relationship of the parties"
> and thereby transform the plaintiff into a prevailing party.  In short, a plaintiff "prevails"
> when actual relief on the merits of his claim materially alters the legal relationship between
> the parties by modifying the defendant's behavior in a way that directly benefits the
> plaintiff.

*Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 654 (2009)

(citing *Farrar*, 506 U.S. at 111–12).  In other words, to be a prevailing party as a plaintiff, "a

plaintiff must prove compensable injury and secure an enforceable judgment in the form of

damages or equitable relief."  *Id.* at 652.  As to a defendant, "Texas courts have interpreted

'prevails' to include parties who successfully defend against a TTLA claim, such as achieving a

dismissal with prejudice."  *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184,

190 (5th Cir. 2018) (citing *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 n.6 (5th

Cir. 2016)).

Sea Wasp is not entitled to attorneys' fees because it is not the prevailing party.[9]  Domain

Protection proved compensable injury as has been previously discussed in this opinion.  Further,

Domain Protection secured a preliminary injunction which the Court awarded due to Domain

Protection's substantial likelihood of proving a violation of the TTLA—a violation that the Court

later held established.  While Domain Protection was unable to prove any damages at trial, that

does not zero out its prevailing party status.  *See Intercontinental*, 295 S.W.3d at 655 n.27.

---

[9] The Court need not reach the issue of notice as it does not change the Court's analysis.

Because Domain Protection secured an "enforceable judgment in the form of . . . equitable relief," Domain Protection is the prevailing party. *Id.* Consequently, Sea Wasp is not entitled to attorneys' fees.[10]

III.    Defendants' Motion for Entry of Final Judgment

Both parties propose competing entries of final judgment. In the end, however, the parties agree that final judgment should be entered. The Court finds it appropriate to enter final judgment and will do so in a separate order.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Domain Protection's Motion for Statutory Relief (Dkt. #383) is hereby **DENIED**.

It is further **ORDERED** that Defendant Sea Wasp LLC's Motion for Attorneys' Fees Under the Texas Theft Liability Act (Dkt. #390) is hereby **DENIED**.

It is further **ORDERED** that Defendants' Motion for Entry of Final Judgment (Dkt. #391) is hereby **GRANTED in part**.

**IT IS SO ORDERED**.

**SIGNED this 20th day of May, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[10] The Court notes that Sea Wasp now asserts that the TTLA does not authorize injunctive relief in its Reply. Sea Wasp did not assert said argument when defending against the preliminary injunction, however, and also failed to have said injunction set aside in its interlocutory appeal requesting an emergency stay of the injunction (Dkt. #240). The Court will not ignore this equitable relief at this stage. Thus, the Court finds that Domain Protection and Sea Wasp's legal relationship was necessarily altered due to the equitable relief the Court granted such that Domain Protection is the prevailing party.