# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DOMAIN PROTECTION, LLC, § <br> *Plaintiff*, § <br> v. § <br> § <br> SEA WASP, LLC, ET. AL. § <br> *Defendants*. § | <br> <br> Civil Action No.  4:18-cv-792 <br> Judge Mazzant <br> <br> |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Domain Protection LLC's Application for Attorney's Fees and Other Litigation Costs (Dkt. #405).  Having considered the motion and the relevant pleadings, the Court finds that Domain Protection's Motion is **DENIED**.

## BACKGROUND

Domain Protection is the registered name holder for over 50,000 domain names (the "Domain Names").  Sea Wasp is the registrar over those Domain Names.  This suit concerned whether Sea Wasp encroached on Domain Protection's proprietary interest in the Domain Names by placing an executive lock on them, which prevented Domain Protection from selling the Domain Names or updating their registration information.  Domain Protection brought claims against Sea Wasp for tortious interference, civil conspiracy, conversion, and respective violations of the Texas Theft Liability Act ("TTLA") and the Stored Communications Act ("SCA") (Dkt. #1).[1]  Sea Wasp insisted, and to this day still insists, that Domain Protection lacks any proprietary interest in the Domain Names in light of a dispute over their ownership.  That ownership dispute need not be fully discussed here but can be viewed in its entirety in the Court's

---

[1] On July 17, 2019, the Court entered its Memorandum Opinion and Order granting Domain Protection's Motion for Preliminary Injunction (Dkt. #192).

Memorandum Opinion and Order granting in part and denying in part Domain Protection's First Motion for Partial Summary Judgment (Dkt. #332).

On February 3, 2020, after the Court found Sea Wasp liable for violations of the TTLA and SCA, as well as tortious interference and conversion (Dkt. #332), the Court proceeded to trial. The issues at trial were: (1) what amount of damages, if any, was Domain Protection entitled to under the TTLA, SCA, tortious interference with contract, or conversion; and (2) whether Defendants Vernon Decossas and Gregory Faia ("Individual Defendants") were personally liable for Sea Wasp's conduct. On February 4, 2020, the Court granted the Individual Defendants' Motion for Directed Verdict (Dkt. #373). Following the Court's entry of a directed verdict, the Court submitted the issue of damages to the jury. That same day, the jury returned a take-nothing verdict on all counts (Dkt. #379).

On February 5, 2020, the Court ordered Domain Protection to file a motion for statutory damages under the TTLA (Dkt. #374). On February 19, 2020, Domain Protection filed Plaintiff Domain Protection's Motion for Statutory Relief (Dkt. #383). In Domain Protection's Motion for Statutory Relief, Domain Protection stated that it "abandon[ed] further issues of statutory damages under state law" (Dkt. #383). Domain Protection went on to seek $57,000,000 in statutory damages, $483,930 in punitive damages, a permanent injunction, and attorneys' fees under the Stored Communications Act. The Court subsequently found that Domain Protection waived any claim or argument for statutory relief under the TTLA (Dkt. #402). The Court further found that Domain Protection was not entitled to a permanent injunction nor statutory damages, punitive damages, or attorneys' fees under the SCA (Dkt. #402). The Court then entered Final Judgment dismissing the case with prejudice on May 20, 2020 (Dkt. #403).

On June 3, 2020, Domain Protection filed Plaintiff Domain Protection LLC's Application for Attorney's Fees and Other Litigation Costs (Dkt. #405). Domain Protection requests attorneys' fees under the TTLA claiming that it never waived the issue of attorneys' fees under the TTLA (Dkt. #405). Domain Protection consequently avers that it is entitled to $828,152.00 for 1,041.7 hours worked on matters relating to the TTLA claim in this action (Dkt. #405). Similarly, Domain Protection requests that the Court reconsider its prior Order denying Domain Protection attorneys' fees under the SCA (Dkt. #405).

On June 17, 2020, Sea Wasp filed Defendant Sea Wasp, LLC's Response to Domain Protection's Application for Attorney's Fees and Other Litigation Costs (Dkt. #410). Sea Wasp counters that: (1) Domain Protection waived any entitlement to attorneys' fees under the TTLA; (2) the Court's Order denying Domain Protection's request for attorneys' fees under the SCA does not merit reconsideration; and (3) even if the Court found an award of attorneys' fees proper, Domain Protection's application is excessive and improper (Dkt. #410).

On June 24, 2020, Domain Protection filed its Reply in Support of Plaintiff Domain Protection LLC's Application for Attorney's Fees and Other Litigation Costs (Dkt. #418). On July 1, 2020, Sea Wasp filed Defendant Sea Wasp, LLC's Sur-Reply to Plaintiff's Reply in Support of Plaintiff's Application for Attorney's Fees and Other Litigation Costs (Dkt. #422).

## LEGAL STANDARD

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, it is the movant that bears the burden of proof to show the reasonable fees they are owed. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (applying substantive federal law because it is a federal cause of action

but also discussing Texas's adoption of the lodestar method in other cases). The movant may calculate their reasonable and necessary attorneys' fees using either the lodestar method or the market value method. *Id.*; *AMX Enters. v. Master Realty Corp.*, 283 S.W.3d 506, 515 (Tex. App.—Fort Worth 2009, no pet.). There are certain causes of action that require the use of the lodestar calculation. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013). However, even if the lodestar calculation is not required, if the movant produces evidence of the lodestar calculation, courts typically apply the lodestar calculation. *Montano*, 414 S.W.3d at 736.

Using the lodestar analysis, the computation of a reasonable attorneys' fee award is a two-step process.[2] *El Apple*, 370 S.W.3d at 760 (citing *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied)). First, courts determine the reasonable hours spent by counsel and a reasonable hourly rate, and then multiplies the two together to get the base fee or lodestar. *Id.* (citing *Gonzales*, 72 S.W.3d at 412). Second, courts adjust the lodestar up or down based on relevant factors, found in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[3]

The *Johnson* factors are:

(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Gonzales*, 72 S.W.3d at 412 (citing *Johnson*, 488 F.2d at 717–19). "If some of these factors are accounted for in the lodestar amount, they should not be considered when making adjustments."

---

[2] Although state law applies, Texas courts occasionally "draw on the far greater body of federal court experience with lodestar." *El Apple*, 370 S.W.3d at 764–65.
[3] Texas courts also use a similar set of factors, the *Arthur Andersen* factors, to determine reasonableness. However, when courts use the lodestar calculation, they tend to use the *Johnson* factors.

*Id.* (citing *Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 529 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The lodestar is presumptively reasonable and should be modified only in exceptional cases. *El Apple*, 370 S.W.3d at 765.

## ANALYSIS

Domain Protection requests attorneys' fees pursuant to Texas Civil Practice and Remedies Code § 134.005(b) and 18 U.S.C. § 2707(c). Because the Court already addressed Domain Protection's argument relating to fees pursuant to § 2707(c) at length, the Court will first discuss this portion of Domain Protection's Motion. The Court will then address Domain Protection's request for fees under § 134.005(b).

### I. Fees Under the Stored Communications Act – 18 U.S.C. § 2707(c)

Domain Protection again requests fees under the Stored Communications Act. Motions to reconsider serve a very limited purpose: "to permit a party to correct manifest errors of law or fact, or to present newly discovered evidence." *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002) (citations omitted). Mere disagreement with a district court's order does not warrant reconsideration of that order. *Id.* at 332. A party should not restate, recycle, or rehash arguments that were previously made. *Id.* District court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Verdin v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 2803751, at *1 (E.D. Tex. July 10, 2012) (citations omitted). The Court already considered Domain Protection's arguments and found them unpersuasive. Domain Protection's request is, again, denied.

### II. Fees Under the Texas Theft Liability Act – TEX. CIV. PRAC. & REM. CODE § 134.005(b)

Domain Protection also moves for attorneys' fees under the TTLA. To make said request, Domain Protection asserts that it never waived any entitlement to attorneys' fees under the TTLA.

Rather, the argument goes, Domain Protection waived *damages*, not *attorneys' fees*. Consequently, because Domain Protection is the prevailing party under its TTLA claim in this action, Domain Protection claims that it is entitled to $828,152.00 in attorneys' fees. The Court disagrees for two reasons. First, the Court finds that while Domain Protection is the prevailing party under the TTLA, Domain Protection waived any claim for attorneys' fees under the same. Second, even if Domain Protection did not waive entitlement to attorneys' fees under the TTLA, Domain Protection's application is excessive and improper.

### a. While Domain Protection is the Prevailing Party under its TTLA Claim, Domain Protection Waived its Claim for Attorneys' Fees

Section 134.005(b) of the TTLA provides that: "Each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney[s'] fees." TEX. CIV. PRAC. & REM. CODE § 134.005(b). Given the use of the term "shall," attorneys' fees are mandatory under the TTLA. *See Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 155 (5th Cir. 2017). The Supreme Court of Texas adopted the definition of "prevailing party" as set out in *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). Accordingly:

> To qualify as a prevailing party, a . . . plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affect the behavior of the defendant toward the plaintiff." Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 654 (2009) (citing *Farrar*, 506 U.S. at 111–12). In other words, to be a prevailing party as a plaintiff, "a plaintiff must prove compensable injury and secure an enforceable judgment in the form of damages or

6

equitable relief." *Id.* at 652. As to a defendant, "Texas courts have interpreted 'prevails' to include parties who successfully defend against a TTLA claim, such as achieving a dismissal with prejudice." *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184, 190 (5th Cir. 2018) (citing *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 n.6 (5th Cir. 2016)).

Domain Protection is the prevailing party in this case with respect to its TTLA claim. First, Domain Protection proved compensable injury. As discussed in the Court's prior Order denying Domain Protection's Motion for Statutory Relief, the Katz Declaration, which was admitted as proper summary judgment evidence in support of Domain Protection's First Motion for Partial Summary Judgment, provided that due to Sea Wasp's conduct:

- Thousands of unique domain names have already expired and have been permanently lost to Domain Protection.

- With each passing month, Domain Protection is suffering further damages from lost domain name sales, lost nonrenewed domain names and lost advertising revenue as the direct result of Sea Wasp's exercise of control over Domain Protection's domain names.

- By making its unauthorized changes to the nameserver records, Sea Wasp cut off email to every account at all of Domain Protection's domain names and diverted all of Domain Protection's advertising revenue.

- Sea Wasp's interference has directly caused Domain Protection to lose all of its advertising revenue, and irreparably lose sales contracted for, as well as the loss of actual prospective sales which were in the process of negotiation.

(Dkt. #123, Exhibit 151). In addition to the Katz Declaration, Domain Protection submitted judicial admissions made by Sea Wasp in Sea Wasp's Response in Opposition to Cross-Defendant's Motion to Dismiss Interpleader (Dkt. #105). Those admissions included, among other things, statements such as:

- Sea Wasp has placed an "executive lock" on the domain names and possesses exclusive dominion and control over them.

- The lock prevents Domain Protection from using, selling, or transferring the domain names.

- [W]hile the executive lock is in place[,] Domain Protection cannot transfer or sell the domain names; it cannot use any of the domain names; it cannot change the name servers; it cannot change the registrant information in the WHOIS database; it cannot manage the monetization of the domain names; it cannot access the revenue generated by the monetization of the domain names; and perhaps most significantly, it cannot remove the executive lock. By contrast, Sea Wasp can exclusively take any or all of these actions based on its ability to control and implement the executive lock.

(Dkt. #123) (attaching Dkt. #105). This evidence, which includes admissions by Sea Wasp, surely establishes a compensable injury. Sea Wasp itself admits such injury by stating that, because of its actions, Domain Protection could no longer use, sell, or transfer the Domain Names it possessed. Further, Domain Protection secured a preliminary injunction which the Court awarded due to Domain Protection's substantial likelihood of proving a violation of the TTLA—a violation that the Court later held established. While Domain Protection was unable to prove any damages at trial, that does not zero out its prevailing party status. *See Intercontinental*, 295 S.W.3d at 655 n.27 (recognizing that prevailing party status may consider equitable relief). Because Domain Protection secured an "enforceable judgment in the form of . . . equitable relief," Domain Protection is the prevailing party. *Id.*

While Domain Protection is the prevailing party, Domain Protection's piecemeal, tactical approach to litigation resulted in waiver of any TTLA fees. On February 19, 2020, Domain Protection filed its Motion for Statutory Relief (Dkt. #383). In that Motion, Domain Protection stated as follows:

> The issues raised in this case with respect to the Stored Communications Act are of national importance and affect millions of domain name registrants, email account holders, and businesses relying upon the security and stability of the internet domain name system. By contrast, the issues relating to the Texas Theft Liability Act are localized state law issues. Because of the overwhelming importance of the Stored Communications Act liability in this case, Domain Protection *abandons further issues of statutory damages under state law.*

(Dkt. #383) (emphasis added). Domain Protection then went on to seek statutory damages, punitive damages, a permanent injunction, and attorneys' fees under the SCA. No further mention of the TTLA was made throughout Domain Protection's briefing. On March 4, 2020, Sea Wasp filed its Response (Dkt. #388). In its Response, Sea Wasp argued:

> Though the Court ordered Plaintiff to file a motion for statutory damages under the TTLA, Plaintiff has filed a motion for statutory damages under the SCA, and states that it "abandons further issues of statutory damages under state law." Therefore, Plaintiff has waived any claim for statutory relief under the TTLA. Notably, Plaintiff cannot recover statutory damages under the TTLA because such an award is contingent upon an award of actual damages, and the jury awarded no actual damages for Plaintiff's TTLA claim. Nor can Plaintiff recover attorney's fees under the TTLA because the jury's award of zero damages means Plaintiff is not the prevailing party under the TTLA. Instead, Sea Wasp is the prevailing party under the TTLA, and therefore Sea Wasp is entitled to recover attorney's fees under that statute. Sea Wasp (along with the Individual Defendants) will file a separate motion for statutory relief under the TTLA requesting, among other things, its court costs and attorney's fees as the prevailing party under the TTLA.

(Dkt. #388). In its Reply, Domain Protection countered, in a footnote, that the TTLA was not at issue and it was reserving argument on that ground for another day (Dkt. #393). Simply because Domain Protection chose to proceed in a piecemeal manner, however, does not mean the Court must accept Domain Protection's attempt to reserve its TTLA argument for another day.

The Court previously held that Domain Protection waived any claim or argument for statutory relief under the TTLA. Domain Protection argues that this cannot be the case, because it only waived "statutory damages under state law." Formally, this may be true; functionally, however, Domain Protection waived any claim or argument for statutory relief under the TTLA. The Court recognizes that damages and fees are distinguishable as a matter of law. *See Richardson v. Wells Fargo Bank, NA*, 740 F.3d 1035, 1037 (5th Cir. 2014). With that being said, Domain Protection's February 19 Motion conflated the two—and thus addressed the attorney fee question—when Domain Protection filed a Motion that: (1) refused to discuss the TTLA—which the Court ordered Domain Protection to do; (2) was entitled as seeking all s*tatutory relief*; and then

(3) sought all statutory relief available under the SCA, including attorneys' fees, while foregoing attorneys' fees under the TTLA. It is *this practice*—not the mere statement that it waived statutory damages—that resulted in Domain Protection's waiver.

Domain Protection has consistently litigated in a manner where it believes it can take multiple bites at the same apple. The Court will not tolerate this practice. It takes no stretch of the imagination to determine that, had Domain Protection succeeded in its initial Motion "of national importance," it would not have expended further effort on so-called "localized state law" matters. Just because Domain Protection does not appreciate the reality before it does not mean it can now harness a Thanos-ian type power to re-write reality. Domain Protection sidelined its TTLA cause of action—despite the Court's order to brief the Court on the TTLA—in exchange for the SCA. The Court will not permit Domain Protection to now return the Court's holding regarding the SCA for a potentially more favorable one under the TTLA. The Court accordingly finds that Domain Protection waived its right to attorneys' fees under the TTLA by not seeking those fees in its Motion for *Statutory Relief* (Dkt. #383) (emphasis added).

### b. Assuming Domain Protection did not Waive Attorneys' Fees Under the TTLA, Domain Protection Would Still Not be Entitled to $828,152.00 in Fees

Even if Domain Protection did not waive its right to fees under the TTLA, Domain Protection would not be entitled to $828,152.00 in attorneys' fees because Domain Protection's request: (1) is excessive and improper; (2) fails to segregate claims; and (3) is based upon an unreasonable hourly rate. To reach this conclusion, the Court first calculates the lodestar then considers any relevant *Johnson* factors.

#### i. Hours Reasonably Expended

First, the Court must calculate the lodestar to determine what attorneys' fees would have been proper. The Court finds that the hours reasonably expended here are 410.8 hours as opposed

to the 1041.7 hours Domain Protection submitted. The Court's determination reflects Domain Protection's: (1) inappropriate entries; (2) lack of billing judgment; (3) failure to segregate; and (4) the totality of the circumstances.

### 1. Inappropriate Entries

As a preliminary matter, Domain Protection concedes that 14.8 hours should be reduced from the initial 1,041.7 hours of work proffered to the Court because those 14.8 hours reflect work unrelated to Domain Protection's TTLA claim. Further, Domain Protection admits that approximately ten percent of the time included in its 1,041.7 hours are unrelated to the "core issues" of this case. With nothing more describing what those hours consist of, the Court declines to include ten percent of Domain Protection's unsupported hours.

### 2. Billing Judgment

The party seeking fees has "the burden of showing . . . that the attorneys exercised billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006)); *see also El Apple*, 370 S.W.3d at 762–63. Billing judgment is defined as "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799; *see also El Apple*, 370 S.W.3d at 762–63. Any "'excessive, duplicative, or inadequately documented time should be eliminated from an attorney's fee award.'" *Montano v. Orange Cty., Tex.*, 2015 WL 11110631, at *4 (E.D. Tex. Apr. 24, 2015) (quoting *Leonard v. La*, 2013 WL 3558291, at *3 (W.D. La. July 10, 2013)); *see also El Apple*, 370 S.W.3d at 762–63. "'The hours surviving this vetting process are those reasonably expended on the litigation.'" *Id.* (quoting *Leonard*, 2013 WL 3558291, at *3); *see also El Apple*, 370 S.W.3d at 762–63.

Domain Protection does not reference "a single minute that was written off as unproductive, excessive, or redundant." *Champion v. ADT Sec. Servs., Inc.*, 2010 WL 4736908, at *6 (E.D. Tex. Nov. 16, 2010); *see also El Apple*, 370 S.W.3d at 762–63. Instead, Domain Protection proffers a "Work Report" that tracks the docket sheet while seeking fees based upon, for example, counsel—Gary Schepps—reviewing the notice of attorney appearances, numerous "intake and review" entries for the same matters, and the like. Hardly any description of Schepps' time is made; rather, Schepps simply amends the docket with buzzwords such as "Intake and Review," "Intake and Breakdown," and "Receive and Review" and offers this as an adequate breakdown of his time. With no adjustments indicated in Schepps' time whatsoever, the Court cannot accept that Schepps exercised billing judgment. The Court accordingly finds it appropriate to reduce Domain Protection's hours by ten percent to account for a lack of billing judgment. *See El Apple*, 370 S.W.3d at 762 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (explaining "a trial court should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees. Charges for duplicative, excessive, or inadequately documented work should be excluded.")); *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) ("The District Court neither committed clear error by finding a failure to provide evidence of billing judgment nor abused its discretion by imposing a ten percent reduction in the lodestar.").

### 3. Segregation

A party seeking attorneys' fees is "required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors*, 212 S.W.3d at 311. However, there is an exception to the duty to segregate when the fees are inextricably intertwined. *Id.* at 313–14. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal

services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.*

Like Domain Protection's inability to exercise billing judgment, Domain Protection also failed to provide the Court with any notice of segregation in its billing. It goes without saying that there was "significant overlap between the elements and facts of [many of the] claims." *Tech Pharm. Serv., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 904 (E.D. Tex. 2017). Notwithstanding that some matters were inextricably intertwined, there were certainly other matters that were not. For instance, Domain Protection's SCA claim: (1) was analytically distinct from its TTLA claim; (2) required discovery into matters unrelated to the TTLA; and (3) thus could not be the predicate upon which Domain Protection now rests its inextricably intertwined argument. Domain Protection admits as much in its Reply. Despite admitting that there are some matters which fall outside the scope of a TTLA attorneys' fees recovery, Domain Protection merely cites the inextricably intertwined theory and provides little to no analysis on how that theory applies to the present case. Without more, the Court cannot find with certainty which hours are properly segregated. Because it is Domain Protection's duty to provide the Court with an appropriately segregated fee request, the Court finds that it must again discount the hours reasonably expended by twenty percent to account for Domain Protection's failure. *See NuVasive, Inc. v. Lewis*, 2014 WL 12873101, at *4 (W.D. Tex. Oct. 23, 2014) (reducing fee application in part due to lack of complete time records which evidenced a lack of segregation).

### 4. Totality of the Evidence

The Court is an expert on reasonableness of fees and may use its own experience in deciding a fee award. *Kondos v. Allstate Lloyds*, 2005 WL 1004720, at *18 (E.D. Tex. Apr. 25, 2005) (citing *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st

Dist.] 2004, no pet.); *Aquila Sw. Pipeline, Inc. v. Harmony Expl., Inc.*, 48 S.W.3d 225, 241 (Tex. App.—San Antonio 2001, pet. denied); *Matthiessen v. Schaefer*, 897 S.W.2d 825, 827 (Tex. App.—San Antonio 1994), *rev'd on other grounds*, 915 S.W.2d 479 (Tex. 1995)); *see also Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980) (citations omitted); *NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, 2017 WL 1030313, at *7 (E.D. Tex. Mar. 17, 2017) (citations omitted).

Domain Protection's Motion leaves the Court dubious, at best, as to the hours it asserts. Domain Protection seemingly copied and pasted the docket report from Pacer, added action verbs before entries, and then turned in what it claims is a "Work Report." Little to no detail is provided outside of the titles of the entries on the Docket and the respective filings that makeup said docket. This practice does not persuade the Court that the fee application before it is reasonable, reliable, or proper. On the contrary, as the Court has previously stated, Domain Protection has time and again litigated in an unbecoming manner, distorted the record, and misstated the law. The Court finds that the attorneys' fees application before it is no different. As such, the Court finds that the reasonable hours expended must be discounted by twenty percent to account for Domain Protection's unreliable application which likely was not contemporaneously constructed.

In sum, the Court applies the following reductions to the 1,041.7 hours before it: (1) 14.8 hours of conceded SCA work; (2) ten percent reduction for unspecified, non-core issues; (3) ten percent reduction for lack of billing judgment; (4) twenty percent reduction for lack of segregation; and (5) twenty percent reduction for an unreliable report under the totality of the circumstances. With all calculations accounted for, this amounts to 410.8 hours reasonably expended.

### ii. Hourly Rate

The Court must now determine whether $795 an hour is a reasonable hourly rate for Schepps. The Court finds, based on Schepps' own arguments, that it is not. The reasonable hourly rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). "Similar services" is not limited to the prevailing claim. *See Tech Pharm. Servs.*, 298 F. Supp. 3d at 908.

A review of a previous award of attorneys' fees in this case is instructive. After the Court instituted sanctions against Schepps, the Court afforded Schepps and Sea Wasp the opportunity to reach an arrangement on the amount to be paid. Roger Sanders, then-counsel for Sea Wasp, asserted that the reasonable hourly rates for him and his employees were as follows: (1) Mr. Beyer: $110; (2) Mr. Young: $475; and (3) Mr. Sanders: $550. In response, Schepps argued that Mr. Sanders and his employees were only entitled to $250 an hour or less. A comparison of Mr. Sanders and Schepps' credentials is helpful. Mr. Sanders is a Baylor Law School graduate with honors. He is a former United States Magistrate Judge, former member of the Texas House of Representatives, adjunct professor of Business Law and Organizations at Austin College, and, most importantly, he has been a good standing, well reputed member of the legal profession for over four decades. Mr. Sanders is licensed in multiple United States District Courts, Circuit Courts, and the United States Supreme Court. Schepps, on the other hand, has practiced for over a quarter of a century, focused his practice on complex internet issues, and is licensed in multiple United States District Courts, Circuit Courts, and the United States Supreme Court. Unlike Mr. Sanders, Schepps is an inexperienced trial attorney who admitted that he was out of his element as

his practice focuses on appeals. *See Netsphere, Inc. v. Baron*, 2013 WL 12094213, at *1 (N.D. Tex. Jan. 7, 2013) (noting that, like Schepps' statements before this Court, "Schepps [] represented to this Court on numerous occasions that he is an appellate specialist"). Also, unlike Mr. Sanders, Schepps' questionable reputation must be accounted for.

      Unlike Mr. Sanders, who Schepps chose to compare himself with, Schepps was sanctioned by the Court and has faced several disciplinary issues before federal courts. *See, e.g.*, *MetroPCS v. Thomas*, 2020 WL 1666538, at *1 (N.D. Tex. Apr. 3, 2020) (Scholer, J.) ("The Magistrate Judge appropriately admonished Frazin's counsel of record Gary Schepps ("Schepps") that his failure to seek resolution of the dispute in light of Magistrate Judge Koran's opinion and MetroPCS's stipulation was not in compliance with the standards for attorney conduct in the Northern District . . . ."); *Netsphere, Inc. v. Baron*, 2013 WL 3327858, at *5 (N.D. Tex. May 29, 2013) (Furgeson, J.) ("Indeed, given how Baron through his appellate counsel, Gary Schepps, swamped the Fifth Circuit with questionable appeals, the Court finds that it would be entirely inequitable to deny these fees."); *Baron*, 2013 WL 12094213, at *1 ("There is now evidence before this Court that Jeffrey Baron and [Gary Schepps] have taken steps to thwart the decision of the Fifth Circuit and Rule 41 of the Federal Rules of Appellate Procedure, by improperly interfering with the operation and management of the Receviership."); *In re Ondovoa Ltd. Co.*, 2012 WL 12537040, at *2 (N.D. Tex. June 18, 2012) (Furgeson, J) ("It is well within the Bankruptcy Court's purview to regulate the practice of the lawyers that come before it. . . . Schepps violated the Bankruptcy Court's Orders repeatedly, meriting sanction."); *In re Frazin*, 2008 WL 5214036, at *34 (Bankr. N.D. Tex. Sept. 23, 2008) (Houser, J.) (calling Schepps' conduct into question over a potentially falsely notarized legal document). Schepps' suspect reputation must factor into calculating a reasonably hourly rate.

The Court determines that $795 an hour is an unreasonable hourly rate for Schepps. When considering that Schepps believed a well-regarded attorney with more experience deserved only $250 an hour compared to his requested hourly rate of $795 an hour, there is a disconnect. The matters before the Court were certainly complex; yet many of those matters where issues of Schepps' own making that distracted from the merits of the suit, antagonized opposing counsel, and disrupted the orderly flow of the Court's docket and the scheduling order and governing order in this case. Therefore, based on Schepps' reputation, Schepps' charge that Mr. Sanders was only entitled to $250 an hour, the complexity of the case, and how that complexity came about, the Court finds that the reasonable hourly rate for Schepps is $250 an hour—the same amount Schepps argued Mr. Sanders was entitled to.

At a rate of $250 an hour for 410.8 hours, the Court finds that the lodestar here is $102,700.00 as opposed to the $828,152.00 that Domain Protection requested.

### iii. *Johnson* Factors

After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant *Johnson* factors not already included in the lodestar. *Shipes v. Trinity Industries*, 987 F.2d 311, 320 (5th Cir. 1993). The Court must be careful when applying the *Johnson* factors to make sure "not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Id.* "Four of the *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation—are presumably fully reflected in the lodestar amount." *Id.* If a factor is presumably considered in the lodestar amount, the Court may still make an adjustment based on that factor; however, only "in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings." *Id.*

Here, the Court has already accounted for: (1) inappropriate entries; (2) lack of billing judgment; (3) failure to segregate; and (4) the totality of the circumstances as part of the lodestar amount. The Court must now determine if an adjustment should be made to the lodestar amount. The only factor worthy of consideration here is the amount involved and results obtained as that factor was not considered by the Court in determining the lodestar amount. *See Saizan*, 448 F.3d at 800 ("The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting."). Generally speaking, the Fifth Circuit has instructed that "while the district court must take the degree of success obtained into account, it would be an abuse of discretion for the district court to reduce . . . [an] attorney's fee award solely on the basis of the amount of damages obtained." *Black*, 732 F.3d at 503; *see also Saizan*, 448 F.3d at 799 ("While a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award."). Indeed, this is a *Johnson* factor that is presumably reflected in the lodestar amount, but if there are exceptional circumstances the Court may still adjust based on this factor. The Court finds those exceptional circumstances present here.

Domain Protection's success comes with an asterisk. All that Domain Protection secured was a finding of liability and a preliminary injunction.[4] Domain Protection was unable to prove a single dollar of damages, failed in its attempt to secure a permanent injunction, had one of its claims dismissed, and sustained a directed verdict against it. The law is clear, "[w]here a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true

---

[4] Sea Wasp calls into question whether the TTLA supports said equitable relief. Sea Wasp's Motion to Stay the Injunction was already denied by the Fifth Circuit on interlocutory appeal. *See Domain Protection, L.L.C. v. Sea Wasp, L.L.C., et al*, No. 19-40728 (5th Cir. 2019). The Court will not revisit this issue.

even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Saizan*, 448 F.3d at 801 (citing *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998) (quoting *Hensley*, 461 U.S. at 436)). The hours proffered to the Court are excessive when one considers the limited success that Domain Protection obtained. While the legal relationship changed between the parties, that change was quite literally the flip of a switch—or an executive lock. Hours and resources poured into this action were otherwise unsuccessful. And that is after the Court leniently permitted the parties to go to trial despite Domain Protection's failure to provide a proper computation of damages. Put simply, this is not a case where the Court is reducing fees based on simply an unassuming amount of damages; rather, this is a case where, though Domain Protection formally succeeded in obtaining equitable relief, it failed to obtain any of the other legal or equitable relief before it. The Court thus finds it appropriate to adjust the lodestar downward by half to account for the lack of results obtained from this litigation. Therefore, had Domain Protection not waived its right to attorneys' fees pursuant to the TTLA, Domain Protection would only be entitled to $51,350. Because Domain Protection waived its entitlement to attorneys' fees, however, Domain Protection is entitled to no attorneys' fees.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Domain Protection LLC's Application for Attorney's Fees and Other Litigation Costs (Dkt. #405) is hereby **DENIED**.

**SIGNED this 10th day of August, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE