# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DOMAIN PROTECTION, LLC, | § |
| | § |
| v. | § Civil Action No. 4:18-cv-792 |
| | § |
| SEA WASP, LLC, ET. AL. | § Judge Mazzant |
| | § |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Doman Protection's Motion to Alter Order on Application for Attorney's Fees (Dkt. #431). Having considered the Motion and relevant briefing, the Court finds the Motion should be **DENIED**.

## INTRODUCTION

Domain Protection is the registered name holder for over 50,000 domain names (the "Domain Names"). Sea Wasp is the registrar over those Domain Names. This suit concerned whether Sea Wasp encroached on Domain Protection's proprietary interest in the Domain Names by placing an executive lock on them, which prevented Domain Protection from selling the Domain Names or updating their registration information. Domain Protection brought claims against Sea Wasp for tortious interference, civil conspiracy, conversion, and respective violations of the Texas Theft Liability Act ("TTLA") and the Stored Communications Act ("SCA") (Dkt. #1).

On February 3, 2020, after the Court found Sea Wasp liable for violations of the TTLA and SCA, as well as tortious interference and conversion (Dkt. #332), the Court proceeded to trial. The issues at trial were: (1) what amount of damages, if any, was Domain Protection entitled to under the TTLA, SCA, tortious interference with contract, or conversion; and (2) whether

Defendants Vernon Decossas and Gregory Faia ("Individual Defendants") were personally liable for Sea Wasp's conduct. On February 4, 2020, the Court granted the Individual Defendants' Motion for Directed Verdict (Dkt. #373). Following the Court's entry of a directed verdict, the Court submitted the issue of damages to the jury. That same day, the jury returned a take-nothing verdict on all counts (Dkt. #379).

On February 5, 2020, the Court ordered Domain Protection to file a motion for statutory damages under the TTLA (Dkt. #374). On February 19, 2020, Domain Protection filed its motion which stated that it "abandon[ed] further issues of statutory damages under state law" (Dkt. #383). Domain Protection went on to seek $57,000,000 in statutory damages, $483,930 in punitive damages, a permanent injunction, and attorney's fees under the Stored Communications Act. The Court subsequently found that Domain Protection waived any claim or argument for statutory relief under the TTLA (Dkt. #402). The Court further found that Domain Protection was not entitled to a permanent injunction nor statutory damages, punitive damages, or attorneys' fees under the SCA (Dkt. #402). The Court then entered Final Judgment dismissing the case with prejudice on May 20, 2020 (Dkt. #403).

On June 3, 2020, Domain Protection moved for attorney's fees and costs and requested the Court reconsider its prior Order denying fees under the SCA (Dkt. #405). On August 10, 2020, the Court denied Domain Protection's Application for Attorney's Fees (Dkt. #429) because: (1) Domain Protection waived any entitlement to attorneys' fees under the TTLA; and (2) even if the Court found an award of attorneys' fees proper, Domain Protection's application is excessive and improper.

On September 7, 2020, Domain Protection filed its Motion to Alter Order on Application For Attorney's Fees (Dkt. #431). On September 8, 2020, Domain Protection filed Additional Attachments to its Motion (Dkt. #432). On September 21, 2020, Sea Wasp responded (Dkt. #433).

## LEGAL STANDARD

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In Re Transtexas Gas. Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.* at 479 (citing *Clancy v. Emp'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). In the Fifth Circuit, Rule 59(e) standards "favor the denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993) (citations omitted). Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) where there has been a manifest error of law or fact. *Demahy v. Schwarz Pharma, Inc*., 702 F.3d 177, 182 (5th Cir. 2012) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). A motion under Rule 59 cannot be used to raise arguments or claims "that could, and should, have been made before the judgment issued." *Id.* (citing *Marseilles Homeowners Condo. Ass'n v. Fid. Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008)).

## DISCUSSION

Domain Protection asks this Court, yet again, to reconsider awarding attorney's fees and this Court, yet again, denies the request.

1. **The Motion does not challenge the Court's denial of attorney's fees.**

To begin, Domain Protection's Motion does not seek to alter the Court's ultimate holding denying attorney's fees. The sole focus of the Motion relates to this Court's finding that $250 is a reasonable hourly rate for Gary Schepps ("Schepps"). In that Order, the Court found Domain Protection waived any claim for attorney's fees and, even so, the requested fees were excessive (Dkt. #429 at p. 6). If fees were to be awarded, the Court discounted over 60% of the requested hours because of Domain Protection's subpar recordkeeping (Dkt. #429 at pp. 10-14). Of the remaining 410.8 hours, the Court found Schepps' requested rate of $795 "unreasonable" (Dkt. 429 at p. 17). Domain Protection does not take issue with the Court's findings on waiver or discounting over 60% of the requested billable hours; it only takes issue with the Court's conclusion that $250 is a more reasonable billing rate rather than $795 (*See generally* Dkt. 431). Thus, even if the Court were to grant the Motion, it would not change the Order's holding denying Domain Protection its requested attorney's fees.

2. **The Court's finding that $250 is a reasonable billing rate for Gary Schepps was a generous assessment.**

The Court turns to what Domain Protection does argue: the finding that $250 is a reasonable billing rate for Schepps. In light of Schepps' conduct throughout these proceedings, the Court finds his request for a $795 per hour billing rate to be fancifully excessive.

The Court's finding stands because it is ultimately one of discretion. In its determination, the Court used Schepps' own reasoning, other courts' condemnation of Schepps, and this Court's first-hand experience of Schepps' unprofessional conduct. This Motion has only reaffirmed the Court's reasoning.

### a. Determining reasonable attorney's fees is a matter of discretion.

The Court's reasoning stands because the Court is an expert on reasonableness of fees and may use its own experience in deciding a fee award. *See, e.g.*, *Kondos v. Allstate Texas Lloyds*, No. CIV.A. 1:03-CV-1440, 2005 WL 1004720, at *18 (E.D. Tex. Apr. 25, 2005) (citing *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Aquila Sw. Pipeline, Inc. v. Harmony Expl., Inc.*, 48 S.W.3d 225, 241 (Tex. App.—San Antonio 2001, pet. denied) ("the reviewing court may draw upon the common knowledge of the justice of the court"); *Matthiessen v. Schaefer*, 897 S.W.2d 825, 827 (Tex. App.—San Antonio 1994), *rev'd on other grounds*, 915 S.W.2d 479 (Tex. 1995))("[T]he judge could have drawn on his own expertise" in awarding attorney's fees); *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980) ("Indeed, a district judge may fix attorneys fees on the basis of his own experience without the assistance of any testimony.").

The Court used its discretion to deny Domain Protection's Fee Application (Dkt. #429). In that Order, the Court discussed the lodestar analysis, the two-step process of calculating the lodestar, and adjusting the lodestar based on the relevant *Johnson* factors (Dkt. #429 at p. 4). After rejecting Domain Protection's request for attorney's fees under the SCA (again) and finding that Domain Protection waived its claim for attorney's fees under the TTLA (again), the Court applied the lodestar analysis and *Johnson* factors (Dkt. #429 at pp. 10-19). In determining that $250 is a reasonable rate for Schepps, the Court considered many factors, including: a review of a previous award of attorney's fees in this case; Schepps' "suspect reputation"; his inexperience as a trial attorney;[1] and how he "antagonized opposing counsel, and disrupted the orderly flow of the Court's docket[.]"

---

[1] Schepps takes issue with this characterization, even though the next sentence acknowledges "this was Mr. Schepps [sic] first federal jury trial as lead counsel" (Dkt. 431 at p. 5). As noted in a prior filing, "Plaintiff's counsel informed

Domain Protection does not address this avalanche of authority, yet it accuses the Court of being a "prosecutor judge . . . ruling upon the Court's own personal beliefs and biases." (Dkt. #431 at pp. 4-5). Instead of countering caselaw stating that the Court may use its own experience and discretion in deciding a fee award, Domain Protection throws unrelated cases against the wall to see what sticks. None do. Domain Protection alternatively cites to cases about making welfare eligibility decisions,[2] a criminal contempt action,[3] and judicial recusal when the judge has a personal conversation with a close relative involved in the case[4] (*See* Dkt. #431 at pp. 2-3). None of these remotely pertain to attorney's fees. Domain Protection even cites to a dissent (without labeling it as such) in a case about executive-branch commission hearings[5] to somehow suggest that this Court is tyrannical (*See* Dkt. #431 at p. 3). These arguments offered by Domain Protection and the law applicable to this case are ships passing in the night.

### b. The Court used Schepps' own arguments against him.

The Court used Schepps' own arguments against him, to which Schepps now protests. After this Court sanctioned Schepps, the Court afforded Schepps and Sea Wasp the opportunity to reach an arrangement on the amount paid. Roger Sanders, then-counsel for Sea Wasp, asserted that the reasonable hourly rates for him and his employees were as follows: (1) Ms. Beyer: $110; (2) Mr. Young: $475; and (3) Mr. Sanders: $550. In response, Schepps argued that Mr. Sanders and his employees were only entitled to an effective rate of $250/hour. Schepps now asserts, with a straight face, that his legal prowess merits $795/hour. It strains credulity that a reasonable rate for Schepps is more than double what he previously argued was reasonable for opposing counsel.

---

the Court and Sea Wasp's counsel that this case is the first case that Plaintiff's counsel has tried to a jury." (Dkt. 410 at p. 2). By definition, Schepps is an inexperienced trial attorney because he had no experience.
[2] *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).
[3] *In re Murchison*, 349 U.S. 133, 138 (1955).
[4] *In re Faulkner*, 856 F.2d 716, 720-21, (5th Cir. 1988).
[5] *Hannah v. Larche*, 363 U.S. 420, 496 (1960) (Douglas, J., dissenting).

Schepps argues his words should not come back to haunt him because (1) he did not make the $250 argument on the record and (2) it was merely a "legal argument" (Dkt. 431 at p. 4). The Court addresses each point in turn.

First, the record is littered with references to $250. *See* Memorandum Opinion and Order Dkt. #404 at p.2 ("Schepps' position that Mr. Young and [Mr. Sanders] should receive an effective rate of $250 or less per hour for our legal services . . . is ironically contrasted to his claim of $795 per hour in his disclosures.' Schepps never filed a motion challenging the requested attorneys' fees."); Sea Wasp's Response to Domain Protection's Motion for Withdrawal of May 20, 2020 Sanctions Award (Dkt. #419 at p. 8) (same); Sea Wasp's Reply to the Fee Application (Dkt. #422 at p. 5) ("Schepps claimed that Sea Wasp's former counsel's hourly rates of $450 and $550 were excessive and should be reduced to $250 or less per hour for the work they performed . . . Schepps cannot have his cake and eat it too."). The Court previously acknowledged Schepps' $250 argument and noted that Schepps never moved to challenge the requested attorney's fees (Dkt. #404 at p. 2; Dkt. #419 at p. 8). Schepps could have responded, but he chose not to.

Second, Schepps characterizes his $250 argument as a "legal argument" that was "at most directed to the 'effective rate' Mr. Sanders would be paid" and "that Sea Wasp's fee award should be zero based on the law" (Dkt. #431 at p. 4 n.1). It is unclear how this context is relevant or material to the Court's analysis. Regardless, the Court's ruling is also a "legal" ruling that Schepps' fee award "should be zero based on the law."

Ultimately, it does not matter whether Schepps made the $250 argument directly to the Court because it only highlights the preposterous manner Schepps litigated this case. The Court appropriately used its discretion to determine that $250 was a reasonable—if generous—rate for Schepps.

### c. Schepps' reputation precedes him.

This Court is not the first to take issue with Schepps' haphazard approach to lawyering, and it probably will not be the last.

In its Order, the Court identified numerous cases where Schepps was admonished for unprofessional conduct, to contextualize its finding that $250 is a reasonable rate (Dkt. 429 at p. 16). *See, e.g.*, *MetroPCS v. Thomas*, 2020 WL 1666538, at *1 (N.D. Tex. Apr. 3, 2020) (Scholer, J.) ("The Magistrate Judge appropriately admonished Frazin's counsel of record Gary Schepps ("Schepps") that his failure to seek resolution of the dispute in light of Magistrate Judge Horan's opinion and MetroPCS's stipulation was not in compliance with the standards for attorney conduct in the Northern District[.]"); *Netsphere, Inc. v. Baron*, 2013 WL 3327858, at *5 (N.D. Tex. May 29, 2013) (Furgeson, J.) ("Indeed, given how Baron through his appellate counsel, Gary Schepps, swamped the Fifth Circuit with questionable appeals, the Court finds that it would be entirely inequitable to deny these fees. Accordingly, the Court sees no reason not to charge the Receivership estate for the additional expenses incurred by Baron and Schepps's conduct."); *Netsphere, Inc. v. Baron*, 2013 WL 12094213, at *1 (N.D. Tex. Jan. 7, 2013) ("There is now evidence before this Court that Jeffrey Baron and his attorneys have taken steps to thwart the decision of the Fifth Circuit and Rule 41 of the Federal Rules of Appellate Procedure, by improperly interfering with the operation and management of the Receivership. . . Gary Schepps . . . knows full well how to read an appellate decision and how to comply with Rule 41 of the Federal Rule of Appellate Procedure. The Court cannot conceive of an excuse for what has happened."); *In re Ondovoa Ltd. Co.*, 2012 WL 12537040, at *2 (N.D. Tex. June 18, 2012) (Furgeson, J) ("Schepps violated the Bankruptcy Court's Orders repeatedly, meriting sanction."); *In re Frazin*,

2008 WL 5214036, at *34 (Bankr. N.D. Tex. Sept. 23, 2008) (Houser, J.) (questioning whether Schepps falsely notarized a legal document).

Rarely has a court been able to cite so many cases directly criticizing an attorney's conduct. Schepps' reputation precedes him and undercuts his claims for an hourly rate of $795. *See BMO Harris Bank, N.A. v. RidgeAire, Inc.*, No. 6:12-CV-550, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (explaining that courts consider an attorney's skill, experience, and reputation, in determining a reasonable rate). Indeed, it should serve as a warning to any potential client and a wakeup call to Schepps himself. A federal court citing an attorney's misconduct in a string cite is not normal. But this seems lost on Schepps who spends pages trying to explain away these cases (*See* Dkt. #431 at pp. 7-14). These excuses are unpersuasive. No matter the context, various courts felt the need to directly admonish Schepps. The Court finds that Schepps' reasonable rate falls significantly below that which was requested and is certain that these other courts would concur.

To further illustrate why $250 is a reasonable rate for Schepps, the Court compared Mr. Sanders—who Schepps argued deserved an effective billing rate of $250/hour—to Schepps himself. The comparison was not favorable to Schepps. He now objects on the basis that these "purported facts" were not presented to the Court by the parties (Dkt. #431 at p. 5). The Court appropriately took notice of Mr. Sander's reputation, just as it appropriately took notice of Schepps' reputation, because this information is all in the public record. Schepps criticizes this Court as being an "independent inquisitor judge" seemingly because this Court used its Westlaw subscription to review the public record (Dkt. #431 at p. 6). This is not a "private investigation" (Dkt. 431 at p. 7). If it is possible for an argument to have less than no merit, the one Schepps offers here would take the cake.

As reiterated throughout the Order, courts may use their experience in determining a reasonable attorney's fee. Here, the Court need only use common sense.

### d. The Court has witnessed first-hand Schepps' unprofessional conduct.

The Court has unfortunately been front row to Schepps' antics. Based on this, the Court remains firm that $250 is a generous assessment of Schepps' legal work.

To paraphrase Taylor Swift, the Court knew Schepps was trouble from early in the case. As this Court noted, "many" of this case's issues were "of Schepps' own making that distracted from the merits of the suit, antagonized opposing counsel, and disrupted the orderly flow of the Court's docket" (Dkt. #429). During the "needlessly complicated" case, the Court took the rare step of sanctioning Schepps for violating his duty of candor by withholding his personal financial interest in the case (Dkt. #295 at pp. 1, 26). Time and time again, Schepps moved to alter or amend this Court's rulings as it has done with almost every adverse ruling in the case (*See* Dkt. #312; Dkt. #334; Dkt. #409; Dkt. #412; Dkt. #413; Dkt. #415; Dkt. #431). Domain Protection—through Schepps—"has consistently litigated in a manner where it believes it can take multiple bites at the same apple. The Court will not tolerate this practice" (Dkt. #429 at p. 10). The Court has already rejected Schepps' request for attorney's fees twice before (*See* Dkt. #402 at p. 29; Dkt. #429 at pp. 5-19) and noted Schepps' "questionable" and "suspect reputation" (Dkt. #429 at p. 16). Schepps again asks for reconsideration, but presents no error of law or fact, no newly discovered evidence, and no intervening change in the controlling law warranting an extraordinary remedy. Schepps only complains.

Schepps closes his Motion with: "Even with the best judge, a bad process leads to a bad result." The Court agrees. Schepps' bad process led to his own bad result.

**CONCLUSION**

It is hereby **ORDERED** that Plaintiff Domain Protection's Motion to Alter Order on Application for Attorney's Fees (Dkt. #431) is **DENIED**.

**SIGNED this 18th day of November, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE